32491352

Aug  4 2010
2:38PM

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

ASBESTOS LITIGATION

CASE NO.: 10-35086 CA 31

     Plaintiff(s),

vs.

ALFA LAVAL, INC., et al.

     Defendants.

_____/

## DEFENDANT VELAN VALVE CORP.'S ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, Defendant, Velan Valve Corp. (hereinafter "Velan" or "Defendant"), demands a trial by jury, and without waiving any defenses, responds to Plaintiffs' Complaint and Demand for Jury Trial as follows:

### ANSWER

1.    The allegations contained in Paragraph One (1) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

2.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Two (2) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

3.    The allegations contained in Paragraph Three (3) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

4.      This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Four (4) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

5.      The allegations contained in Paragraph Five (5) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

6.      The allegations contained in Paragraph Six (6) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

7.      The allegations contained in Paragraph Seven (7) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

8.      The allegations contained in Paragraph Eight (8) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered any injuries as a result of this Defendant's actions.

9.      The allegations of Paragraph Nine (9) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

10.     The allegations of Paragraph Ten (10) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

## DEFENDANTS

11. – 58.       This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eleven (11) – Fifty-Eight (58) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

59.       This Defendant admits only that it has an agent for service in Florida; the remainder of the allegations contained in Paragraph Fifty-Nine (59) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

60. – 64.       This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Sixty (60) – Sixty-Four (64) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

65.       The allegations contained in Paragraph Sixty-Five (65) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

66.       The allegations contained in Paragraph Sixty-Six (66) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

67.       The allegations contained in Paragraph Sixty-Seven (67), including sub-parts a.– b. of Plaintiffs' Complaint are denied as they pertain to this Defendant.

68.       The allegations contained in Paragraph Sixty-Eight (68) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

WHEREFORE, Velan demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT I:  NEGLIGENCE

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Sixty-Eight (68) of Plaintiffs' Complaint as if the same had been restated herein.

69.     The allegations contained in Paragraph Sixty-Nine (69) of Plaintiffs' Complaint are denied, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos or injured from this Defendant's product.

70.     The allegations contained in Paragraph Seventy (70) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

71.     The allegations contained in Paragraph Seventy-One (71) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

72.     The allegations contained in Paragraph Seventy-Two (72) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

73.     The allegations contained in Paragraph Seventy-Three (73) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

74.     The allegations contained in Paragraph Seventy-Four (74) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

75.     The allegations contained in Paragraph Seventy-Five (75) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

76.     The allegations contained in Paragraph Seventy-Six (76) including sub-paragraphs (a- h) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Velan demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT II:  STRICT LIABILITY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Seventy-Six (76) of Plaintiffs' Complaint as if the same had been restated herein.

77.     The allegations contained in Paragraph Seventy-Seven (77) of Plaintiffs' Complaint are denied as they pertain to this Defendant,

78.     The allegations contained in Paragraph Seventy-Eight (78) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

79.     The allegations contained in Paragraph Seventy-Nine (79) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

80.     The allegations contained in Paragraph Eighty (80) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

81.     The allegations contained in Paragraph Eighty-One (81) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

82.     The allegations contained in Paragraph Eighty-Two (82) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

83.     The allegations contained in Paragraph Eighty-Three (83) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

84.     The allegations contained in Paragraph Eighty-Four (84) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

85.     The allegations contained in Paragraph Eighty-Five (85) of Plaintiffs' Complaint, including sub-parts (a. – c.), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

86.     The allegations contained in Paragraph Eighty-Six (86) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

87.     The allegations contained in Paragraph Eighty-Seven (87), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

88.     The allegations contained in Paragraph Eighty-Eight (88) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to and/or suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Velan demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT III:  LOSS OF CONSORTIUM—PATRICIA LYAUTEY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Eight (88) of Plaintiffs' Complaint as if the same had been restated herein.

89.     The allegations contained in Paragraph Eighty-Nine (89) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Velan demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## DAMAGES

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Nine (89) of Plaintiffs' Complaint as if the same had been restated herein.

90.     The allegations contained in Paragraph Ninety (90) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey, suffered any injuries as a result of any conduct of this Defendant.

91.     The allegations contained in Paragraph Ninety-One (91) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiffs suffered injuries as a result of any conduct of this Defendant.

92.     The allegations contained in Paragraph Ninety-Two (92) of Plaintiffs' Complaint are denied as they pertain to this Defendant as they pertain to this Defendant, particularly the allegations that Plaintiffs have suffered injuries as a result of any conduct of this Defendant.

93.     The allegations contained in Paragraph Ninety-Three (93) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

94.     The allegations contained in Paragraph Ninety-Four (94) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

95.     The allegations contained in Paragraph Ninety-Five (95) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey has suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Velan demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiffs' overly broad and vague allegations directed against all Defendants as a group.

### THIRD DEFENSE

This Court lacks jurisdiction over the person and property of this Defendant and, therefore, this case should be dismissed as to it. There is no showing of any connexity between the Plaintiff, Gale Lyautey's alleged injury and Defendant's activities in the State of Florida such

as might support an assertion of *in personam* jurisdiction over Defendant, nor is there any other basis for this Court to exercise jurisdiction over Defendant or its property.

## FOURTH DEFENSE

Venue of this civil action is not properly laid and, therefore, this Court should dismiss this civil action as to this Defendant.

## FIFTH DEFENSE

The process served on Defendant was defective and/or insufficient, and is therefore invalid and a nullity. Because Defendant has not been served with proper and lawful process, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SIXTH DEFENSE

The attempted service of process on Defendant was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon Defendant, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SEVENTH DEFENSE

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on this Defendant within 120 days after filing of the initial pleading.

## EIGHTH DEFENSE

Plaintiffs' claims are barred by collateral estoppel and res judicata.

## NINTH DEFENSE

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore,

precluded from alleging the material facts necessary to state a cause of action against this Defendant.

## TENTH DEFENSE

Plaintiffs' claims are barred by reason of release and/or accord and satisfaction.

## ELEVENTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches.

## TWELFTH DEFENSE

This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff, Gale Lyautey lived or worked.

## THIRTEENTH DEFENSE

This action is barred by the applicable statute of repose of Florida or the applicable statute or repose of any state where the Plaintiff, Gale Lyautey lives or worked.

## FOURTEENTH DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories that did not exist prior to the dates on which the Plaintiff, Gale Lyautey allegedly was exposed to this Defendant's products, in that such statutes are inapplicable to this action and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FIFTEENTH DEFENSE

Liability may not be imposed upon this Defendant based on a theory of enterprise or market share liability.  To the extent Plaintiffs' claims are based upon such theories, they are barred.

## SIXTEENTH DEFENSE

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

## SEVENTEENTH DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat. §** 774.206(2), bars Plaintiffs from recovering damages for fear or risk of cancer.

## EIGHTEENTH DEFENSE

This Defendant is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation laws of any other state or jurisdiction where Plaintiff, Gale Lyautey may have worked, with respect to immunity or offset for payments received by Plaintiffs.  Workers' compensation is Plaintiffs' exclusive remedy.

## NINETEENTH DEFENSE

The Plaintiff, Gale Lyautey and/or others misused, improperly used, or substantially modified Defendant's products at issue in this case, if any, and such misuse, improper use, or substantial modification proximately caused and contributed, in whole or in part, to the alleged conditions described in the Complaint and Plaintiffs' alleged damages.  Therefore, this Defendant is not liable for any alleged injury or damages that Plaintiffs claim.

## TWENTIETH DEFENSE

This Defendant denies the existence of express warranty, implied warranty, privity, and breach of warranty.

11

## TWENTY-FIRST DEFENSE

Plaintiffs' Complaint fails to state a cause of action against Defendant as succeeding to the debts and liabilities of any other manufacturer or seller of asbestos-containing products, and Defendant specifically denies each allegation concerning successor corporate liability.

## TWENTY-SECOND DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

## TWENTY-THIRD DEFENSE

Plaintiffs' claims are or may be barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where the Plaintiff, Gale Lyautey's alleged exposure may have occurred.

## TWENTY-FOURTH DEFENSE

Plaintiffs' claims are preempted by applicable state and federal statutes, laws, and regulations.

## TWENTY-FIFTH DEFENSE

If Plaintiff, Gale Lyautey was exposed to any of Defendant's products, which is expressly denied, said products at the time were manufactured in conformity with federal and state regulations, standards, specifications and laws. Consequently, recovery by the Plaintiffs herein is barred.

## TWENTY-SIXTH DEFENSE

At the time the Defendant's products of which Plaintiffs complain left Defendant's control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products.  Therefore, Defendant's products were not defective in design or manufacture.

## TWENTY-SEVENTH DEFENSE

This Defendant states that its products and the methods of manufacture and testing conformed to the generally recognized and prevailing industry standards and the state of the art in existence at the time the design was prepared and the product manufactured and tested.

## TWENTY-EIGHTH DEFENSE

This action is barred in whole or in part because Defendant reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Defendant had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and, therefore, had no duty to warn.

## TWENTY-NINTH DEFENSE

Defendant asserts the military contractor's defense.

## THIRTIETH DEFENSE

Defendant's asbestos-containing products, if any, were or may have been supplied to the United States Government, including the U.S. Navy, or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the United States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff, Gale Lyautey associated with the use of such products was equal to or superior to that of Defendant, and, by reason thereof, Defendant is not liable to Plaintiffs under any theory of law asserted in this civil action.

## THIRTY-FIRST DEFENSE

This Defendant's asbestos-containing products, if any, were supplied to the Plaintiff, Gale Lyautey's employers pursuant to contract, and such products conformed in every material respect to specifications established by said employers.

### THIRTY-SECOND DEFENSE

Plaintiffs' claims against Defendant should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Plaintiff, Gale Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Plaintiff, Gale Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Defendant, and, therefore, Defendant had no duty to warn Plaintiff, Gale Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

### THIRTY-THIRD DEFENSE

This action is barred in whole or in part because Defendant relied upon the care and skill of Plaintiff, Gale Lyautey's employers or labor union and/or other learned intermediaries.

### THIRTY-FOURTH DEFENSE

This Defendant pleads the negligence and conduct of Plaintiff, Gale Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

### THIRTY-FIFTH DEFENSE

This Defendant pleads the failure to join necessary and indispensable parties and the intervening negligence and intervening causation of entities not parties to this action as a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### THIRTY-SIXTH DEFENSE

This action fails to name as a Defendant a potentially indispensable party to the litigation, to wit: That collection of companies known as the "Manville Group."

14

### THIRTY-SEVENTH DEFENSE

The damages alleged by Plaintiffs, if any, were the result in whole or in part, of acts or omissions of third parties over which Defendant exercised no authority or control and for which Defendant has no liability.

### THIRTY-EIGHTH DEFENSE

If Plaintiff, Gale Lyautey sustained injuries as a result of exposure to asbestos or asbestos-containing products, which is denied, then such injuries were or may have been due to exposure to products of manufacturers or distributors not named as Defendants in this action.

### THIRTY-NINTH DEFENSE

If this Defendant is liable to Plaintiffs, which liability this Defendant expressly denies, any liability is limited to this Defendant's percentage of fault as provided by Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law. Specifically, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure were wholly or partially caused by actions and/or negligence of other manufacturers and/or distributors of asbestos-containing products to which he was exposed, certain entities that supplied asbestos fiber to the manufacturers, installation contractors who used said products, premises owners, and others. The responsible entities include, but are not limited, to the following:  Johns-Manville Corporation; UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to

Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; the Zonolite Company, and W.R. Grace as its successor in interest; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T

& N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; Canadian Johns-Manville; Lake Asbestos of Quebec; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Powhatan Mining Company; Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; E.J. Bartells Company; L & W Supply Corporation; Shook and Fletcher; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Wallace & Gale Company; Standard Insulations, Inc.; Fuller-Austin Insulation Company; Bigelow-Liptak Corporation; JT Thorpe; Burns and Roe, Inc.; Jacksonville Shipyard, Washington Group International, f/k/a Morrison Knudsen; Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; defendants

previously dismissed from this action; and existing defendants that are subsequently dismissed from this action, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; Genuine Parts Company; General Electric Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade

18

Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Specifically, this Defendant is entitled to apportionment with respect to the foregoing entities on the following grounds:

A.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as manufacturers of products that contained asbestos or included asbestos-containing components, their predecessors and successors in interest, and any related companies: UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Johns-Manville Corporation; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including

Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Co, and other T & N subsidiaries), and

Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; other manufacturers of products of the type identified by the Plaintiffs; any manufacturers that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul;

Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation, and any manufacturers that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As manufacturers of

asbestos-containing products (or products that included asbestos-containing components) that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries, the above-listed manufacturers owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named manufacturers breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they manufactured, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named manufacturers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named manufacturers' tortious conduct.

B.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to those manufacturers identified in Paragraph A, *supra*. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. Because they manufactured and/or distributed defective products that wholly or partially caused the Plaintiff, Gale Lyautey's injuries, the above-named manufacturers are strictly liable to the Plaintiffs for said injuries and the consequences thereof.

C.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following suppliers of

asbestos fiber (and/or asbestos-contaminated vermiculite), their predecessors and successors in interest, and any related companies: Johns-Manville Corporation; Canadian Johns-Manville; Lake Asbestos of Quebec; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Turner & Newall and other predecessors in interest to Federal Mogul; Powhatan Mining Company; H.K. Porter Company; the Zonolite Company, and W.R. Grace and Company as its successor in interest; any suppliers of asbestos fiber that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually

24

and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump,

Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These entities supplied asbestos fiber to which the Plaintiff, Gale Lyautey was exposed, either directly or through contact with asbestos-containing products. As such, these entities had a duty to warn their customers, manufacturers of asbestos-containing products, of the potential asbestos hazards associated with their asbestos fiber. Each of these suppliers breached its respective duty by negligently failing to warn its customers of the potential asbestos hazards of the asbestos fiber it supplied, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. These suppliers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn their customers and, to the extent applicable, the Plaintiffs. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of these entities' tortious conduct.

D.      Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the suppliers identified in Paragraph C, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiff, Gale Lyautey. These suppliers are subject to strict liability for manufacturing and/or distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

E.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as suppliers and distributors of asbestos-containing products, their predecessors and successors in interest,

and any related companies: Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; E.J. Bartells Company; L & W Supply Corporation; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Shook and Fletcher; Western Macarthur, f/k/a Western Asbestos; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; other suppliers and distributors of products of the type identified by the Plaintiffs; any suppliers and distributors of asbestos-containing products that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor

Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; Yarway Corporation, and any suppliers and distributors of asbestos-containing products that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As suppliers and distributors of

asbestos-containing products that caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they supplied and distributed, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named companies knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named companies' tortious conduct.

F.   Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, the distributors and suppliers identified in Paragraph E, *supra,* are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These suppliers and distributors of asbestos-containing products are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

G.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as installers of asbestos-containing products and construction contractors who used asbestos-containing products, as well as their predecessors and successors in interest and any related companies: Wallace & Gale Company; Standard Insulations, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Fuller-Austin Insulation Company; E.J. Bartells Company;

29

Bigelow-Liptak Corporation; JT Thorpe; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Western Macarthur, f/k/a Western Asbestos; Burns and Roe, Inc.; Washington Group International, f/k/a Morrison Knudsen; Todd Shipyards; American Shipbuilding; other installers and contractors who used products of the type identified by Plaintiffs; any installers and contractors that were previously defendants to this action but have been dismissed; and any installers and contractors that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine

30

Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As installers and contractors who used asbestos-containing products that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by

31

negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they used, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named entities knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named entities' tortious conduct.

H.     Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the installers and contractors identified in Paragraph G, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. To the extent these installers and contractors also supplied asbestos-containing materials; they are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

I.     If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as employers and/or as the owner or party in possession of premises where the Plaintiff, Gale Lyautey was exposed to asbestos, as well as their predecessors and successors in interest and any related companies: Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; Washington Group International, f/k/a Morrison Knudsen; Merrill Stevens Shipyard, Jacksonville Shipyards, Jacksonville Shipyards, Inc., any such entities that were

previously defendants to this action but have been dismissed; and any such entities that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT

33

Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation.   Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs.  The Plaintiff, Gale Lyautey's alleged injuries were wholly or partially caused by these entities' acts or omissions in breach of their duties of care to the Plaintiff, Gale Lyautey.

J.   In addition, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure are wholly or partially the result of actions and/or negligence of other parties, persons, firms, or corporations in addition to those specified above, including, but not limited to, the Plaintiff, Gale Lyautey himself; his various employers during the time of his alleged asbestos exposure; any and all persons or entities that owned or had a possessory interest in the locations where the Decedent may have been exposed to asbestos; any and all persons or entities that otherwise had control over or responsibility

for the locations where the Decedent may have been exposed to asbestos; and the entities identified in the Plaintiff, Gale Lyautey's Social Security printout and exposure sheets.

K.      In addition, this Defendant asserts its right to apportionment with respect to manufacturers and distributors of tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household. Tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household caused or contributed to the Plaintiff, Gale Lyautey's alleged injuries, and the manufacturers and distributors of these products are liable on the grounds of negligence and strict product liability. Likewise, this Defendant asserts that manufacturers and distributors of other harmful products to which the Plaintiff, Gale Lyautey was exposed are liable on the grounds of negligence and strict product liability, and this Defendant asserts its right to apportionment with respect to these manufacturers and distributors.

## FORTIETH DEFENSE

Pursuant to **Fla. Stat.** §§ 46.015(2), 768.041(2), and 768.31(5), Defendant is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff, Gale Lyautey's alleged injuries and/or Plaintiffs' alleged damages, as well as any such settlement or compromise previously reached by Plaintiffs. Defendant also asserts its right to collateral-source set-off under **Fla. Stat.** § 768.76.

## FORTY-FIRST DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleged to have been incurred, however, the Plaintiff, Gale Lyautey failed to exercise ordinary care for his own safety, and this failure

proximately caused his alleged injury and Plaintiffs' alleged damages. Therefore, the claims asserted in Plaintiffs' Complaint are partially or completely barred under the doctrines of contributory negligence and comparative fault.

## FORTY-SECOND DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleges to have been incurred, however, the Plaintiff, Gale Lyautey voluntarily and knowingly assumed the risk of incurring the alleged injury or damages, and, therefore, Plaintiffs are not entitled to recover from Defendant.

## FORTY-THIRD DEFENSE

If the Plaintiff, Gale Lyautey suffered any injuries as alleged in the Complaint, which this Defendant specifically denies, Plaintiff, Gale Lyautey failed to make reasonable efforts to mitigate these injuries and damages.

## FORTY-FOURTH DEFENSE

The Plaintiff, Gale Lyautey failed to take action to prevent the avoidable consequences of any action or omission of which Plaintiffs complain.

## FORTY-FIFTH DEFENSE

If the Plaintiff, Gale Lyautey or any member of his household used tobacco products, this use was a failure to exercise ordinary care for the Plaintiff, Gale Lyautey's own safety and was the sole or primary cause of his injuries. The negligence of the Plaintiff, Gale Lyautey, or members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### FORTY-SIXTH DEFENSE

The Plaintiff, Gale Lyautey's alleged contact with or use of any asbestos-containing products supplied, sold, or manufactured by this Defendant, which is expressly denied, if such use or contact in fact occurred, was not a substantial contributing cause of the Plaintiff, Gale Lyautey's alleged injuries.

### FORTY-SEVENTH DEFENSE

Any exposure of the Plaintiff, Gale Lyautey to this Defendant's products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff, Gale Lyautey's injuries.

### FORTY-EIGHTH DEFENSE

There is no causal connection between Defendant, or any product sold by Defendant, and any injury sustained by Plaintiff, Gale Lyautey; such causal connection being remote, indefinite, and speculative.  Consequently, the Complaint should be dismissed as to Defendant.

### FORTY-NINTH DEFENSE

Any damages claimed by the Plaintiffs that have not accrued are purely speculative, uncertain, and contingent and therefore cannot be recovered in this action.

### FIFTIETH DEFENSE

If the Plaintiff, Gale Lyautey suffered injuries, which this Defendant specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products sold or distributed by this Defendant, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Plaintiff, Gale Lyautey's workplace or elsewhere.

## FIFTY-FIRST DEFENSE

If there is an association between the Plaintiff, Gale Lyautey's alleged injuries and various agents to which he may have been exposed during his lifetime, which Defendant does not concede, the number of different agents to which he was exposed within and outside of Plaintiff, Gale Lyautey's workplace during his lifetime and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to the requisite degree of legal certainty, whether a causal connection exists between his alleged injuries and any particular agent.

## FIFTY-SECOND DEFENSE

Plaintiffs' claim for punitive damages is barred by Section 7(s) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(1), Florida's Constitution, the U.S. Constitution and this Court's Omnibus Order.

## FIFTY-THIRD DEFENSE

Pursuant to Section 5(1) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(1), Plaintiffs' Complaint must be dismissed unless (a) Plaintiffs are currently domiciled in Florida, or (b) Plaintiffs demonstrate that the Plaintiff, Gale Lyautey was exposed to asbestos in Florida and that this exposure in Florida was a substantial contributing factor to the alleged physical impairment underlying Plaintiffs' claim.

## FIFTY-FOURTH DEFENSE

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), the Court

should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to **Fla. Stat.** § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### FIFTY-FIFTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required Plaintiffs to serve a completed Forum Non Conveniens Fact Sheet with the Complaint. Plaintiffs either failed to serve a Forum Non Conveniens Fact Sheet at all or else served a purported Forum Non Conveniens Fact Sheet that was deficient for failure to include any or all of the required information.

### FIFTY-SIXTH DEFENSE

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which the Plaintiff, Gale Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

### FIFTY-SEVENTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because the Plaintiff, Gale Lyautey did not have a physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.

### FIFTY-EIGHTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because factors other than asbestos exposure were more probably the cause of the Plaintiff, Gale Lyautey's alleged medical condition and physical impairment.

### FIFTY-NINTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a sufficient "sworn information form" as required by Section 5(3) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(3).

### SIXTIETH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a report of settlements and judgments obtained for the Plaintiff, Gale Lyautey's alleged injury and/or Plaintiffs' alleged damages, as is required by Section 7(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(2).

### SIXTY-FIRST DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit with the Complaint a written report and supporting test results constituting *prima facie* evidence that the Plaintiff, Gale Lyautey had an asbestos-related physical impairment meeting the requirements specified in Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204. Alternatively, Plaintiffs' purported prima facie evidence is inadequate in that it fails to include some or all of the requisite elements that Section 4 specifies for the Plaintiff, Gale Lyautey's alleged disease.

40

### SIXTY-SECOND DEFENSE

Pursuant to Section 4(10)(b) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204(10)(b), Plaintiffs' presentation of prima facie evidence, if any, meeting the requirements of Section 4 of the Act is not conclusive as to Defendant's liability.

### SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred by Section 774.208, Florida Statutes, which provides that there is no cause of action, in an asbestos claim, against a product seller for harm caused by a product which the seller did not manufacture, sell, rent, lease, or expressly warrant, in the absence of intentional misconduct.

### SIXTY-FOURTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs also fail to comply with the Act by not attaching any "supporting documentation of the condition claimed to exist," pursuant to 774.205(3)(g), Florida Statute.

### SIXTY-FIFTH DEFENSE

Defendant restates and incorporates by reference any and all affirmative defenses raised by any other Defendant in this case as if fully set out verbatim herein.

### SIXTY-SIXTH DEFENSE

Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

### SIXTY-SEVENTH DEFENSE

Defendant reserves the right to amend its Answer, if appropriate, after full investigation and discovery.

41

Submitted this 4th day of August, 2010.

BICE COLE LAW FIRM, P.L.

Brenda Godfrey
Florida Bar No.: 0707716
Marsad Quraishi
Florida Bar No.: 23790
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, Fl  33134
305-444-1225
*Counsel for Velan Valve Corp.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served via LexisNexis File & Serve on Plaintiffs' counsel and all counsel of record this 4th day of August, 2010.

Attorney

32491426

Aug 4 2010
2:42PM

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

ASBESTOS LITIGATION

CASE NO.: 10-35086 CA 31

     Plaintiff(s),

vs.

ALFA LAVAL, INC., et al.

     Defendants.

_____/

## DEFENDANT BUFFALO PUMPS, INC.'S ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, Defendant, Buffalo Pumps, Inc. (hereinafter "Buffalo Pumps" or "Defendant"), demands a trial by jury, and without waiving any defenses, responds to Plaintiffs' Complaint and Demand for Jury Trial as follows:

### ANSWER

1.    The allegations contained in Paragraph One (1) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

2.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Two (2) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

3.    The allegations contained in Paragraph Three (3) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

1

4.     This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Four (4) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

5.     The allegations contained in Paragraph Five (5) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

6.     The allegations contained in Paragraph Six (6) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

7.     The allegations contained in Paragraph Seven (7) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

8.     The allegations contained in Paragraph Eight (8) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered any injuries as a result of this Defendant's actions.

9.     The allegations of Paragraph Nine (9) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

10.     The allegations of Paragraph Ten (10) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

## DEFENDANTS

11. – 16.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eleven (11) – Sixteen (16) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

17.    This Defendant admits only that it has an agent for service in Florida; the remainder of the allegations contained in Paragraph Seventeen (17) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

18. – 64.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eighteen (18) – Sixty-Four (64) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

65.    The allegations contained in Paragraph Sixty-Five (65) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

66.    The allegations contained in Paragraph Sixty-Six (66) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

67.    The allegations contained in Paragraph Sixty-Seven (67), including sub-parts a.– b. of Plaintiffs' Complaint are denied as they pertain to this Defendant.

68.    The allegations contained in Paragraph Sixty-Eight (68) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

WHEREFORE, Buffalo Pumps demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

3

## COUNT I:  NEGLIGENCE

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Sixty-Eight (68) of Plaintiffs' Complaint as if the same had been restated herein.

69.     The allegations contained in Paragraph Sixty-Nine (69) of Plaintiffs' Complaint are denied, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos or injured from this Defendant's product.

70.     The allegations contained in Paragraph Seventy (70) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

71.     The allegations contained in Paragraph Seventy-One (71) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

72.     The allegations contained in Paragraph Seventy-Two (72) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

73.     The allegations contained in Paragraph Seventy-Three (73) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

74.     The allegations contained in Paragraph Seventy-Four (74) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

4

75.     The allegations contained in Paragraph Seventy-Five (75) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

76.     The allegations contained in Paragraph Seventy-Six (76) including sub-paragraphs (a- h) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Buffalo Pumps demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT II: STRICT LIABILITY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Seventy-Six (76) of Plaintiffs' Complaint as if the same had been restated herein.

77.     The allegations contained in Paragraph Seventy-Seven (77) of Plaintiffs' Complaint are denied as they pertain to this Defendant,

78.     The allegations contained in Paragraph Seventy-Eight (78) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

79.     The allegations contained in Paragraph Seventy-Nine (79) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

80.     The allegations contained in Paragraph Eighty (80) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

81.     The allegations contained in Paragraph Eighty-One (81) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

82.     The allegations contained in Paragraph Eighty-Two (82) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

83.     The allegations contained in Paragraph Eighty-Three (83) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

84.     The allegations contained in Paragraph Eighty-Four (84) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

85.     The allegations contained in Paragraph Eighty-Five (85) of Plaintiffs' Complaint, including sub-parts (a. – c.), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

86.     The allegations contained in Paragraph Eighty-Six (86) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

87.     The allegations contained in Paragraph Eighty-Seven (87), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

88.     The allegations contained in Paragraph Eighty-Eight (88) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to and/or suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Buffalo Pumps demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

6

## COUNT III:  LOSS OF CONSORTIUM—PATRICIA LYAUTEY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Eight (88) of Plaintiffs' Complaint as if the same had been restated herein.

89.    The allegations contained in Paragraph Eighty-Nine (89) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Buffalo Pumps demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## DAMAGES

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Nine (89) of Plaintiffs' Complaint as if the same had been restated herein.

90.    The allegations contained in Paragraph Ninety (90) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey, suffered any injuries as a result of any conduct of this Defendant.

91.    The allegations contained in Paragraph Ninety-One (91) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiffs suffered injuries as a result of any conduct of this Defendant.

92.    The allegations contained in Paragraph Ninety-Two (92) of Plaintiffs' Complaint are denied as they pertain to this Defendant as they pertain to this Defendant, particularly the allegations that Plaintiffs have suffered injuries as a result of any conduct of this Defendant.

93.     The allegations contained in Paragraph Ninety-Three (93) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

94.     The allegations contained in Paragraph Ninety-Four (94) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

95.     The allegations contained in Paragraph Ninety-Five (95) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey has suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Buffalo Pumps demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiffs' overly broad and vague allegations directed against all Defendants as a group.

### THIRD DEFENSE

This Court lacks jurisdiction over the person and property of this Defendant and, therefore, this case should be dismissed as to it. There is no showing of any connexity between the Plaintiff, Gale Lyautey's alleged injury and Defendant's activities in the State of Florida such

as might support an assertion of *in personam* jurisdiction over Defendant, nor is there any other basis for this Court to exercise jurisdiction over Defendant or its property.

### FOURTH DEFENSE

Venue of this civil action is not properly laid and, therefore, this Court should dismiss this civil action as to this Defendant.

### FIFTH DEFENSE

The process served on Defendant was defective and/or insufficient, and is therefore invalid and a nullity. Because Defendant has not been served with proper and lawful process, this Court lacks jurisdiction over the corporate person and property of Defendant.

### SIXTH DEFENSE

The attempted service of process on Defendant was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon Defendant, this Court lacks jurisdiction over the corporate person and property of Defendant.

### SEVENTH DEFENSE

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on this Defendant within 120 days after filing of the initial pleading.

### EIGHTH DEFENSE

Plaintiffs' claims are barred by collateral estoppel and res judicata.

### NINTH DEFENSE

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore,

precluded from alleging the material facts necessary to state a cause of action against this Defendant.

### TENTH DEFENSE

Plaintiffs' claims are barred by reason of release and/or accord and satisfaction.

### ELEVENTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches.

### TWELFTH DEFENSE

This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff, Gale Lyautey lived or worked.

### THIRTEENTH DEFENSE

This action is barred by the applicable statute of repose of Florida or the applicable statute or repose of any state where the Plaintiff, Gale Lyautey lives or worked.

### FOURTEENTH DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories that did not exist prior to the dates on which the Plaintiff, Gale Lyautey allegedly was exposed to this Defendant's products, in that such statutes are inapplicable to this action and in that the application of such legal theories to this action would be unconstitutionally retroactive.

### FIFTEENTH DEFENSE

Liability may not be imposed upon this Defendant based on a theory of enterprise or market share liability. To the extent Plaintiffs' claims are based upon such theories, they are barred.

## SIXTEENTH DEFENSE

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

## SEVENTEENTH DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.206(2), bars Plaintiffs from recovering damages for fear or risk of cancer.

## EIGHTEENTH DEFENSE

This Defendant is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation laws of any other state or jurisdiction where Plaintiff, Gale Lyautey may have worked, with respect to immunity or offset for payments received by Plaintiffs. Workers' compensation is Plaintiffs' exclusive remedy.

## NINETEENTH DEFENSE

The Plaintiff, Gale Lyautey and/or others misused, improperly used, or substantially modified Defendant's products at issue in this case, if any, and such misuse, improper use, or substantial modification proximately caused and contributed, in whole or in part, to the alleged conditions described in the Complaint and Plaintiffs' alleged damages. Therefore, this Defendant is not liable for any alleged injury or damages that Plaintiffs claim.

## TWENTIETH DEFENSE

This Defendant denies the existence of express warranty, implied warranty, privity, and breach of warranty.

11

### TWENTY-FIRST DEFENSE

Plaintiffs' Complaint fails to state a cause of action against Defendant as succeeding to the debts and liabilities of any other manufacturer or seller of asbestos-containing products, and Defendant specifically denies each allegation concerning successor corporate liability.

### TWENTY-SECOND DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims are or may be barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where the Plaintiff, Gale Lyautey's alleged exposure may have occurred.

### TWENTY-FOURTH DEFENSE

Plaintiffs' claims are preempted by applicable state and federal statutes, laws, and regulations.

### TWENTY-FIFTH DEFENSE

If Plaintiff, Gale Lyautey was exposed to any of Defendant's products, which is expressly denied, said products at the time were manufactured in conformity with federal and state regulations, standards, specifications and laws. Consequently, recovery by the Plaintiffs herein is barred.

### TWENTY-SIXTH DEFENSE

At the time the Defendant's products of which Plaintiffs complain left Defendant's control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, Defendant's products were not defective in design or manufacture.

12

## TWENTY-SEVENTH DEFENSE

This Defendant states that its products and the methods of manufacture and testing conformed to the generally recognized and prevailing industry standards and the state of the art in existence at the time the design was prepared and the product manufactured and tested.

## TWENTY-EIGHTH DEFENSE

This action is barred in whole or in part because Defendant reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Defendant had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and, therefore, had no duty to warn.

## TWENTY-NINTH DEFENSE

Defendant asserts the military contractor's defense.

## THIRTIETH DEFENSE

Defendant's asbestos-containing products, if any, were or may have been supplied to the United States Government, including the U.S. Navy, or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the United States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff, Gale Lyautey associated with the use of such products was equal to or superior to that of Defendant, and, by reason thereof, Defendant is not liable to Plaintiffs under any theory of law asserted in this civil action.

## THIRTY-FIRST DEFENSE

This Defendant's asbestos-containing products, if any, were supplied to the Plaintiff, Gale Lyautey's employers pursuant to contract, and such products conformed in every material respect to specifications established by said employers.

## THIRTY-SECOND DEFENSE

Plaintiffs' claims against Defendant should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Plaintiff, Gale Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Plaintiff, Gale Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Defendant, and, therefore, Defendant had no duty to warn Plaintiff, Gale Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

## THIRTY-THIRD DEFENSE

This action is barred in whole or in part because Defendant relied upon the care and skill of Plaintiff, Gale Lyautey's employers or labor union and/or other learned intermediaries.

## THIRTY-FOURTH DEFENSE

This Defendant pleads the negligence and conduct of Plaintiff, Gale Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

## THIRTY-FIFTH DEFENSE

This Defendant pleads the failure to join necessary and indispensable parties and the intervening negligence and intervening causation of entities not parties to this action as a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## THIRTY-SIXTH DEFENSE

This action fails to name as a Defendant a potentially indispensable party to the litigation, to wit: That collection of companies known as the "Manville Group."

14

## THIRTY-SEVENTH DEFENSE

The damages alleged by Plaintiffs, if any, were the result in whole or in part, of acts or omissions of third parties over which Defendant exercised no authority or control and for which Defendant has no liability.

## THIRTY-EIGHTH DEFENSE

If Plaintiff, Gale Lyautey sustained injuries as a result of exposure to asbestos or asbestos-containing products, which is denied, then such injuries were or may have been due to exposure to products of manufacturers or distributors not named as Defendants in this action.

## THIRTY-NINTH DEFENSE

If this Defendant is liable to Plaintiffs, which liability this Defendant expressly denies, any liability is limited to this Defendant's percentage of fault as provided by Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law. Specifically, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure were wholly or partially caused by actions and/or negligence of other manufacturers and/or distributors of asbestos-containing products to which he was exposed, certain entities that supplied asbestos fiber to the manufacturers, installation contractors who used said products, premises owners, and others. The responsible entities include, but are not limited, to the following: Johns-Manville Corporation; UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to

Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; the Zonolite Company, and W.R. Grace as its successor in interest; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T

16

& N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; Canadian Johns-Manville; Lake Asbestos of Quebec; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Powhatan Mining Company; Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; E.J. Bartells Company; L & W Supply Corporation; Shook and Fletcher; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Wallace & Gale Company; Standard Insulations, Inc.; Fuller-Austin Insulation Company; Bigelow-Liptak Corporation; JT Thorpe; Burns and Roe, Inc.; Jacksonville Shipyard, Washington Group International, f/k/a Morrison Knudsen; Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; defendants

previously dismissed from this action; and existing defendants that are subsequently dismissed from this action, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade

Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Specifically, this Defendant is entitled to apportionment with respect to the foregoing entities on the following grounds:

A.     If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as manufacturers of products that contained asbestos or included asbestos-containing components, their predecessors and successors in interest, and any related companies:  UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Johns-Manville Corporation; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including

19

Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Co, and other T & N subsidiaries), and

20

Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; other manufacturers of products of the type identified by the Plaintiffs; any manufacturers that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation,

f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation, and any manufacturers that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly

suffered by the Plaintiffs. As manufacturers of asbestos-containing products (or products that included asbestos-containing components) that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries, the above-listed manufacturers owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named manufacturers breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they manufactured, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named manufacturers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named manufacturers' tortious conduct.

B.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to those manufacturers identified in Paragraph A, *supra*. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. Because they manufactured and/or distributed defective products that wholly or partially caused the Plaintiff, Gale Lyautey's injuries, the above-named manufacturers are strictly liable to the Plaintiffs for said injuries and the consequences thereof.

C.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following suppliers of

asbestos fiber (and/or asbestos-contaminated vermiculite), their predecessors and successors in interest, and any related companies: Johns-Manville Corporation; Canadian Johns-Manville; Lake Asbestos of Quebec; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Turner & Newall and other predecessors in interest to Federal Mogul; Powhatan Mining Company; H.K. Porter Company; the Zonolite Company, and W.R. Grace and Company as its successor in interest; any suppliers of asbestos fiber that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to

24

and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as

25

successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These entities supplied asbestos fiber to which the Plaintiff, Gale Lyautey was exposed, either directly or through contact with asbestos-containing products. As such, these entities had a duty to warn their customers, manufacturers of asbestos-containing products, of the potential asbestos hazards associated with their asbestos fiber. Each of these suppliers breached its respective duty by negligently failing to warn its customers of the potential asbestos hazards of the asbestos fiber it supplied, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. These suppliers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn their customers and, to the extent applicable, the Plaintiffs. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of these entities' tortious conduct.

D.   Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, the suppliers identified in Paragraph C, *supra,* are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiff, Gale Lyautey. These suppliers are subject to strict liability for manufacturing and/or distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

E.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as suppliers and

distributors of asbestos-containing products, their predecessors and successors in interest, and any related companies: Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; E.J. Bartells Company; L & W Supply Corporation; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Shook and Fletcher; Western Macarthur, f/k/a Western Asbestos; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; other suppliers and distributors of products of the type identified by the Plaintiffs; any suppliers and distributors of asbestos-containing products that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul;

27

Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; Yarway Corporation, and any suppliers and distributors of asbestos-containing products that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or

may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As suppliers and distributors of asbestos-containing products that caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they supplied and distributed, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named companies knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named companies' tortious conduct.

F.   Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the distributors and suppliers identified in Paragraph E, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These suppliers and distributors of asbestos-containing products are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

G.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as installers of asbestos-containing products and construction contractors who used asbestos-containing products, as well as their predecessors and successors in interest and any related companies:  Wallace & Gale Company; Standard Insulations, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing &

Insulating Company; Fuller-Austin Insulation Company; E.J. Bartells Company; Bigelow-Liptak Corporation; JT Thorpe; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Western Macarthur, f/k/a Western Asbestos; Burns and Roe, Inc.; Washington Group International, f/k/a Morrison Knudsen; Todd Shipyards; American Shipbuilding; other installers and contractors who used products of the type identified by Plaintiffs; any installers and contractors that were previously defendants to this action but have been dismissed; and any installers and contractors that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.;

30

Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As installers and contractors who used asbestos-containing products that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of

potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they used, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named entities knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named entities' tortious conduct.

H.   Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, the installers and contractors identified in Paragraph G, *supra,* are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. To the extent these installers and contractors also supplied asbestos-containing materials; they are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

I.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as employers and/or as the owner or party in possession of premises where the Plaintiff, Gale Lyautey was exposed to asbestos, as well as their predecessors and successors in interest and any related companies: Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries;

Washington Group International, f/k/a Morrison Knudsen; Merrill Stevens Shipyard, Jacksonville Shipyards, Jacksonville Shipyards, Inc., any such entities that were previously defendants to this action but have been dismissed; and any such entities that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to

33

The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation.   Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs.  The Plaintiff, Gale Lyautey's alleged injuries were wholly or partially caused by these entities' acts or omissions in breach of their duties of care to the Plaintiff, Gale Lyautey.

J.     In addition, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure are wholly or partially the result of actions and/or negligence of other parties, persons, firms, or corporations in addition to those specified above, including, but not limited to, the Plaintiff, Gale Lyautey himself; his various employers during the time of his alleged asbestos exposure; any and all persons or entities that owned or had a

34

possessory interest in the locations where the Decedent may have been exposed to asbestos; any and all persons or entities that otherwise had control over or responsibility for the locations where the Decedent may have been exposed to asbestos; and the entities identified in the Plaintiff, Gale Lyautey's Social Security printout and exposure sheets.

K.     In addition, this Defendant asserts its right to apportionment with respect to manufacturers and distributors of tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household.  Tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household caused or contributed to the Plaintiff, Gale Lyautey's alleged injuries, and the manufacturers and distributors of these products are liable on the grounds of negligence and strict product liability.  Likewise, this Defendant asserts that manufacturers and distributors of other harmful products to which the Plaintiff, Gale Lyautey was exposed are liable on the grounds of negligence and strict product liability, and this Defendant asserts its right to apportionment with respect to these manufacturers and distributors.

## FORTIETH DEFENSE

Pursuant to **Fla. Stat.** §§ 46.015(2), 768.041(2), and 768.31(5), Defendant is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff, Gale Lyautey's alleged injuries and/or Plaintiffs' alleged damages, as well as any such settlement or compromise previously reached by Plaintiffs.  Defendant also asserts its right to collateral-source set-off under **Fla. Stat.** § 768.76.

35

## FORTY-FIRST DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleged to have been incurred, however, the Plaintiff, Gale Lyautey failed to exercise ordinary care for his own safety, and this failure proximately caused his alleged injury and Plaintiffs' alleged damages. Therefore, the claims asserted in Plaintiffs' Complaint are partially or completely barred under the doctrines of contributory negligence and comparative fault.

## FORTY-SECOND DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleges to have been incurred, however, the Plaintiff, Gale Lyautey voluntarily and knowingly assumed the risk of incurring the alleged injury or damages, and, therefore, Plaintiffs are not entitled to recover from Defendant.

## FORTY-THIRD DEFENSE

If the Plaintiff, Gale Lyautey suffered any injuries as alleged in the Complaint, which this Defendant specifically denies, Plaintiff, Gale Lyautey failed to make reasonable efforts to mitigate these injuries and damages.

## FORTY-FOURTH DEFENSE

The Plaintiff, Gale Lyautey failed to take action to prevent the avoidable consequences of any action or omission of which Plaintiffs complain.

## FORTY-FIFTH DEFENSE

If the Plaintiff, Gale Lyautey or any member of his household used tobacco products, this use was a failure to exercise ordinary care for the Plaintiff, Gale Lyautey's own safety and was the sole or primary cause of his injuries. The negligence of the Plaintiff, Gale Lyautey, or

members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### FORTY-SIXTH DEFENSE

The Plaintiff, Gale Lyautey's alleged contact with or use of any asbestos-containing products supplied, sold, or manufactured by this Defendant, which is expressly denied, if such use or contact in fact occurred, was not a substantial contributing cause of the Plaintiff, Gale Lyautey's alleged injuries.

### FORTY-SEVENTH DEFENSE

Any exposure of the Plaintiff, Gale Lyautey to this Defendant's products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff, Gale Lyautey's injuries.

### FORTY-EIGHTH DEFENSE

There is no causal connection between Defendant, or any product sold by Defendant, and any injury sustained by Plaintiff, Gale Lyautey; such causal connection being remote, indefinite, and speculative. Consequently, the Complaint should be dismissed as to Defendant.

### FORTY-NINTH DEFENSE

Any damages claimed by the Plaintiffs that have not accrued are purely speculative, uncertain, and contingent and therefore cannot be recovered in this action.

### FIFTIETH DEFENSE

If the Plaintiff, Gale Lyautey suffered injuries, which this Defendant specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products sold or distributed by this Defendant, but rather by his exposure to dangerous or hazardous

chemicals, fumes, products, substances, or dust that were present at Plaintiff, Gale Lyautey's workplace or elsewhere.

### FIFTY-FIRST DEFENSE

If there is an association between the Plaintiff, Gale Lyautey's alleged injuries and various agents to which he may have been exposed during his lifetime, which Defendant does not concede, the number of different agents to which he was exposed within and outside of Plaintiff, Gale Lyautey's workplace during his lifetime and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to the requisite degree of legal certainty, whether a causal connection exists between his alleged injuries and any particular agent.

### FIFTY-SECOND DEFENSE

Plaintiffs' claim for punitive damages is barred by Section 7(s) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(1), Florida's Constitution, the U.S. Constitution and this Court's Omnibus Order.

### FIFTY-THIRD DEFENSE

Pursuant to Section 5(1) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(1), Plaintiffs' Complaint must be dismissed unless (a) Plaintiffs are currently domiciled in Florida, or (b) Plaintiffs demonstrate that the Plaintiff, Gale Lyautey was exposed to asbestos in Florida and that this exposure in Florida was a substantial contributing factor to the alleged physical impairment underlying Plaintiffs' claim.

### FIFTY-FOURTH DEFENSE

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B

of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), the Court should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to **Fla. Stat.** § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

**FIFTY-FIFTH DEFENSE**

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required Plaintiffs to serve a completed Forum Non Conveniens Fact Sheet with the Complaint. Plaintiffs either failed to serve a Forum Non Conveniens Fact Sheet at all or else served a purported Forum Non Conveniens Fact Sheet that was deficient for failure to include any or all of the required information.

**FIFTY-SIXTH DEFENSE**

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which the Plaintiff, Gale Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

39

## FIFTY-SEVENTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because the Plaintiff, Gale Lyautey did not have a physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.

## FIFTY-EIGHTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because factors other than asbestos exposure were more probably the cause of the Plaintiff, Gale Lyautey's alleged medical condition and physical impairment.

## FIFTY-NINTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a sufficient "sworn information form" as required by Section 5(3) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(3).

## SIXTIETH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a report of settlements and judgments obtained for the Plaintiff, Gale Lyautey's alleged injury and/or Plaintiffs' alleged damages, as is required by Section 7(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(2).

## SIXTY-FIRST DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit with the Complaint a written report and supporting test results constituting *prima facie* evidence that the Plaintiff, Gale Lyautey had an asbestos-related physical impairment meeting the requirements specified in Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204. Alternatively, Plaintiffs' purported prima facie evidence is inadequate in that it fails to include some or all of the requisite elements that Section 4 specifies for the Plaintiff, Gale Lyautey's alleged disease.

### SIXTY-SECOND DEFENSE

Pursuant to Section 4(10)(b) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204(10)(b), Plaintiffs' presentation of prima facie evidence, if any, meeting the requirements of Section 4 of the Act is not conclusive as to Defendant's liability.

### SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred by Section 774.208, Florida Statutes, which provides that there is no cause of action, in an asbestos claim, against a product seller for harm caused by a product which the seller did not manufacture, sell, rent, lease, or expressly warrant, in the absence of intentional misconduct.

### SIXTY-FOURTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs also fail to comply with the Act by not attaching any "supporting documentation of the condition claimed to exist," pursuant to 774.205(3)(g), Florida Statute.

### SIXTY-FIFTH DEFENSE

Defendant restates and incorporates by reference any and all affirmative defenses raised by any other Defendant in this case as if fully set out verbatim herein.

### SIXTY-SIXTH DEFENSE

Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

### SIXTY-SEVENTH DEFENSE

Defendant reserves the right to amend its Answer, if appropriate, after full investigation and discovery.

41

Submitted this 4th day of August, 2010.

BICE COLE LAW FIRM, P.L.

Brenda Godfrey
Florida Bar No.: 0707716
Marsad Quraishi
Florida Bar No.: 23790
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, Fl  33134
305-444-1225
*Counsel for Buffalo Pumps, Inc.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served via LexisNexis File & Serve on Plaintiffs' counsel and all counsel of record this 4th day of August, 2010.

Attorney



IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 10-35086 CA 31

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

        Plaintiffs,

v.

ALFA LAVAL, INC., et al.,

        Defendants.

---

### ANSWER TO PLAINTIFFS' COMPLAINT AND ADDITIONAL DEFENSES OF DEFENDANT, CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation (hereinafter "Westinghouse"), as its Answer to the Complaint of Plaintiffs ("Plaintiff") herein referred to singularly or plurally, living or deceased, possessively and/or in any such capacity as may apply herein), states and alleges as follows:

1.    Pursuant to FLA. R. CIV. P. 1.110(c), Westinghouse denies generally each and every allegation of matter, fact and thing contained in the Complaint, and the whole thereof, save and except as is hereinafter admitted, qualified or otherwise stated.

2.    Defendant admits that it is a corporation organized and existing under the laws of the State of Delaware, and that it has its principal place of business in the State of New York.

3.    Defendant admits that it is licensed to do business in this state.

4.    Westinghouse specifically denies that it mined, milled, processed, manufactured, supplied, distributed, marketed or sold any products containing asbestos that are causally related to Plaintiff's injuries and denies it otherwise caused or contributed to Plaintiff's alleged injuries.

1

5.      Westinghouse lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations against other defendants.

6.      Westinghouse lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations as to his marital status, residency, or work history.

## DEFENSES

1.      Plaintiff's Complaint, and each count in it, fails to state a cause of action.

2.      This Court lacks subject matter jurisdiction and/or personal jurisdiction over Westinghouse. In particular, there is no showing of any connection between Plaintiff's alleged injury and Westinghouse's activities in the State of Florida.

3.      Westinghouse should be dismissed because venue as to this Westinghouse is improper.

4.      Westinghouse contends that there has been an insufficiency of process and an insufficiency of service of process as to this Westinghouse.

5.      This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff lived and/or worked.

6.      This action is barred by the applicable statute of repose of Florida or the applicable statute of repose of any state where the Plaintiff lived and/or worked.

7.      Westinghouse alleges that it is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation law of any other state where the Plaintiff may have worked, with respect to immunity or offset for payments received by the Plaintiff.

8.      This action is barred in whole or in part by the doctrine of comparative negligence.

9.      Contact with or use by the Plaintiff of any asbestos-containing products supplied, sold or manufactured by Westinghouse, or used on Westinghouse's premises, was not a substantial contributing cause of Plaintiff's alleged injuries.

10.      This action is barred in whole or in part by the doctrine of shifting responsibility.

11.      This action cannot be maintained on the basis of substantive or jurisdictional statutes or legal theories which did not exist as of the dates on which the Plaintiff used or was exposed to Westinghouse's products, or products used on Westinghouse's premises, in that such statutes are inapplicable to this action, and in that the application of such legal theories to this action would be unconstitutionally retroactive.

12.      At all times relevant hereto, Westinghouse was in full compliance with the standards

and/or specifications issued by the United States Government with respect to asbestos-containing products. These standards and/or specifications required the use of asbestos. Therefore, this action is barred in whole or in part because Westinghouse, in supplying or using any products to which Plaintiff allegedly was exposed, relied upon the specifications of the United States Government or other governmental entities regarding the composition of said products.

13. This action is barred in whole or in part because Westinghouse reasonably relied upon the care and skill of Plaintiff's employers or Plaintiff's labor unions, and/or other learned intermediaries.

14. This action is barred in whole or in part because Westinghouse reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Westinghouse had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and therefore had no duty to warn.

15. Plaintiff's Complaint fails to state a cause of action against Westinghouse as succeeding to the debts and liabilities of any other manufacturer of asbestos-containing products. Similarly, Plaintiff's Complaint fails to state a cause of action for punitive damages arising from the activities of any predecessor corporation.

16. Westinghouse is not a joint tortfeasor with any other defendant herein, and accordingly Westinghouse may not be jointly and severally liable with other defendants.

17. To the extent that various defendants have concluded, or may conclude, settlements with the Plaintiff, this Westinghouse is entitled to a setoff for any amount paid or to be paid.

18. This action fails to name as a defendant a potentially indispensable party to the litigation, to-wit: That collection of companies known as the "Manville Group."

19. Westinghouse incorporates by reference all defenses raised by any other defendant in this case.

20. The Plaintiff's alleged injuries and/or damages were caused by third persons and/or entities over whom this Westinghouse had no control. Accordingly, this Westinghouse demands that such third persons and/or entities be listed on the verdict form so that the jury can apportion fault for Plaintiff's alleged injuries pursuant to Fla. Stat. § 768.81.

21. Plaintiff's claims are barred by express assumption of risk in that Plaintiff knew of the existence of the danger complained of in the Complaint, realized and appreciated the possibility of injury as a result of the danger and, having a reasonable opportunity to avoid it, voluntarily exposed himself to the danger.

22. Plaintiff's claims are barred in that the product in question was substantially altered after it left the possession, custody or control of the manufacturer and, on the date of the alleged injury, said product was not in substantially the same condition as it was at the

3

time it left the possession, custody or control of the manufacturer.

23. Plaintiff cannot recover against Westinghouse upon any claim asserted because there was no causal relationship between the actions of Westinghouse and the alleged defective condition of the products referred to in the Complaint, and Westinghouse committed no acts or omissions which proximately caused any of the damages alleged by the Plaintiff.

24. Plaintiff cannot recover against Westinghouse on any claim asserted because Plaintiff's alleged damages were proximately caused by misuse, abuse, modification, alteration or other acts or omissions of Plaintiff or others with regard to the product in question.

25. Plaintiff cannot recover against Westinghouse due to intervening causes, on any claim asserted based on any alleged negligence or other conduct on the part of Westinghouse or any alleged defect in the product in question, because neither Westinghouse nor any conduct or product of Westinghouse was the proximate cause of the Plaintiff's alleged injuries.

26. The products in question were not dangerous when used in a reasonable and foreseeable manner and for their intended use.

27. The products in question met or exceeded all applicable codes or regulations at the time of manufacture and sale or distribution.

28. To the extent the Complaint seeks recovery for breach of warranty, it should be dismissed due to Plaintiff's failure to allege the necessary privity.

29. The delay in commencing this action has resulted in prejudice to Westinghouse and, accordingly, the equitable defense of laches bars Plaintiff's claims.

30. As a result of the inability of Plaintiff to identify any products Westinghouse manufactured, used or sold, which allegedly caused injury to Plaintiff, the Complaint fails to state a claim upon which relief can be granted since, if such relief were granted, it would deprive Westinghouse of its constitutional rights to substantive and procedural due process of law and equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I of the Florida Constitution.

31. As a result of the inability of Plaintiff to identify any products Westinghouse manufactured, used or sold, which allegedly caused injury to Plaintiff, the Complaint fails to state a claim upon which relief can be granted since, if such relief were granted, such relief would constitute a taking of private property for public use, without just compensation. Such a taking would contravene the constitutional rights of Westinghouse as preserved for it by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I of the Florida Constitution.

32. Any exposure that Plaintiff claims to Westinghouse's products or equipment, or to products or equipment used on Westinghouse's premises, which exposure is vigorously

4

denied, was so minimal as to be insufficient to establish a reasonable degree of probability that any such products or equipment substantially contributed to Plaintiff's alleged injuries.

33. To the extent Plaintiff's Complaint is deemed to allege liability for punitive damages, this Westinghouse asserts that Plaintiff's claim for punitive damages is unconstitutional and in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States in that it deprives this Westinghouse of property without due process of law; further, the claim for punitive damages is violative of the Fourteenth Amendment to the Constitution of the United States concerning equal protection. Any award or claim for punitive damages is further violative of the procedural safeguards of the Sixth and Eighth Amendments to the Constitution as punitive damages are penal in nature and this Westinghouse is entitled to the safeguards afforded pursuant to the Sixth and Eighth Amendments. Any claim for punitive damages is also violative of the similar provisions contained in § 2, 9, 16 and 17 of Article I of the Constitution of the State of Florida.

34. To the extent Plaintiff's Complaint is deemed to allege a claim for punitive damages, such claim must be stricken as being in violation of § 768.72 of the Florida Statutes.

35. To the extent Plaintiff's Complaint seeks recovery of punitive damages, Plaintiff fails to state a claim upon which relief may be granted.

36. To the extent Plaintiff's Complaint and the alleged causes of action pled therein are based upon a failure to identify Westinghouse as the manufacturer, user or seller in fact of any injury-causing products, or upon a failure to identify any product manufactured, used or sold by Westinghouse as the cause in fact of any injuries to the Plaintiff, said Complaint fails to state a claim upon which relief can be granted, inasmuch as such claims, if granted, would constitute an invalid burden by this Court on interstate commerce, and a burden without resort to less burdensome alternatives, in violation of the Commerce Clause, Article I, § 8, of the Constitution of the United States.

37. If it is determined that Plaintiff was exposed to any of Westinghouse's products which contained products or components acquired from, sold by or used on behalf of the United States of America, the State of Florida or any other state, then Westinghouse is entitled to any sovereign or governmental immunity available to the United States or to the State of Florida or such other state.

38. If Plaintiff sustained any injuries or damages as alleged in the Complaint, all of which Westinghouse specifically denies, then such injuries and damages were caused or contributed to by reason of the negligence of said Plaintiff, by reason of, but not limited to, said Plaintiff's failure to wear a respirator, engage in safe work practices or to protect himself adequately from risk of harm.

39. If Plaintiff sustained any injury or damages as alleged, which is denied, the same resulted, upon information and belief, from Plaintiff's own negligence in failing to care for his own health by using tobacco products and said negligence is the sole, direct and

proximate cause or contributing cause of the alleged injury or damage, if any, about which Plaintiff complains.

40.    Westinghouse asserts and relies upon all prior orders of the Court dismissing and/or striking claims in asbestos personal injury cases comparable or similar to claims alleged in the Complaint.

41.    All allegations in the Complaint that do not refer or relate to Westinghouse should be stricken.

42.    Westinghouse contends that if Plaintiff has released, settled, entered into an accord and satisfaction, or otherwise compromised his claims herein, then accordingly, said claims are barred.

43.    Plaintiff's allegations are either barred by or fail to meet the requirements of Florida's Asbestos and Silica Compensation Fairness Act, 2005, Fla. Laws Ch. 2005-274, Section 774.01 et seq., effective July 1, 2005.

44.    Because of the generality of the allegations in the Complaint, Westinghouse reserves the right to amend its answer and affirmative defenses if investigation, discovery and further information should warrant such amendment, and, further, to assert any applicable matters of law during the pendency of this action.

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically served to all counsel maintained for this Plaintiff by the Dade County Asbestos Litigation Electric Service System, and to Plaintiff's counsel David A. Jagolinzer, Esquire, The Ferraro Law Firm, 4000 Ponce de Leon Blvd., Suite #700, Miami, FL 33146 via U.S. Mail.

This _5_ day of August, 2010.

Respectfully submitted,

EVERT WEATHERSBY HOUFF

By: _C. Michael Evert_

C. Michael Evert, Jr., Esquire
Florida Bar No.  0419249
3405 Piedmont Road, Suite 200
Atlanta, Georgia 30305
Tel:  (678) 651-1200
Fax:  (678) 651-1201

Attorneys for Defendant, CBS Corporation,
a Delaware corporation, f/k/a
Viacom Inc., successor by merger to
CBS Corporation, a Pennsylvania corporation,
f/k/a Westinghouse Electric Corporation

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY, and                                ASBESTOS LITIGATION
PATRICIA LYAUTEY, his wife,
                                                 CASE NO. 10-35086
        Plaintiffs,

v.

ALFA LAVAL, INC., *et al.*,

        Defendants.
_____/

## NOTICE OF APPEARANCE

COMES NOW the Law Firm of Brown Sims, P.C., by and through the
undersigned counsel, and files its Notice of Appearance as Counsel for Defendant ALFA
LAVAL INC., Individually and as Successor in Interest to The DeLaval Separator
Company, in this lawsuit.  It is respectfully requested that the undersigned be provided
with copies of all future pleadings, motions, notices, correspondence, and all other
documents pertaining to the above referenced case.

                              Respectfully Submitted,

                              **BROWN SIMS, P.C.**

                     By: _____
                              FRANK J. SIOLI
                              Florida Bar No. 009652
                              fsioli@brownsims.com
                              Brown Sims, P.C.
                              Datran II, Suite 1609
                              9130 S. Dadeland Boulevard
                              Miami, Florida 33156
                              Telephone:    305.274.5507
                              Facsimile:    305.274.5517
                              *Attorneys for Alfa Laval, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been sent to all Counsel of Record via *Lexis Nexis File & Serve* on this 5th day of August, 2010.

FRANK J. SIOLI
For the Firm

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

               Plaintiff,

v.

ALFA LAVAL, INC et al.,

               Defendants.

_____/

CASE NO. 10-35086-CA-31

ASBESTOS LITIGATION

## MCCORD CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES AND DEMAND FOR JURY TRIAL AS TO PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

McCord Corporation (hereinafter "McCord"), by and through its undersigned counsel, hereby serves its Answer, Affirmative Defenses and Demand for Jury Trial as to Plaintiffs' Complaint and Demand for Jury Trial (hereinafter "Complaint"), and states as follows:

### ANSWER

1.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint and, therefore, denies same.

2.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint and, therefore, denies same.

3.    McCord denies the allegations set forth in Paragraph 3 of the Complaint.

4.    McCord denies the allegations set forth in Paragraph 4 of the Complaint.

5.    McCord denies the allegations set forth in Paragraph 5 of the Complaint.

6.    McCord denies the allegations set forth in Paragraph 6 of the Complaint.

{FT699450;1}

7.     McCord denies the allegations set forth in Paragraph 7 of the Complaint.

8.     McCord denies the allegations set forth in Paragraph 8 of the Complaint.

9.     McCord denies the allegations set forth in Paragraph 9 of the Complaint.

10.    McCord denies the allegations set forth in Paragraph 10 of the Complaint.

## DEFENDANTS

11.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint and therefore denies same.

12.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint and therefore denies same.

13.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint and therefore denies same.

14.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint and therefore denies same.

15.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint and thereof  denies same.

16.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint and therefore denies same.

17.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint and therefore denies same.

18.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint and therefore denies same.

19.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint and therefore denies same.

20.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint and therefore denies same.

21.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint and therefore denies same.

22.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint and therefore denies same.

23.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint and therefore denies same.

24.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint and therefore denies same.

25.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint and therefore denies same.

26.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint and therefore denies same.

27.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint and therefore denies same.

28.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint and therefore denies same.

29.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint and therefore denies same.

30.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint and therefore denies same.

31.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint and therefore denies same.

32.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint and therefore denies same.

33.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Complaint and therefore denies same.

34.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Complaint and therefore denies same.

35.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint and therefore denies same.

36.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint and therefore denies same.

37.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint and therefore denies same.

38.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint and therefore denies same.

39.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint and therefore denies same.

40.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint and therefore denies same.

41.    McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint and therefore denies same.

42.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Complaint and therefore denies same.

43.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint and therefore denies same.

44.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint and therefore denies same.

45.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint and therefore denies same.

46.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint and therefore denies same.

47.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the Complaint and therefore denies same.

48.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint and therefore denies same.

49.     McCord admits that it is a Delaware Corporation and that its principal place of business is in Tennessee, but denies the remainder of the allegations set forth in Paragraph 49.

50.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint and therefore denies same.

51.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint and therefore denies same.

52.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of the Complaint and therefore denies same.

53.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint and therefore denies same.

54.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54 of the Complaint and therefore denies same.

55.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 of the Complaint and therefore denies same.

56.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56 of the Complaint and therefore denies same.

57.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 of the Complaint and therefore denies same.

58.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58 of the Complaint and therefore denies same.

59.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of the Complaint and therefore denies same.

60.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of the Complaint and therefore denies same.

61.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61 of the Complaint and therefore denies same.

62.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint and therefore denies same.

63.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of the Complaint and therefore denies same.

64.     McCord is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Complaint and therefore denies same.

65.     McCord denies the allegations set forth in Paragraph 65 of the Complaint.

66.     McCord denies the allegations set forth in Paragraph 66 of the Complaint.

67.     McCord denies the allegations set forth in Paragraph 67 of the Complaint and any subparts thereof and, therefore, denies same.

## COUNT I:  NEGLIGENCE

McCord realleges and reincorporates its answers to Paragraphs 1 through 67 as though fully set forth herein.

68.     McCord denies the allegations set forth in Paragraph 68 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

69.     McCord denies the allegations set forth in Paragraph 69 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

70.     McCord denies the allegations set forth in Paragraph 70 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

71.     McCord denies the allegations set forth in Paragraph 71 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

72.     McCord denies the allegations set forth in Paragraph 72 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

73.     McCord denies the allegations set forth in Paragraph 73 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

74.     McCord denies the allegations set forth in Paragraph 74 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

75.     McCord denies the allegations set forth in Paragraph 75 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

76.     McCord denies the allegations set forth in Paragraph 76, and any subparts thereof, to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, McCord demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## COUNT II: STRICT LIABILITY

McCord realleges and reincorporates its answers to Paragraphs 1 through 67 as though fully set forth herein.

77.     McCord denies the allegations set forth in Paragraph 77 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

78.     McCord denies the allegations set forth in Paragraph 78 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

79.     McCord denies the allegations set forth in Paragraph 79 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

80.     McCord denies the allegations set forth in Paragraph 80 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

81.     McCord denies the allegations set forth in Paragraph 81 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

82.     McCord denies the allegations set forth in Paragraph 82 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

83.     McCord denies the allegations set forth in Paragraph 83 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

84.     McCord denies the allegations set forth in Paragraph 84 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

85.     McCord denies the allegations set forth in Paragraph 85, and any subparts thereof, to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

86.     McCord denies the allegations set forth in Paragraph 86 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

87.     McCord denies the allegations set forth in Paragraph 87 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

88.     McCord denies the allegations set forth in Paragraph 88 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, McCord demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## COUNT III:  LOSS OF CONSORTIUM – PATRICIA LYAUTEY

McCord realleges and reincorporates its answers to Paragraphs 1 through 88 as though fully set forth herein.

89.     McCord denies the allegations set forth in Paragraph 89 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, McCord demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## DAMAGES

McCord realleges and reincorporates its answers to Paragraphs 1 through 89 as though fully set forth herein.

90.     McCord denies the allegations set forth in Paragraph 90 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

91.     McCord denies the allegations set forth in Paragraph 91 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

92.     McCord denies the allegations set forth in Paragraph 92 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

93.     McCord denies the allegations set forth in Paragraph 93 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

94.     McCord denies the allegations set forth in Paragraph 94 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

95.     McCord denies the allegations set forth in Paragraph 95 to the extent they pertain to it.  To the extent the allegations pertain to other parties, McCord is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, McCord demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a cause of action or claim upon which relief can be granted against McCord.

### Second Affirmative Defense

This action is barred by the applicable statute of limitations and/or statute of repose.

### Third Affirmative Defense

This action is barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, laches, and/or waiver.

### Fourth Affirmative Defense

This action is barred, in whole or in part, by Plaintiff Gale Lyautey's (hereinafter "Lyautey") voluntary assumption of a known risk or harm, or risks of harm which he knew or should have known at the time of the alleged exposure.

### Fifth Affirmative Defense

This action is barred, in whole or in part, by the doctrines of contributory negligence and comparative fault, in that the negligence, fault, or responsibility of Lyautey proximately caused or proximately contributed to cause the alleged injuries and damages, which bars or reduces Lyautey's recovery herein.

### Sixth Affirmative Defense

Lyautey was neither exposed to nor used any product manufactured, sold, distributed, supplied, mined, processed, converted, compounded, or retained by McCord.

### Seventh Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, supplied, mined, processed, converted, compounded, or retained by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that Lyautey was himself negligent generally and in the following particulars:

       a.      In failing to use proper safety equipment, which was available to Lyautey at all times before, during, and after the time of the alleged exposure;

       b.      In failing to demand that proper safety equipment be supplied to Lyautey at all times before, during, and after the time of the alleged exposure;

       c.      In failing to read any instructions and/or warning distributed by McCord or McCord's predecessor in connection with the sale or use of its products;

       d.      By using improper techniques and methods in the use and application of McCord's or McCord's predecessor's products;

       e.      In otherwise failing to exercise due care and caution under the circumstances.

### Eighth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is

specifically denied, the alleged injuries and/or damages, if any, were caused solely by: (a) the acts, wrongs, or omissions of Lyautey; (b) the unintended or improper use of said products; (c) Lyautey's preexisting conditions; or (d) forces and/or things over which McCord had no control and for which McCord is not responsible or liable.

### Ninth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that the products were abused, misused, or otherwise substantially changed or altered by persons or parties other than McCord and that McCord is not responsible or liable.

### Tenth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that the alleged injuries and/or damages, if any, were the result of intervening or superseding events, factors, occurrences or conditions, which were in no way caused by McCord and for which McCord is not responsible or liable.

### Eleventh Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that McCord neither knew at that time, nor reasonably

should have known in light of the available medical, scientific, or other information, that any product of the type or nature referred to in the Complaint was hazardous or constituted a reasonably foreseeable risk of harm to Lyautey in the normal and expected use of said products.

### Twelfth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, were proximately caused by the acts and/or omissions of a person or persons over whom McCord had neither control nor the right to control and/or are the result of intervening acts of superseding negligence on the part of such a third person, and therefore, Lyautey is barred from recovery against McCord.

### Thirteenth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, arose in whole or in part from one or more other causes or circumstances, including but not limited to, direct smoking or exposure to environmental tobacco smoke, and not as a result of any exposure to any products manufactured, sold, distributed, and/or supplied by McCord.

### Fourteenth Affirmative Defense

This action is barred, in whole or in part, by the applicable Workers' Compensation Act, which provided for exclusive remedies, thus preempting Plaintiffs' claim for civil remedies.

### Fifteenth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by McCord or McCord's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, and if it is further shown that such products was supplied by the United

States Government, then McCord raises any immunity from suit or liability conferred upon the United States Government and/or McCord, which may arise under the circumstances.

### Sixteenth Affirmative Defense

McCord specifically denies that that the Plaintiffs are allowed to recover exemplary or punitive damages. In this regard, McCord avers that such damages are unconstitutional in that claims for such damages are barred by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the applicable provisions of Constitution of the State of Florida. As a further affirmative defense, the claim of punitive damages is premature because the pleading requirements established by Fla. Stat. §768.62 are not satisfied by a showing of evidence on the record, or proffered by Plaintiffs, which would provide a reasonable basis for recovery of such damages.

### Seventeenth Affirmative Defense

Plaintiffs have failed to provide timely notice of the alleged claims which now acts to bar this civil action.

### Eighteenth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, were due to the negligence of Lyautey's fellow servants engaged in the course of common employment with Lyautey, and that such negligence of the fellow servants bars this civil action.

### Nineteenth Affirmative Defense

This action is barred to the extent that Plaintiffs have failed to join indispensable parties.

### Twentieth Affirmative Defense

It is unlawful, inequitable and in violation of McCord's contractual, statutory, and constitutional rights to apply statutes or principles of law other than, or in a manner different from those existing during the time period in which McCord or McCord's predecessor allegedly manufactured, sold, distributed, and/or supplied products.

### Twenty-First Affirmative Defense

*In personam* jurisdiction over McCord is lacking as there is not a sufficient nexus between Plaintiffs' alleged injuries and the activities of McCord in Florida.

### Twenty-Second Affirmative Defense

Venue in this county is improper, to the extent appropriate, if none of the Defendants reside or conduct business in that county or if the interest of justice are jeopardized by Plaintiffs' choice of forum, this action should be transferred to another venue. Moreover, should Plaintiffs' choice of forum adversely affect the conveniences of the parties or witnesses, this action should be dismissed in favor of an adequate alternative forum.

### Twenty-Third Affirmative Defense

McCord is relieved of liability because the loss, injury, or damages alleged by Lyautey were caused by other intervening and superseding factors including, but not limited to the failure of labor unions and/or employers to provide training and proper protective equipment to assure a safe working environment; or to warn workers of possible health hazards associated with exposure to asbestos; or the failure of other persons or entities having the immediate opportunity to prevent or warn of injury, but failed to do so.

### Twenty-Fourth Affirmative Defense

This action is barred because at all times material hereto, McCord was acting in compliance with governmental or private contract specifications. Moreover, the government's knowledge of the potential dangers related to the use of those products was greater than the knowledge of McCord, and McCord is, thus, immune from any liability for any damages allegedly suffered by Plaintiffs as a consequence of any exposure to asbestos contained within any such products.

### Twenty-Fifth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied McCord or McCord's predecessor, which McCord specifically denies, then it is averred that the alleged exposure was so minimal and insufficient to establish a reasonable degree of certainty or probability that the injuries and damages of which Lyautey complains were caused by such alleged exposure.

### Twenty-Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or by part, due to a failure to mitigate any injuries and damages that they have allegedly suffered.

### Twenty-Seventh Affirmative Defense

Apportionment of damages, if any, should be accomplished in accordance with the provisions of Fla. Stat. §768.81(3) and/or *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993), or other applicable law, and the Court should enter judgment against each party (whether a party to this litigation or not) on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.

### Twenty-Eighth Affirmative Defense

McCord denies that any of its actions, activities or omissions were the proximate cause of any of Plaintiffs' alleged damages.

### Twenty-Ninth Affirmative Defense

McCord denies the application of a strict liability doctrine to this litigation, generally, and to McCord specifically.  As a matter of social policy, this is an inappropriate case for a product liability claim because the societal benefit of McCord's products outweighed and outweighs any risk to the user or any bystander.

### Thirtieth Affirmative Defense

McCord's products were not defective in design or manufacture and the characteristics of such products are a general aspect that cannot be eliminated without substantially compromising the usefulness or desirability of such products, as recognized by the ordinary person with ordinary knowledge in the community.

### Thirty-First Affirmative Defense

McCord made no warranties, express or implied, that extended to Plaintiffs, thus, McCord did not breach any such warranties.

### Thirty-Second Affirmative Defense

The number of different agents to which Lyautey was exposed within and without the workplace during his lifetime, and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to a requisite level of legal certainty, the alleged causal connection between injuries and said agents, if indeed there is any such connection.

### Thirty-Third Affirmative Defense

Lyautey and or his employers were sophisticated users of, or learned intermediaries, with respect to the use of the products to which Lyautey was allegedly exposed. Therefore, McCord is not liable to Plaintiffs.

### Thirty-Fourth Affirmative Defense

McCord's warnings and other labels complied in all respects with federal regulations. To the extent that Plaintiffs claim that McCord failed to give adequate warnings about any of its products, it is averred that such claims are preempted by federal regulations including, but not limited to, those promulgated under or by the Occupational Safety and Health Administration.

### Thirty-Fifth Affirmative Defense

To the extent that Plaintiffs assert a claim against McCord sounding in strict products liability or in product liability under 402 or Section 402A of the Restatement (Second) Torts, McCord did not at any time engage in any acts, omissions, or other conduct that would render it strictly liable to Plaintiffs for any alleged injuries or damages.

### Thirty-Sixth Affirmative Defense

McCord avers that it did not know, and in light of the existing reasonably available scientific and technical knowledge, could not have known of: (a) the design characteristics, if any, that allegedly caused the injuries or damages complained of herein or the alleged danger of such characteristics, or (b) any alternative design referenced by Plaintiffs. McCord further avers that any alternative design was neither economically practical, scientifically feasible, nor technologically feasible.

### Thirty-Seventh Affirmative Defense

Plaintiffs' breach of warranty claims are barred by lack of privity.

### Thirty-Eighth Affirmative Defense

Plaintiffs' claims are barred, limited or otherwise subject to the terms and conditions of sale and delivery of the products at issue, as set forth in the documents relevant to such sale and delivery.

### Thirty-Ninth Affirmative Defense

The damages claimed by Plaintiffs which have not yet accrued are purely speculative, uncertain and contingent.

### Fortieth Affirmative Defense

Plaintiffs' Complaint should be dismissed because there has been no service of process, or improper or insufficient process and/or improper or insufficient service of process on these Defendants.

### Forty-First Affirmative Defense

Any sales or provisions of asbestos-containing products, if any, by McCord was made to sophisticated users and purchasers who were fully aware of the risks, if any, and characteristics associated with such products, and any claims of liability by Lyautey against McCord is therefore barred as a matter of law.

### Forty-Second Affirmative Defense

Any asbestos-containing products manufactured, sold or supplied by McCord or McCord's predecessor, if any, and provided to Lyautey's employer(s) met with all requirements, standards and specifications of said employer, as well as with pertinent industry standards, and pertinent standards, requirements, specifications and/or regulations promulgated by any federal, state and local governmental agencies.

### Forty-Third Affirmative Defense

At the time of the filing of the Complaint, there was no ground, in law or in fact, to support the Complaint as to McCord, and therefore, McCord is entitled to attorney's fees under § 57.105, Florida Statutes.

### Forty-Fourth Affirmative Defense

Lyautey has released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims herein, and accordingly, said claims are barred by payment, accord and satisfaction, arbitration and award, release, and res judicata; alternatively, McCord shows that if Plaintiffs have accepted compensation in partial settlement of Plaintiffs' claims from collateral sources, McCord is entitled to a set-off in said amount.

### Forty-Fifth Affirmative Defense

The causes of action asserted by Plaintiffs fail to state a claim upon which relief can be granted, in that Plaintiffs have asserted claims for relief which, if granted, would constitute a taking of private property for public use, without just compensation.  Such a taking would contravene McCord's constitutional rights as preserved by the Fourteenth Amendment to the Constitution of the United States and by the Florida Constitution.

### Forty-Sixth Affirmative Defense

At all times material to this action, McCord's products, or products of its predecessors, were reasonably fit for their intended purpose and were not defective or inherently dangerous.

### Forty-Seventh Affirmative Defense

Lyautey was not directly or indirectly exposed to asbestos fibers from McCord's products because any products that contained asbestos that were manufactured, distributed, sold and/or supplied by McCord were made so that the asbestos fibers were encapsulated in other material

which would prevent the release of injury producing levels of such fibers based on ordinary and intended use of the products.

### Forty-Eighth Affirmative Defense

Affirmatively, McCord states that Plaintiffs' allegations are barred by Florida's Asbestos and Silica Compensation Act, 2005, Fla. Laws Chapter 2005-274, effective July 1, 2005.

### Forty-Ninth Affirmative Defense

The attempted service of process on McCord was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon McCord, this Court lacks jurisdiction over the corporate person and property of McCord.

### Fiftieth Affirmative Defense

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on McCord within 120-days after filing of the initial pleading.

### Fifty-First Affirmative Defense

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore, precluded from alleging the material facts necessary to state a cause of action against McCord.

### Fifty-Second Affirmative Defense

Liability may not be imposed upon McCord based on a theory of enterprise or market share liability. To the extent Plaintiffs' claims are based upon such theories, they are barred.

### Fifty-Third Affirmative Defense

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

### Fifty-Fourth Affirmative Defense

This action is barred in whole or in part by the doctrine of shifting responsibility.

### Fifty-Fifth Affirmative Defense

Plaintiffs' claims are barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where Lyautey's alleged exposure may have occurred.

### Fifty-Sixth Affirmative Defense

McCord asserts the military contractor's defense.

### Fifty-Seventh Affirmative Defense

Plaintiffs' claims against McCord should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of McCord, and, therefore, McCord had no duty to warn Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

### Fifty-Eighth Affirmative Defense

McCord pleads the negligence and conduct of Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

### Fifty-Ninth Affirmative Defense

This action fails to name as a defendant potentially indispensable parties to the litigation, including, but not limited to, the collection of companies known as the "Manville Group."

### Sixtieth Affirmative Defense

If Plaintiffs suffered injuries, which McCord specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products manufactured, sold or distributed by McCord or McCord's predecessor, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Lyautey's workplace or elsewhere.

### Sixty-First Affirmative Defense

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November 2004), the Court should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to Fla. Stat. § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### Sixty-Second Affirmative Defense

Plaintiffs' Complaint must be dismissed because they failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required them to serve a completed *forum non conveniens* Fact Sheet with the Complaint. Plaintiffs either failed to serve a *forum non conveniens* Fact Sheet at all or else served a purported *forum non conveniens* Fact Sheet that was deficient for failure to include any or all of the required information.

### *Sixty-Third Affirmative Defense*

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

### *Sixty-Fourth Affirmative Defense*

Plaintiffs' Complaint also includes allegations related to negligent failure to warn. Lyautey specifically alleges that McCord had a duty to provide the Lyautey with "proper respirators," in Paragraph Forty-Four, sub-section (b), [44(b)]. But, Florida law does not recognize these duties and these allegations must be stricken from Plaintiffs' Complaint. In negligent failure to warn cases, plaintiffs must allege (and prove) "that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about" at the time of sale of the product. Ferayorni v. Hyundai Motors Co., 711 So.2d 1167, 1172 (Fla. 4th DCA 1998). Plaintiffs' allegations of breach of duty for failing to provide Lyautey with proper respirators go far beyond allegations of failure to warn of known particular risks at the time of sale and Paragraph Forty-Four, sub-section (b), [44(b)] must be stricken.

### *Sixty-Fifth Affirmative Defense*

All defenses which have or will be asserted by other defendants and/or any third-party defendants in this action are hereby adopted and incorporated by reference, as if fully setting forth at length herein, as defenses to the Complaint. Furthermore, McCord will rely upon any

and all other future defenses which become available or appear during discovery proceedings in this action and hereby specifically reserves the right to amend its Answer for the purposes of asserting any such affirmative defenses.

***Sixty-Sixth Affirmative Defense***

McCord also reserves the right to assert such other and related defenses as may become available in the event of a determination that the action, or some part thereof, is governed by the substantive law of a state other than Florida.

**DEMAND FOR TRIAL BY JURY**

McCord demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this ___ day of August, 2010.

> **AKERMAN SENTERFITT**
> ***Attorneys for Defendant***
> ***McCord Corporation***
> Las Olas Centre II, Suite 1600
> 350 East Las Olas Boulevard
> Fort Lauderdale, FL 33301-2229
> Phone: (954) 463-2700
> Fax: (954) 463-2224
> Email: Hugh.Turner@akerman.com
> David.Hawthorne@akerman.com
>
> By: _____
> **Hugh J. Turner Jr.**
> Florida Bar Number: 203033
> **David M. Hawthorne**
> Florida Bar Number: 935174

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic service and U.S. Mail on David A. Jagolinzer, Esq., THE FERRARO LAW FIRM, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida 33146, and by electronic service on all counsel of record this _____ day of August, 2010.

_____
Hugh J. Turner Jr.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

CASE NO. 10-35086-CA-31

    Plaintiff,

ASBESTOS LITIGATION

v.

ALFA LAVAL, INC et al.,

    Defendants.

_____/

## CARRIER CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES AND DEMAND FOR JURY TRIAL AS TO PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Carrier Corporation (hereinafter "Carrier"), by and through its undersigned counsel, hereby serves its Answer, Affirmative Defenses and Demand for Jury Trial as to Plaintiffs' Complaint and Demand for Jury Trial (hereinafter "Complaint"), and states as follows:

### ANSWER

1.   Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint and, therefore, denies same.

2.   Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint and, therefore, denies same.

3.   Carrier denies the allegations set forth in Paragraph 3 of the Complaint.

4.   Carrier denies the allegations set forth in Paragraph 4 of the Complaint.

5.   Carrier denies the allegations set forth in Paragraph 5 of the Complaint.

6.   Carrier denies the allegations set forth in Paragraph 6 of the Complaint.

{FT698969;1}

7.      Carrier denies the allegations set forth in Paragraph 7 of the Complaint.

8.      Carrier denies the allegations set forth in Paragraph 8 of the Complaint.

9.      Carrier denies the allegations set forth in Paragraph 9 of the Complaint.

10.     Carrier denies the allegations set forth in Paragraph 10 of the Complaint.

## DEFENDANTS

11.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint and therefore denies same.

12.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint and therefore denies same.

13.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint and therefore denies same.

14.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint and therefore denies same.

15.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint and thereof denies same.

16.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint and therefore denies same.

17.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint and therefore denies same.

18.     Carrier admits that it is a Delaware Corporation and that its principal place of business is in Connecticut, but denies the remainder of the allegations set forth in Paragraph 18.

19.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint and therefore denies same.

20.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint and therefore denies same.

21.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint and therefore denies same.

22.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint and therefore denies same.

23.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint and therefore denies same.

24.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint and therefore denies same.

25.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint and therefore denies same.

26.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint and therefore denies same.

27.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint and therefore denies same.

28.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint and therefore denies same.

29.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint and therefore denies same.

30.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint and therefore denies same.

31.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint and therefore denies same.

32.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint and therefore denies same.

33.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Complaint and therefore denies same.

34.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Complaint and therefore denies same.

35.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint and therefore denies same.

36.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint and therefore denies same.

37.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint and therefore denies same.

38.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint and therefore denies same.

39.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint and therefore denies same.

40.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint and therefore denies same.

41.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint and therefore denies same.

42.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Complaint and therefore denies same.

43.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint and therefore denies same.

44.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint and therefore denies same.

45.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint and therefore denies same.

46.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint and therefore denies same.

47.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the Complaint and therefore denies same.

48.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint and therefore denies same.

49.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint and therefore denies same.

50.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint and therefore denies same.

51.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint and therefore denies same.

52.    Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of the Complaint and therefore denies same.

53.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint and therefore denies same.

54.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54 of the Complaint and therefore denies same.

55.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 of the Complaint and therefore denies same.

56.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56 of the Complaint and therefore denies same.

57.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 of the Complaint and therefore denies same.

58.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58 of the Complaint and therefore denies same.

59.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of the Complaint and therefore denies same.

60.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of the Complaint and therefore denies same.

61.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61 of the Complaint and therefore denies same.

62.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint and therefore denies same.

63.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of the Complaint and therefore denies same.

64.     Carrier is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Complaint and therefore denies same.

65.     Carrier denies the allegations set forth in Paragraph 65 of the Complaint.

66.     Carrier denies the allegations set forth in Paragraph 66 of the Complaint.

67.     Carrier denies the allegations set forth in Paragraph 67 of the Complaint and any subparts thereof and, therefore, denies same.

## COUNT I: NEGLIGENCE

Carrier realleges and reincorporates its answers to Paragraphs 1 through 67 as though fully set forth herein.

68.     Carrier denies the allegations set forth in Paragraph 68 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

69.     Carrier denies the allegations set forth in Paragraph 69 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

70.     Carrier denies the allegations set forth in Paragraph 70 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

71.     Carrier denies the allegations set forth in Paragraph 71 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

72.     Carrier denies the allegations set forth in Paragraph 72 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

73.     Carrier denies the allegations set forth in Paragraph 73 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

74.     Carrier denies the allegations set forth in Paragraph 74 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

75.     Carrier denies the allegations set forth in Paragraph 75 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

76.     Carrier denies the allegations set forth in Paragraph 76, and any subparts thereof, to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, Carrier demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

### COUNT II: STRICT LIABILITY

Carrier realleges and reincorporates its answers to Paragraphs 1 through 67 as though fully set forth herein.

77.     Carrier denies the allegations set forth in Paragraph 77 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

78.     Carrier denies the allegations set forth in Paragraph 78 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

79.     Carrier denies the allegations set forth in Paragraph 79 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

80.     Carrier denies the allegations set forth in Paragraph 80 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

81.     Carrier denies the allegations set forth in Paragraph 81 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

82.     Carrier denies the allegations set forth in Paragraph 82 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

83.     Carrier denies the allegations set forth in Paragraph 83 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

84.     Carrier denies the allegations set forth in Paragraph 84 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

85.     Carrier denies the allegations set forth in Paragraph 85, and any subparts thereof, to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

86.     Carrier denies the allegations set forth in Paragraph 86 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

87.     Carrier denies the allegations set forth in Paragraph 87 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

88.     Carrier denies the allegations set forth in Paragraph 88 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, Carrier demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## COUNT III:  LOSS OF CONSORTIUM – PATRICIA LYAUTEY

Carrier realleges and reincorporates its answers to Paragraphs 1 through 88 as though fully set forth herein.

89.     Carrier denies the allegations set forth in Paragraph 89 to the extent they pertain to it.  To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, Carrier demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## DAMAGES

Carrier realleges and reincorporates its answers to Paragraphs 1 through 89 as though fully set forth herein.

90.    Carrier denies the allegations set forth in Paragraph 90 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

91.    Carrier denies the allegations set forth in Paragraph 91 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

92.    Carrier denies the allegations set forth in Paragraph 92 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

93.    Carrier denies the allegations set forth in Paragraph 93 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

94.    Carrier denies the allegations set forth in Paragraph 94 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

95.    Carrier denies the allegations set forth in Paragraph 95 to the extent they pertain to it. To the extent the allegations pertain to other parties, Carrier is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies same.

WHEREFORE, Carrier demands judgment in its favor, plus costs and such further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a cause of action or claim upon which relief can be granted against Carrier.

### Second Affirmative Defense

This action is barred by the applicable statute of limitations and/or statute of repose.

### Third Affirmative Defense

This action is barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, laches, and/or waiver.

### Fourth Affirmative Defense

This action is barred, in whole or in part, by Plaintiff Gale Lyautey's (hereinafter "Lyautey") voluntary assumption of a known risk or harm, or risks of harm which he knew or should have known at the time of the alleged exposure.

### Fifth Affirmative Defense

This action is barred, in whole or in part, by the doctrines of contributory negligence and comparative fault, in that the negligence, fault, or responsibility of Lyautey proximately caused or proximately contributed to cause the alleged injuries and damages, which bars or reduces Lyautey's recovery herein.

### *Sixth Affirmative Defense*

Lyautey was neither exposed to nor used any product manufactured, sold, distributed, supplied, mined, processed, converted, compounded, or retained by Carrier.

### *Seventh Affirmative Defense*

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, supplied, mined, processed, converted, compounded, or retained by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that Lyautey was himself negligent generally and in the following particulars:

      a.      In failing to use proper safety equipment, which was available to Lyautey at all times before, during, and after the time of the alleged exposure;

      b.      In failing to demand that proper safety equipment be supplied to Lyautey at all times before, during, and after the time of the alleged exposure;

      c.      In failing to read any instructions and/or warning distributed by Carrier or Carrier's predecessor in connection with the sale or use of its products;

      d.      By using improper techniques and methods in the use and application of Carrier's or Carrier's predecessor's products;

      e.      In otherwise failing to exercise due care and caution under the circumstances.

### *Eighth Affirmative Defense*

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is

specifically denied, the alleged injuries and/or damages, if any, were caused solely by: (a) the acts, wrongs, or omissions of Lyautey; (b) the unintended or improper use of said products; (c) Lyautey's preexisting conditions; or (d) forces and/or things over which Carrier had no control and for which Carrier is not responsible or liable.

### Ninth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that the products were abused, misused, or otherwise substantially changed or altered by persons or parties other than Carrier and that Carrier is not responsible or liable.

### Tenth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that the alleged injuries and/or damages, if any, were the result of intervening or superseding events, factors, occurrences or conditions, which were in no way caused by Carrier and for which Carrier is not responsible or liable.

### Eleventh Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that Carrier neither knew at that time, nor reasonably

should have known in light of the available medical, scientific, or other information, that any product of the type or nature referred to in the Complaint was hazardous or constituted a reasonably foreseeable risk of harm to Lyautey in the normal and expected use of said products.

### Twelfth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, were proximately caused by the acts and/or omissions of a person or persons over whom Carrier had neither control nor the right to control and/or are the result of intervening acts of superseding negligence on the part of such a third person, and therefore, Lyautey is barred from recovery against Carrier.

### Thirteenth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, arose in whole or in part from one or more other causes or circumstances, including but not limited to, direct smoking or exposure to environmental tobacco smoke, and not as a result of any exposure to any products manufactured, sold, distributed, and/or supplied by Carrier.

### Fourteenth Affirmative Defense

This action is barred, in whole or in part, by the applicable Workers' Compensation Act, which provided for exclusive remedies, thus preempting Plaintiffs' claim for civil remedies.

### Fifteenth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied by Carrier or Carrier's predecessor, and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, and if it is further shown that such products was supplied by the United

States Government, then Carrier raises any immunity from suit or liability conferred upon the United States Government and/or Carrier, which may arise under the circumstances.

### Sixteenth Affirmative Defense

Carrier specifically denies that that the Plaintiffs are allowed to recover exemplary or punitive damages.  In this regard, Carrier avers that such damages are unconstitutional in that claims for such damages are barred by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the applicable provisions of Constitution of the State of Florida. As a further affirmative defense, the claim of punitive damages is premature because the pleading requirements established by Fla. Stat. §768.62 are not satisfied by a showing of evidence on the record, or proffered by Plaintiffs, which would provide a reasonable basis for recovery of such damages.

### Seventeenth Affirmative Defense

Plaintiffs have failed to provide timely notice of the alleged claims which now acts to bar this civil action.

### Eighteenth Affirmative Defense

If Plaintiffs sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages, if any, were due to the negligence of Lyautey's fellow servants engaged in the course of common employment with Lyautey, and that such negligence of the fellow servants bars this civil action.

### Nineteenth Affirmative Defense

This action is barred to the extent that Plaintiffs have failed to join indispensable parties.

### Twentieth Affirmative Defense

It is unlawful, inequitable and in violation of Carrier's contractual, statutory, and constitutional rights to apply statutes or principles of law other than, or in a manner different from those existing during the time period in which Carrier or Carrier's predecessor allegedly manufactured, sold, distributed, and/or supplied products.

### Twenty-First Affirmative Defense

*In personam* jurisdiction over Carrier is lacking as there is not a sufficient nexus between Plaintiffs' alleged injuries and the activities of Carrier in Florida.

### Twenty-Second Affirmative Defense

Venue in this county is improper, to the extent appropriate, if none of the Defendants reside or conduct business in that county or if the interest of justice are jeopardized by Plaintiffs' choice of forum, this action should be transferred to another venue. Moreover, should Plaintiffs' choice of forum adversely affect the conveniences of the parties or witnesses, this action should be dismissed in favor of an adequate alternative forum.

### Twenty-Third Affirmative Defense

Carrier is relieved of liability because the loss, injury, or damages alleged by Lyautey were caused by other intervening and superseding factors including, but not limited to the failure of labor unions and/or employers to provide training and proper protective equipment to assure a safe working environment; or to warn workers of possible health hazards associated with exposure to asbestos; or the failure of other persons or entities having the immediate opportunity to prevent or warn of injury, but failed to do so.

### Twenty-Fourth Affirmative Defense

This action is barred because at all times material hereto, Carrier was acting in compliance with governmental or private contract specifications. Moreover, the government's knowledge of the potential dangers related to the use of those products was greater than the knowledge of Carrier, and Carrier is, thus, immune from any liability for any damages allegedly suffered by Plaintiffs as a consequence of any exposure to asbestos contained within any such products.

### Twenty-Fifth Affirmative Defense

If it is shown that Lyautey either used or was exposed to products manufactured, sold, distributed, and/or supplied Carrier or Carrier's predecessor, which Carrier specifically denies, then it is averred that the alleged exposure was so minimal and insufficient to establish a reasonable degree of certainty or probability that the injuries and damages of which Lyautey complains were caused by such alleged exposure.

### Twenty-Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or by part, due to a failure to mitigate any injuries and damages that they have allegedly suffered.

### Twenty-Seventh Affirmative Defense

Apportionment of damages, if any, should be accomplished in accordance with the provisions of Fla. Stat. §768.81(3) and/or *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993), or other applicable law, and the Court should enter judgment against each party (whether a party to this litigation or not) on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.

### Twenty-Eighth Affirmative Defense

Carrier denies that any of its actions, activities or omissions were the proximate cause of any of Plaintiffs' alleged damages.

### Twenty-Ninth Affirmative Defense

Carrier denies the application of a strict liability doctrine to this litigation, generally, and to Carrier specifically.  As a matter of social policy, this is an inappropriate case for a product liability claim because the societal benefit of Carrier's products outweighed and outweighs any risk to the user or any bystander.

### Thirtieth Affirmative Defense

Carrier's products were not defective in design or manufacture and the characteristics of such products are a general aspect that cannot be eliminated without substantially compromising the usefulness or desirability of such products, as recognized by the ordinary person with ordinary knowledge in the community.

### Thirty-First Affirmative Defense

Carrier made no warranties, express or implied, that extended to Plaintiffs, thus, Carrier did not breach any such warranties.

### Thirty-Second Affirmative Defense

The number of different agents to which Lyautey was exposed within and without the workplace during his lifetime, and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to a requisite level of legal certainty, the alleged causal connection between injuries and said agents, if indeed there is any such connection.

### Thirty-Third Affirmative Defense

Lyautey and or his employers were sophisticated users of, or learned intermediaries, with respect to the use of the products to which Lyautey was allegedly exposed. Therefore, Carrier is not liable to Plaintiffs.

### Thirty-Fourth Affirmative Defense

Carrier's warnings and other labels complied in all respects with federal regulations. To the extent that Plaintiffs claim that Carrier failed to give adequate warnings about any of its products, it is averred that such claims are preempted by federal regulations including, but not limited to, those promulgated under or by the Occupational Safety and Health Administration.

### Thirty-Fifth Affirmative Defense

To the extent that Plaintiffs assert a claim against Carrier sounding in strict products liability or in product liability under 402 or Section 402A of the Restatement (Second) Torts, Carrier did not at any time engage in any acts, omissions, or other conduct that would render it strictly liable to Plaintiffs for any alleged injuries or damages.

### Thirty-Sixth Affirmative Defense

Carrier avers that it did not know, and in light of the existing reasonably available scientific and technical knowledge, could not have known of: (a) the design characteristics, if any, that allegedly caused the injuries or damages complained of herein or the alleged danger of such characteristics, or (b) any alternative design referenced by Plaintiffs. Carrier further avers that any alternative design was neither economically practical, scientifically feasible, nor technologically feasible.

### Thirty-Seventh Affirmative Defense

Plaintiffs' breach of warranty claims are barred by lack of privity.

### *Thirty-Eighth Affirmative Defense*

Plaintiffs' claims are barred, limited or otherwise subject to the terms and conditions of sale and delivery of the products at issue, as set forth in the documents relevant to such sale and delivery.

### *Thirty-Ninth Affirmative Defense*

The damages claimed by Plaintiffs which have not yet accrued are purely speculative, uncertain and contingent.

### *Fortieth Affirmative Defense*

Plaintiffs' Complaint should be dismissed because there has been no service of process, or improper or insufficient process and/or improper or insufficient service of process on these Defendants.

### *Forty-First Affirmative Defense*

Any sales or provisions of asbestos-containing products, if any, by Carrier was made to sophisticated users and purchasers who were fully aware of the risks, if any, and characteristics associated with such products, and any claims of liability by Lyautey against Carrier is therefore barred as a matter of law.

### *Forty-Second Affirmative Defense*

Any asbestos-containing products manufactured, sold or supplied by Carrier or Carrier's predecessor, if any, and provided to Lyautey's employer(s) met with all requirements, standards and specifications of said employer, as well as with pertinent industry standards, and pertinent standards, requirements, specifications and/or regulations promulgated by any federal, state and local governmental agencies.

### Forty-Third Affirmative Defense

At the time of the filing of the Complaint, there was no ground, in law or in fact, to support the Complaint as to Carrier, and therefore, Carrier is entitled to attorney's fees under § 57.105, Florida Statutes.

### Forty-Fourth Affirmative Defense

Lyautey has released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims herein, and accordingly, said claims are barred by payment, accord and satisfaction, arbitration and award, release, and res judicata; alternatively, Carrier shows that if Plaintiffs have accepted compensation in partial settlement of Plaintiffs' claims from collateral sources, Carrier is entitled to a set-off in said amount.

### Forty-Fifth Affirmative Defense

The causes of action asserted by Plaintiffs fail to state a claim upon which relief can be granted, in that Plaintiffs have asserted claims for relief which, if granted, would constitute a taking of private property for public use, without just compensation.  Such a taking would contravene Carrier's constitutional rights as preserved by the Fourteenth Amendment to the Constitution of the United States and by the Florida Constitution.

### Forty-Sixth Affirmative Defense

At all times material to this action, Carrier's products, or products of its predecessors, were reasonably fit for their intended purpose and were not defective or inherently dangerous.

### Forty-Seventh Affirmative Defense

Lyautey was not directly or indirectly exposed to asbestos fibers from Carrier's products because any products that contained asbestos that were manufactured, distributed, sold and/or supplied by Carrier were made so that the asbestos fibers were encapsulated in other material

which would prevent the release of injury producing levels of such fibers based on ordinary and intended use of the products.

### Forty-Eighth Affirmative Defense

Affirmatively, Carrier states that Plaintiffs' allegations are barred by Florida's Asbestos and Silica Compensation Act, 2005, Fla. Laws Chapter 2005-274, effective July 1, 2005.

### Forty-Ninth Affirmative Defense

The attempted service of process on Carrier was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon Carrier, this Court lacks jurisdiction over the corporate person and property of Carrier.

### Fiftieth Affirmative Defense

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on Carrier within 120-days after filing of the initial pleading.

### Fifty-First Affirmative Defense

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore, precluded from alleging the material facts necessary to state a cause of action against Carrier.

### Fifty-Second Affirmative Defense

Liability may not be imposed upon Carrier based on a theory of enterprise or market share liability. To the extent Plaintiffs' claims are based upon such theories, they are barred.

### Fifty-Third Affirmative Defense

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

### *Fifty-Fourth Affirmative Defense*

This action is barred in whole or in part by the doctrine of shifting responsibility.

### *Fifty-Fifth Affirmative Defense*

Plaintiffs' claims are barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where Lyautey's alleged exposure may have occurred.

### *Fifty-Sixth Affirmative Defense*

Carrier asserts the military contractor's defense.

### *Fifty-Seventh Affirmative Defense*

Plaintiffs' claims against Carrier should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Carrier, and, therefore, Carrier had no duty to warn Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

### *Fifty-Eighth Affirmative Defense*

Carrier pleads the negligence and conduct of Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

### *Fifty-Ninth Affirmative Defense*

This action fails to name as a defendant potentially indispensable parties to the litigation, including, but not limited to, the collection of companies known as the "Manville Group."

### *Sixtieth Affirmative Defense*

If Plaintiffs suffered injuries, which Carrier specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products manufactured, sold or distributed by Carrier or Carrier's predecessor, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Lyautey's workplace or elsewhere.

### *Sixty-First Affirmative Defense*

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November 2004), the Court should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to Fla. Stat. § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### *Sixty-Second Affirmative Defense*

Plaintiffs' Complaint must be dismissed because they failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required them to serve a completed *forum non conveniens* Fact Sheet with the Complaint. Plaintiffs either failed to serve a *forum non conveniens* Fact Sheet at all or else served a purported *forum non conveniens* Fact Sheet that was deficient for failure to include any or all of the required information.

### Sixty-Third Affirmative Defense

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

### Sixty-Fourth Affirmative Defense

Plaintiffs' Complaint also includes allegations related to negligent failure to warn. Lyautey specifically alleges that Carrier had a duty to provide the Lyautey with "proper respirators," in Paragraph Forty-Four, sub-section (b), [44(b)]. But, Florida law does not recognize these duties and these allegations must be stricken from Plaintiffs' Complaint. In negligent failure to warn cases, plaintiffs must allege (and prove) "that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about" at the time of sale of the product. Ferayorni v. Hyundai Motors Co., 711 So.2d 1167, 1172 (Fla. 4th DCA 1998). Plaintiffs' allegations of breach of duty for failing to provide Lyautey with proper respirators go far beyond allegations of failure to warn of known particular risks at the time of sale and Paragraph Forty-Four, sub-section (b), [44(b)] must be stricken.

### Sixty-Fifth Affirmative Defense

All defenses which have or will be asserted by other defendants and/or any third-party defendants in this action are hereby adopted and incorporated by reference, as if fully setting forth at length herein, as defenses to the Complaint. Furthermore, Carrier will rely upon any and

all other future defenses which become available or appear during discovery proceedings in this action and hereby specifically reserves the right to amend its Answer for the purposes of asserting any such affirmative defenses.

### Sixty-Sixth Affirmative Defense

Carrier also reserves the right to assert such other and related defenses as may become available in the event of a determination that the action, or some part thereof, is governed by the substantive law of a state other than Florida.

### DEMAND FOR TRIAL BY JURY

Carrier demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this _____ day of _____, 2010.

**AKERMAN SENTERFITT**
*Attorneys for Defendant*
*Carrier Corporation*
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Phone: (954) 463-2700
Fax: (954) 463-2224
Email: Hugh.Turner@akerman.com
        David.Hawthorne@akerman.com


By: _____
   **Hugh J. Turner Jr.**
    Florida Bar Number: 203033
   **David M. Hawthorne**
    Florida Bar Number: 935174

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic service and U.S. Mail on David A. Jagolinzer, Esq., THE FERRARO LAW FIRM, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida 33146, and by electronic service on all counsel of record this _____ day of _____, 2010.

_____
Hugh J. Turner Jr.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

                         Plaintiff,

v.

ALFA LAVAL, INC et al.,

                         Defendants.

_____/

CASE NO. 10-35086-CA-31

ASBESTOS LITIGATION

## DEFENDANTS CARRIER CORPORATION AND
## MCCORD CORPORATION'S  REQUEST FOR COPIES

Defendants CARRIER CORPORATION and MCCORD CORPORATION, by and through their undersigned counsel, hereby request Defendant, Gould's Pumps, Inc., to furnish the undersigned with a copy of any and all documents received in response to its Interrogatories and Request for Production to Plaintiff dated August 3, 2010.

{FT700490;1}

Respectfully submitted,

**AKERMAN SENTERFITT**
**Attorneys for Defendants**
**Carrier Corporation and**
**McCord Corporation**
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
Email:  hugh.turner@akerman.com
            david.hawthorne@akerman.com
            david.grasher@akerman.com

By: _____
    Hugh J. Turner Jr., Esq.
      Florida Bar Number:  203033
    David M. Hawthorne, Esq.
      Florida Bar Number:  935174
    David R. Grasher, Esq.
      Florida Bar No.:  0012987

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic service on all counsel of record, this 5th day of August, 2010.

By: _____
    David M. Hawthorne

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

        ASBESTOS LITIGATION

        CASE NO.: 10-35086 CA 31

        Plaintiff(s),

vs.

ALFA LAVAL, INC., et al.

        Defendants.

_____/

## DEFENDANT NATIONAL SERVICE INDUSTRIES, INC. ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, Defendant, National Service Industries, Inc. (hereinafter "NSI" or "Defendant"), demands a trial by jury, and without waiving any defenses, responds to Plaintiffs' Complaint and Demand for Jury Trial as follows:

### ANSWER

1.     The allegations contained in Paragraph One (1) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

2.     This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Two (2) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

3.     The allegations contained in Paragraph Three (3) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

1

4.      This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Four (4) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

5.      The allegations contained in Paragraph Five (5) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

6.      The allegations contained in Paragraph Six (6) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

7.      The allegations contained in Paragraph Seven (7) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

8.      The allegations contained in Paragraph Eight (8) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered any injuries as a result of this Defendant's actions.

9.      The allegations of Paragraph Nine (9) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

10.     The allegations of Paragraph Ten (10) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

## DEFENDANTS

11. – 50.　　　This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eleven (11) – Fifty (50) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

51.　　　This Defendant admits only that it has an agent for service in Florida; the remainder of the allegations contained in Paragraph Fifty-One (51) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

52. – 64.　　　This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Fifty-Two (52) – Sixty-Four (64) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

65.　　　The allegations contained in Paragraph Sixty-Five (65) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

66.　　　The allegations contained in Paragraph Sixty-Six (66) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

67.　　　The allegations contained in Paragraph Sixty-Seven (67), including sub-parts a.–b. of Plaintiffs' Complaint are denied as they pertain to this Defendant.

68.　　　The allegations contained in Paragraph Sixty-Eight (68) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

WHEREFORE, NSI demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT I: NEGLIGENCE

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Sixty-Eight (68) of Plaintiffs' Complaint as if the same had been restated herein.

69.    The allegations contained in Paragraph Sixty-Nine (69) of Plaintiffs' Complaint are denied, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos or injured from this Defendant's product.

70.    The allegations contained in Paragraph Seventy (70) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

71.    The allegations contained in Paragraph Seventy-One (71) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

72.    The allegations contained in Paragraph Seventy-Two (72) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

73.    The allegations contained in Paragraph Seventy-Three (73) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

74.    The allegations contained in Paragraph Seventy-Four (74) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

4

75.    The allegations contained in Paragraph Seventy-Five (75) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

76.    The allegations contained in Paragraph Seventy-Six (76) including sub-paragraphs (a- h) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, NSI demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT II:  STRICT LIABILITY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Seventy-Six (76) of Plaintiffs' Complaint as if the same had been restated herein.

77.    The allegations contained in Paragraph Seventy-Seven (77) of Plaintiffs' Complaint are denied as they pertain to this Defendant,

78.    The allegations contained in Paragraph Seventy-Eight (78) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

79.    The allegations contained in Paragraph Seventy-Nine (79) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

80.    The allegations contained in Paragraph Eighty (80) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

5

81.     The allegations contained in Paragraph Eighty-One (81) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

82.     The allegations contained in Paragraph Eighty-Two (82) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

83.     The allegations contained in Paragraph Eighty-Three (83) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

84.     The allegations contained in Paragraph Eighty-Four (84) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

85.     The allegations contained in Paragraph Eighty-Five (85) of Plaintiffs' Complaint, including sub-parts (a. – c.), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

86.     The allegations contained in Paragraph Eighty-Six (86) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

87.     The allegations contained in Paragraph Eighty-Seven (87), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

88.     The allegations contained in Paragraph Eighty-Eight (88) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to and/or suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, NSI demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT III:  LOSS OF CONSORTIUM—PATRICIA LYAUTEY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Eight (88) of Plaintiffs' Complaint as if the same had been restated herein.

89.     The allegations contained in Paragraph Eighty-Nine (89) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, NSI demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## DAMAGES

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Nine (89) of Plaintiffs' Complaint as if the same had been restated herein.

90.     The allegations contained in Paragraph Ninety (90) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey, suffered any injuries as a result of any conduct of this Defendant.

91.     The allegations contained in Paragraph Ninety-One (91) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiffs suffered injuries as a result of any conduct of this Defendant.

92.     The allegations contained in Paragraph Ninety-Two (92) of Plaintiffs' Complaint are denied as they pertain to this Defendant as they pertain to this Defendant, particularly the allegations that Plaintiffs have suffered injuries as a result of any conduct of this Defendant.

93.     The allegations contained in Paragraph Ninety-Three (93) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

94.     The allegations contained in Paragraph Ninety-Four (94) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

95.     The allegations contained in Paragraph Ninety-Five (95) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey has suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, GE demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiffs' overly broad and vague allegations directed against all Defendants as a group.

### THIRD DEFENSE

This Court lacks jurisdiction over the person and property of this Defendant and, therefore, this case should be dismissed as to it. There is no showing of any connexity between the Plaintiff, Gale Lyautey's alleged injury and Defendant's activities in the State of Florida such

as might support an assertion of *in personam* jurisdiction over Defendant, nor is there any other basis for this Court to exercise jurisdiction over Defendant or its property.

## FOURTH DEFENSE

Venue of this civil action is not properly laid and, therefore, this Court should dismiss this civil action as to this Defendant.

## FIFTH DEFENSE

The process served on Defendant was defective and/or insufficient, and is therefore invalid and a nullity. Because Defendant has not been served with proper and lawful process, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SIXTH DEFENSE

The attempted service of process on Defendant was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon Defendant, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SEVENTH DEFENSE

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on this Defendant within 120 days after filing of the initial pleading.

## EIGHTH DEFENSE

Plaintiffs' claims are barred by collateral estoppel and res judicata.

## NINTH DEFENSE

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore,

precluded from alleging the material facts necessary to state a cause of action against this Defendant.

## TENTH DEFENSE

Plaintiffs' claims are barred by reason of release and/or accord and satisfaction.

## ELEVENTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches.

## TWELFTH DEFENSE

This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff, Gale Lyautey lived or worked.

## THIRTEENTH DEFENSE

This action is barred by the applicable statute of repose of Florida or the applicable statute or repose of any state where the Plaintiff, Gale Lyautey lives or worked.

## FOURTEENTH DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories that did not exist prior to the dates on which the Plaintiff, Gale Lyautey allegedly was exposed to this Defendant's products, in that such statutes are inapplicable to this action and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FIFTEENTH DEFENSE

Liability may not be imposed upon this Defendant based on a theory of enterprise or market share liability.  To the extent Plaintiffs' claims are based upon such theories, they are barred.

## SIXTEENTH DEFENSE

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

## SEVENTEENTH DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat. §** 774.206(2), bars Plaintiffs from recovering damages for fear or risk of cancer.

## EIGHTEENTH DEFENSE

This Defendant is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation laws of any other state or jurisdiction where Plaintiff, Gale Lyautey may have worked, with respect to immunity or offset for payments received by Plaintiffs. Workers' compensation is Plaintiffs' exclusive remedy.

## NINETEENTH DEFENSE

The Plaintiff, Gale Lyautey and/or others misused, improperly used, or substantially modified Defendant's products at issue in this case, if any, and such misuse, improper use, or substantial modification proximately caused and contributed, in whole or in part, to the alleged conditions described in the Complaint and Plaintiffs' alleged damages. Therefore, this Defendant is not liable for any alleged injury or damages that Plaintiffs claim.

## TWENTIETH DEFENSE

This Defendant denies the existence of express warranty, implied warranty, privity, and breach of warranty.

11

### TWENTY-FIRST DEFENSE

Plaintiffs' Complaint fails to state a cause of action against Defendant as succeeding to the debts and liabilities of any other manufacturer or seller of asbestos-containing products, and Defendant specifically denies each allegation concerning successor corporate liability.

### TWENTY-SECOND DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims are or may be barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where the Plaintiff, Gale Lyautey's alleged exposure may have occurred.

### TWENTY-FOURTH DEFENSE

Plaintiffs' claims are preempted by applicable state and federal statutes, laws, and regulations.

### TWENTY-FIFTH DEFENSE

If Plaintiff, Gale Lyautey was exposed to any of Defendant's products, which is expressly denied, said products at the time were manufactured in conformity with federal and state regulations, standards, specifications and laws. Consequently, recovery by the Plaintiffs herein is barred.

### TWENTY-SIXTH DEFENSE

At the time the Defendant's products of which Plaintiffs complain left Defendant's control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, Defendant's products were not defective in design or manufacture.

12

### TWENTY-SEVENTH DEFENSE

This Defendant states that its products and the methods of manufacture and testing conformed to the generally recognized and prevailing industry standards and the state of the art in existence at the time the design was prepared and the product manufactured and tested.

### TWENTY-EIGHTH DEFENSE

This action is barred in whole or in part because Defendant reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Defendant had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and, therefore, had no duty to warn.

### TWENTY-NINTH DEFENSE

Defendant asserts the military contractor's defense.

### THIRTIETH DEFENSE

Defendant's asbestos-containing products, if any, were or may have been supplied to the United States Government, including the U.S. Navy, or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the United States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff, Gale Lyautey associated with the use of such products was equal to or superior to that of Defendant, and, by reason thereof, Defendant is not liable to Plaintiffs under any theory of law asserted in this civil action.

### THIRTY-FIRST DEFENSE

This Defendant's asbestos-containing products, if any, were supplied to the Plaintiff, Gale Lyautey's employers pursuant to contract, and such products conformed in every material respect to specifications established by said employers.

13

### THIRTY-SECOND DEFENSE

Plaintiffs' claims against Defendant should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Plaintiff, Gale Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed.  The knowledge of Plaintiff, Gale Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Defendant, and, therefore, Defendant had no duty to warn Plaintiff, Gale Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

### THIRTY-THIRD DEFENSE

This action is barred in whole or in part because Defendant relied upon the care and skill of Plaintiff, Gale Lyautey's employers or labor union and/or other learned intermediaries.

### THIRTY-FOURTH DEFENSE

This Defendant pleads the negligence and conduct of Plaintiff, Gale Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

### THIRTY-FIFTH DEFENSE

This Defendant pleads the failure to join necessary and indispensable parties and the intervening negligence and intervening causation of entities not parties to this action as a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### THIRTY-SIXTH DEFENSE

This action fails to name as a Defendant a potentially indispensable party to the litigation, to wit:  That collection of companies known as the "Manville Group."

14

### THIRTY-SEVENTH DEFENSE

The damages alleged by Plaintiffs, if any, were the result in whole or in part, of acts or omissions of third parties over which Defendant exercised no authority or control and for which Defendant has no liability.

### THIRTY-EIGHTH DEFENSE

If Plaintiff, Gale Lyautey sustained injuries as a result of exposure to asbestos or asbestos-containing products, which is denied, then such injuries were or may have been due to exposure to products of manufacturers or distributors not named as Defendants in this action.

### THIRTY-NINTH DEFENSE

If this Defendant is liable to Plaintiffs, which liability this Defendant expressly denies, any liability is limited to this Defendant's percentage of fault as provided by Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law.  Specifically, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure were wholly or partially caused by actions and/or negligence of other manufacturers and/or distributors of asbestos-containing products to which he was exposed, certain entities that supplied asbestos fiber to the manufacturers, installation contractors who used said products, premises owners, and others.  The responsible entities include, but are not limited, to the following:  Johns-Manville Corporation; UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to

Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; the Zonolite Company, and W.R. Grace as its successor in interest; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T

16

& N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; Canadian Johns-Manville; Lake Asbestos of Quebec; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Powhatan Mining Company; Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; E.J. Bartells Company; L & W Supply Corporation; Shook and Fletcher; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Wallace & Gale Company; Standard Insulations, Inc.; Fuller-Austin Insulation Company; Bigelow-Liptak Corporation; JT Thorpe; Burns and Roe, Inc.; Jacksonville Shipyard, Washington Group International, f/k/a Morrison Knudsen; Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; defendants

17

previously dismissed from this action; and existing defendants that are subsequently dismissed from this action, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo

Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Specifically, this Defendant is entitled to apportionment with respect to the foregoing entities on the following grounds:

A.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as manufacturers of products that contained asbestos or included asbestos-containing components, their predecessors and successors in interest, and any related companies: UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Johns-Manville Corporation; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip

Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Co, and other T & N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation

(NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; other manufacturers of products of the type identified by the Plaintiffs; any manufacturers that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster

21

Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation, and any manufacturers that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As manufacturers of asbestos-containing products (or products that included asbestos-containing components) that wholly or

22

partially caused the Plaintiff, Gale Lyautey's alleged injuries, the above-listed manufacturers owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named manufacturers breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they manufactured, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named manufacturers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named manufacturers' tortious conduct.

B.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to those manufacturers identified in Paragraph A, *supra*. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. Because they manufactured and/or distributed defective products that wholly or partially caused the Plaintiff, Gale Lyautey's injuries, the above-named manufacturers are strictly liable to the Plaintiffs for said injuries and the consequences thereof.

C.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following suppliers of asbestos fiber (and/or asbestos-contaminated vermiculite), their predecessors and

successors in interest, and any related companies: Johns-Manville Corporation; Canadian Johns-Manville; Lake Asbestos of Quebec; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Turner & Newall and other predecessors in interest to Federal Mogul; Powhatan Mining Company; H.K. Porter Company; the Zonolite Company, and W.R. Grace and Company as its successor in interest; any suppliers of asbestos fiber that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company;

Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill

Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These entities supplied asbestos fiber to which the Plaintiff, Gale Lyautey was exposed, either directly or through contact with asbestos-containing products. As such, these entities had a duty to warn their customers, manufacturers of asbestos-containing products, of the potential asbestos hazards associated with their asbestos fiber. Each of these suppliers breached its respective duty by negligently failing to warn its customers of the potential asbestos hazards of the asbestos fiber it supplied, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. These suppliers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn their customers and, to the extent applicable, the Plaintiffs. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of these entities' tortious conduct.

D.   Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the suppliers identified in Paragraph C, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiff, Gale Lyautey. These suppliers are subject to strict liability for manufacturing and/or distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

E.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as suppliers and distributors of asbestos-containing products, their predecessors and successors in interest, and any related companies: Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and

Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; E.J. Bartells Company; L & W Supply Corporation; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Shook and Fletcher; Western Macarthur, f/k/a Western Asbestos; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; other suppliers and distributors of products of the type identified by the Plaintiffs; any suppliers and distributors of asbestos-containing products that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation;

Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; Yarway Corporation, and any suppliers and distributors of asbestos-containing products that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As suppliers and distributors of asbestos-containing products that caused the Plaintiff, Gale Lyautey's alleged injuries;

the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they supplied and distributed, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named companies knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named companies' tortious conduct.

F.     Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the distributors and suppliers identified in Paragraph E, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These suppliers and distributors of asbestos-containing products are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

G.     If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as installers of asbestos-containing products and construction contractors who used asbestos-containing products, as well as their predecessors and successors in interest and any related companies: Wallace & Gale Company; Standard Insulations, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Fuller-Austin Insulation Company; E.J. Bartells Company; Bigelow-Liptak Corporation; JT Thorpe; Porter-Hayden Company and its predecessors,

29

H. W. Porter & Company, Inc., and Reid Hayden, Inc.; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Western Macarthur, f/k/a Western Asbestos; Burns and Roe, Inc.; Washington Group International, f/k/a Morrison Knudsen; Todd Shipyards; American Shipbuilding; other installers and contractors who used products of the type identified by Plaintiffs; any installers and contractors that were previously defendants to this action but have been dismissed; and any installers and contractors that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear

Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As installers and contractors who used asbestos-containing products that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of

31

the products they used, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named entities knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named entities' tortious conduct.

H. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the installers and contractors identified in Paragraph G, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. To the extent these installers and contractors also supplied asbestos-containing materials; they are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

I. If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as employers and/or as the owner or party in possession of premises where the Plaintiff, Gale Lyautey was exposed to asbestos, as well as their predecessors and successors in interest and any related companies: Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; Washington Group International, f/k/a Morrison Knudsen; Merrill Stevens Shipyard, Jacksonville Shipyards, Jacksonville Shipyards, Inc., any such entities that were previously defendants to this action but have been dismissed; and any such entities that

are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John

33

Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. The Plaintiff, Gale Lyautey's alleged injuries were wholly or partially caused by these entities' acts or omissions in breach of their duties of care to the Plaintiff, Gale Lyautey.

J.     In addition, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure are wholly or partially the result of actions and/or negligence of other parties, persons, firms, or corporations in addition to those specified above, including, but not limited to, the Plaintiff, Gale Lyautey himself; his various employers during the time of his alleged asbestos exposure; any and all persons or entities that owned or had a possessory interest in the locations where the Decedent may have been exposed to asbestos; any and all persons or entities that otherwise had control over or responsibility

for the locations where the Decedent may have been exposed to asbestos; and the entities identified in the Plaintiff, Gale Lyautey's Social Security printout and exposure sheets.

K.  In addition, this Defendant asserts its right to apportionment with respect to manufacturers and distributors of tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household. Tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household caused or contributed to the Plaintiff, Gale Lyautey's alleged injuries, and the manufacturers and distributors of these products are liable on the grounds of negligence and strict product liability. Likewise, this Defendant asserts that manufacturers and distributors of other harmful products to which the Plaintiff, Gale Lyautey was exposed are liable on the grounds of negligence and strict product liability, and this Defendant asserts its right to apportionment with respect to these manufacturers and distributors.

**FORTIETH DEFENSE**

Pursuant to **Fla. Stat.** §§ 46.015(2), 768.041(2), and 768.31(5), Defendant is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff, Gale Lyautey's alleged injuries and/or Plaintiffs' alleged damages, as well as any such settlement or compromise previously reached by Plaintiffs. Defendant also asserts its right to collateral-source set-off under **Fla. Stat.** § 768.76.

**FORTY-FIRST DEFENSE**

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleged to have been incurred, however, the Plaintiff, Gale Lyautey failed to exercise ordinary care for his own safety, and this failure

35

proximately caused his alleged injury and Plaintiffs' alleged damages. Therefore, the claims asserted in Plaintiffs' Complaint are partially or completely barred under the doctrines of contributory negligence and comparative fault.

### FORTY-SECOND DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleges to have been incurred, however, the Plaintiff, Gale Lyautey voluntarily and knowingly assumed the risk of incurring the alleged injury or damages, and, therefore, Plaintiffs are not entitled to recover from Defendant.

### FORTY-THIRD DEFENSE

If the Plaintiff, Gale Lyautey suffered any injuries as alleged in the Complaint, which this Defendant specifically denies, Plaintiff, Gale Lyautey failed to make reasonable efforts to mitigate these injuries and damages.

### FORTY-FOURTH DEFENSE

The Plaintiff, Gale Lyautey failed to take action to prevent the avoidable consequences of any action or omission of which Plaintiffs complain.

### FORTY-FIFTH DEFENSE

If the Plaintiff, Gale Lyautey or any member of his household used tobacco products, this use was a failure to exercise ordinary care for the Plaintiff, Gale Lyautey's own safety and was the sole or primary cause of his injuries. The negligence of the Plaintiff, Gale Lyautey, or members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### FORTY-SIXTH DEFENSE

The Plaintiff, Gale Lyautey's alleged contact with or use of any asbestos-containing products supplied, sold, or manufactured by this Defendant, which is expressly denied, if such use or contact in fact occurred, was not a substantial contributing cause of the Plaintiff, Gale Lyautey's alleged injuries.

### FORTY-SEVENTH DEFENSE

Any exposure of the Plaintiff, Gale Lyautey to this Defendant's products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff, Gale Lyautey's injuries.

### FORTY-EIGHTH DEFENSE

There is no causal connection between Defendant, or any product sold by Defendant, and any injury sustained by Plaintiff, Gale Lyautey; such causal connection being remote, indefinite, and speculative.  Consequently, the Complaint should be dismissed as to Defendant.

### FORTY-NINTH DEFENSE

Any damages claimed by the Plaintiffs that have not accrued are purely speculative, uncertain, and contingent and therefore cannot be recovered in this action.

### FIFTIETH DEFENSE

If the Plaintiff, Gale Lyautey suffered injuries, which this Defendant specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products sold or distributed by this Defendant, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Plaintiff, Gale Lyautey's workplace or elsewhere.

### FIFTY-FIRST DEFENSE

If there is an association between the Plaintiff, Gale Lyautey's alleged injuries and various agents to which he may have been exposed during his lifetime, which Defendant does not concede, the number of different agents to which he was exposed within and outside of Plaintiff, Gale Lyautey's workplace during his lifetime and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to the requisite degree of legal certainty, whether a causal connection exists between his alleged injuries and any particular agent.

### FIFTY-SECOND DEFENSE

Plaintiffs' claim for punitive damages is barred by Section 7(s) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(1), Florida's Constitution, the U.S. Constitution and this Court's Omnibus Order.

### FIFTY-THIRD DEFENSE

Pursuant to Section 5(1) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(1), Plaintiffs' Complaint must be dismissed unless (a) Plaintiffs are currently domiciled in Florida, or (b) Plaintiffs demonstrate that the Plaintiff, Gale Lyautey was exposed to asbestos in Florida and that this exposure in Florida was a substantial contributing factor to the alleged physical impairment underlying Plaintiffs' claim.

### FIFTY-FOURTH DEFENSE

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), the Court

should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to **Fla. Stat.** § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### FIFTY-FIFTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required Plaintiffs to serve a completed Forum Non Conveniens Fact Sheet with the Complaint. Plaintiffs either failed to serve a Forum Non Conveniens Fact Sheet at all or else served a purported Forum Non Conveniens Fact Sheet that was deficient for failure to include any or all of the required information.

### FIFTY-SIXTH DEFENSE

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which the Plaintiff, Gale Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

### FIFTY-SEVENTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because the Plaintiff, Gale Lyautey did not have a physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.

### FIFTY-EIGHTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because factors other than asbestos exposure were more probably the cause of the Plaintiff, Gale Lyautey's alleged medical condition and physical impairment.

### FIFTY-NINTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a sufficient "sworn information form" as required by Section 5(3) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(3).

### SIXTIETH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a report of settlements and judgments obtained for the Plaintiff, Gale Lyautey's alleged injury and/or Plaintiffs' alleged damages, as is required by Section 7(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(2).

### SIXTY-FIRST DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit with the Complaint a written report and supporting test results constituting *prima facie* evidence that the Plaintiff, Gale Lyautey had an asbestos-related physical impairment meeting the requirements specified in Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204. Alternatively, Plaintiffs' purported prima facie evidence is inadequate in that it fails to include some or all of the requisite elements that Section 4 specifies for the Plaintiff, Gale Lyautey's alleged disease.

## SIXTY-SECOND DEFENSE

Pursuant to Section 4(10)(b) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204(10)(b), Plaintiffs' presentation of prima facie evidence, if any, meeting the requirements of Section 4 of the Act is not conclusive as to Defendant's liability.

## SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred by Section 774.208, Florida Statutes, which provides that there is no cause of action, in an asbestos claim, against a product seller for harm caused by a product which the seller did not manufacture, sell, rent, lease, or expressly warrant, in the absence of intentional misconduct.

## SIXTY-FOURTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs also fail to comply with the Act by not attaching any "supporting documentation of the condition claimed to exist," pursuant to 774.205(3)(g), Florida Statute.

## SIXTY-FIFTH DEFENSE

Defendant restates and incorporates by reference any and all affirmative defenses raised by any other Defendant in this case as if fully set out verbatim herein.

## SIXTY-SIXTH DEFENSE

Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

## SIXTY-SEVENTH DEFENSE

Defendant reserves the right to amend its Answer, if appropriate, after full investigation and discovery.

Submitted this 5TH day of August, 2010.

BICE COLE LAW FIRM, P.L.

Brenda Godfrey
Florida Bar No.: 0707716
Marsad Quraishi
Florida Bar No.: 23790
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, Fl 33134
305-444-1225
*Counsel for National Service Industries, Inc.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served via LexisNexis File & Serve on Plaintiffs' counsel and all counsel of record this 5TH day of August, 2010.

Attorney

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

          Plaintiff(s),

vs.

ALFA LAVAL, INC., et al.

          Defendants.

_____/

ASBESTOS LITIGATION

CASE NO.: 10-35086 CA 31

## DEFENDANT THE NASH ENGINEERING COMPANY'S, IMPROPERALY NAMED AS GARDNER DENVER NASH LLC, ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, Defendant, Nash Engineering Company (hereinafter "Nash" or "Defendant"), improperly named as Gardner Denver Nash LLC, demands a trial by jury, and without waiving any defenses, responds to Plaintiffs' Complaint and Demand for Jury Trial as follows:

### ANSWER

1.    The allegations contained in Paragraph One (1) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

2.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Two (2) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

1

3.      The allegations contained in Paragraph Three (3) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

4.      This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Four (4) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

5.      The allegations contained in Paragraph Five (5) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

6.      The allegations contained in Paragraph Six (6) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

7.      The allegations contained in Paragraph Seven (7) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

8.      The allegations contained in Paragraph Eight (8) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered any injuries as a result of this Defendant's actions.

9.      The allegations of Paragraph Nine (9) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

10.     The allegations of Paragraph Ten (10) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

2

## DEFENDANTS

11. – 35.     This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eleven (11) – Thirty-Five (35) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

36.     This Defendant admits only that it has an agent for service in Florida; the remainder of the allegations contained in Paragraph Thirty-Six (36) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

37. – 64.     This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Thirty-Seven (37) – Sixty-Four (64) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

65.     The allegations contained in Paragraph Sixty-Five (65) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

66.     The allegations contained in Paragraph Sixty-Six (66) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

67.     The allegations contained in Paragraph Sixty-Seven (67), including sub-parts a.– b. of Plaintiffs' Complaint are denied as they pertain to this Defendant.

68.     The allegations contained in Paragraph Sixty-Eight (68) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

WHEREFORE, Nash demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

3

## COUNT I: NEGLIGENCE

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Sixty-Eight (68) of Plaintiffs' Complaint as if the same had been restated herein.

69.    The allegations contained in Paragraph Sixty-Nine (69) of Plaintiffs' Complaint are denied, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos or injured from this Defendant's product.

70.    The allegations contained in Paragraph Seventy (70) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

71.    The allegations contained in Paragraph Seventy-One (71) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

72.    The allegations contained in Paragraph Seventy-Two (72) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

73.    The allegations contained in Paragraph Seventy-Three (73) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

74.    The allegations contained in Paragraph Seventy-Four (74) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

4

75.     The allegations contained in Paragraph Seventy-Five (75) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

76.     The allegations contained in Paragraph Seventy-Six (76) including sub-paragraphs (a- h) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Nash demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT II:  STRICT LIABILITY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Seventy-Six (76) of Plaintiffs' Complaint as if the same had been restated herein.

77.     The allegations contained in Paragraph Seventy-Seven (77) of Plaintiffs' Complaint are denied as they pertain to this Defendant,

78.     The allegations contained in Paragraph Seventy-Eight (78) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

79.     The allegations contained in Paragraph Seventy-Nine (79) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

80.     The allegations contained in Paragraph Eighty (80) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

81.     The allegations contained in Paragraph Eighty-One (81) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

82.     The allegations contained in Paragraph Eighty-Two (82) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

83.     The allegations contained in Paragraph Eighty-Three (83) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

84.     The allegations contained in Paragraph Eighty-Four (84) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

85.     The allegations contained in Paragraph Eighty-Five (85) of Plaintiffs' Complaint, including sub-parts (a. – c.), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

86.     The allegations contained in Paragraph Eighty-Six (86) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

87.     The allegations contained in Paragraph Eighty-Seven (87), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

88.     The allegations contained in Paragraph Eighty-Eight (88) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to and/or suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Nash demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT III:  LOSS OF CONSORTIUM—PATRICIA LYAUTEY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Eight (88) of Plaintiffs' Complaint as if the same had been restated herein.

89.    The allegations contained in Paragraph Eighty-Nine (89) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Nash demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## DAMAGES

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Nine (89) of Plaintiffs' Complaint as if the same had been restated herein.

90.    The allegations contained in Paragraph Ninety (90) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey, suffered any injuries as a result of any conduct of this Defendant.

91.    The allegations contained in Paragraph Ninety-One (91) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiffs suffered injuries as a result of any conduct of this Defendant.

92.    The allegations contained in Paragraph Ninety-Two (92) of Plaintiffs' Complaint are denied as they pertain to this Defendant as they pertain to this Defendant, particularly the allegations that Plaintiffs have suffered injuries as a result of any conduct of this Defendant.

7

93.     The allegations contained in Paragraph Ninety-Three (93) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

94.     The allegations contained in Paragraph Ninety-Four (94) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

95.     The allegations contained in Paragraph Ninety-Five (95) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey has suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, Nash demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiffs' overly broad and vague allegations directed against all Defendants as a group.

### THIRD DEFENSE

This Court lacks jurisdiction over the person and property of this Defendant and, therefore, this case should be dismissed as to it. There is no showing of any connexity between the Plaintiff, Gale Lyautey's alleged injury and Defendant's activities in the State of Florida such

8

as might support an assertion of *in personam* jurisdiction over Defendant, nor is there any other basis for this Court to exercise jurisdiction over Defendant or its property.

## FOURTH DEFENSE

Venue of this civil action is not properly laid and, therefore, this Court should dismiss this civil action as to this Defendant.

## FIFTH DEFENSE

The process served on Defendant was defective and/or insufficient, and is therefore invalid and a nullity.  Because Defendant has not been served with proper and lawful process, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SIXTH DEFENSE

The attempted service of process on Defendant was defective and/or insufficient, and is therefore valid and a nullity.  Because there has been no proper and lawful service of process upon Defendant, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SEVENTH DEFENSE

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on this Defendant within 120 days after filing of the initial pleading.

## EIGHTH DEFENSE

Plaintiffs' claims are barred by collateral estoppel and res judicata.

## NINTH DEFENSE

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore,

precluded from alleging the material facts necessary to state a cause of action against this Defendant.

## TENTH DEFENSE

Plaintiffs' claims are barred by reason of release and/or accord and satisfaction.

## ELEVENTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches.

## TWELFTH DEFENSE

This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff, Gale Lyautey lived or worked.

## THIRTEENTH DEFENSE

This action is barred by the applicable statute of repose of Florida or the applicable statute or repose of any state where the Plaintiff, Gale Lyautey lives or worked.

## FOURTEENTH DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories that did not exist prior to the dates on which the Plaintiff, Gale Lyautey allegedly was exposed to this Defendant's products, in that such statutes are inapplicable to this action and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FIFTEENTH DEFENSE

Liability may not be imposed upon this Defendant based on a theory of enterprise or market share liability. To the extent Plaintiffs' claims are based upon such theories, they are barred.

## SIXTEENTH DEFENSE

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

## SEVENTEENTH DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat. §** 774.206(2), bars Plaintiffs from recovering damages for fear or risk of cancer.

## EIGHTEENTH DEFENSE

This Defendant is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation laws of any other state or jurisdiction where Plaintiff, Gale Lyautey may have worked, with respect to immunity or offset for payments received by Plaintiffs. Workers' compensation is Plaintiffs' exclusive remedy.

## NINETEENTH DEFENSE

The Plaintiff, Gale Lyautey and/or others misused, improperly used, or substantially modified Defendant's products at issue in this case, if any, and such misuse, improper use, or substantial modification proximately caused and contributed, in whole or in part, to the alleged conditions described in the Complaint and Plaintiffs' alleged damages. Therefore, this Defendant is not liable for any alleged injury or damages that Plaintiffs claim.

## TWENTIETH DEFENSE

This Defendant denies the existence of express warranty, implied warranty, privity, and breach of warranty.

### TWENTY-FIRST DEFENSE

Plaintiffs' Complaint fails to state a cause of action against Defendant as succeeding to the debts and liabilities of any other manufacturer or seller of asbestos-containing products, and Defendant specifically denies each allegation concerning successor corporate liability.

### TWENTY-SECOND DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims are or may be barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where the Plaintiff, Gale Lyautey's alleged exposure may have occurred.

### TWENTY-FOURTH DEFENSE

Plaintiffs' claims are preempted by applicable state and federal statutes, laws, and regulations.

### TWENTY-FIFTH DEFENSE

If Plaintiff, Gale Lyautey was exposed to any of Defendant's products, which is expressly denied, said products at the time were manufactured in conformity with federal and state regulations, standards, specifications and laws. Consequently, recovery by the Plaintiffs herein is barred.

### TWENTY-SIXTH DEFENSE

At the time the Defendant's products of which Plaintiffs complain left Defendant's control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, Defendant's products were not defective in design or manufacture.

## TWENTY-SEVENTH DEFENSE

This Defendant states that its products and the methods of manufacture and testing conformed to the generally recognized and prevailing industry standards and the state of the art in existence at the time the design was prepared and the product manufactured and tested.

## TWENTY-EIGHTH DEFENSE

This action is barred in whole or in part because Defendant reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Defendant had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and, therefore, had no duty to warn.

## TWENTY-NINTH DEFENSE

Defendant asserts the military contractor's defense.

## THIRTIETH DEFENSE

Defendant's asbestos-containing products, if any, were or may have been supplied to the United States Government, including the U.S. Navy, or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the United States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff, Gale Lyautey associated with the use of such products was equal to or superior to that of Defendant, and, by reason thereof, Defendant is not liable to Plaintiffs under any theory of law asserted in this civil action.

## THIRTY-FIRST DEFENSE

This Defendant's asbestos-containing products, if any, were supplied to the Plaintiff, Gale Lyautey's employers pursuant to contract, and such products conformed in every material respect to specifications established by said employers.

13

## THIRTY-SECOND DEFENSE

Plaintiffs' claims against Defendant should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Plaintiff, Gale Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Plaintiff, Gale Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Defendant, and, therefore, Defendant had no duty to warn Plaintiff, Gale Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

## THIRTY-THIRD DEFENSE

This action is barred in whole or in part because Defendant relied upon the care and skill of Plaintiff, Gale Lyautey's employers or labor union and/or other learned intermediaries.

## THIRTY-FOURTH DEFENSE

This Defendant pleads the negligence and conduct of Plaintiff, Gale Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

## THIRTY-FIFTH DEFENSE

This Defendant pleads the failure to join necessary and indispensable parties and the intervening negligence and intervening causation of entities not parties to this action as a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## THIRTY-SIXTH DEFENSE

This action fails to name as a Defendant a potentially indispensable party to the litigation, to wit: That collection of companies known as the "Manville Group."

14

## THIRTY-SEVENTH DEFENSE

The damages alleged by Plaintiffs, if any, were the result in whole or in part, of acts or omissions of third parties over which Defendant exercised no authority or control and for which Defendant has no liability.

## THIRTY-EIGHTH DEFENSE

If Plaintiff, Gale Lyautey sustained injuries as a result of exposure to asbestos or asbestos-containing products, which is denied, then such injuries were or may have been due to exposure to products of manufacturers or distributors not named as Defendants in this action.

## THIRTY-NINTH DEFENSE

If this Defendant is liable to Plaintiffs, which liability this Defendant expressly denies, any liability is limited to this Defendant's percentage of fault as provided by Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law. Specifically, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure were wholly or partially caused by actions and/or negligence of other manufacturers and/or distributors of asbestos-containing products to which he was exposed, certain entities that supplied asbestos fiber to the manufacturers, installation contractors who used said products, premises owners, and others. The responsible entities include, but are not limited, to the following: Johns-Manville Corporation; UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to

Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; the Zonolite Company, and W.R. Grace as its successor in interest; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T

& N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; Canadian Johns-Manville; Lake Asbestos of Quebec; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Powhatan Mining Company; Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; E.J. Bartells Company; L & W Supply Corporation; Shook and Fletcher; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Wallace & Gale Company; Standard Insulations, Inc.; Fuller-Austin Insulation Company; Bigelow-Liptak Corporation; JT Thorpe; Burns and Roe, Inc.; Jacksonville Shipyard, Washington Group International, f/k/a Morrison Knudsen; Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; defendants

previously dismissed from this action; and existing defendants that are subsequently dismissed from this action, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation;

Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Specifically, this Defendant is entitled to apportionment with respect to the foregoing entities on the following grounds:

A.     If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as manufacturers of products that contained asbestos or included asbestos-containing components, their predecessors and successors in interest, and any related companies: UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Johns-Manville Corporation; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including

19

Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Co, and other T & N subsidiaries), and

Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; other manufacturers of products of the type identified by the Plaintiffs; any manufacturers that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul;

Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation, and any manufacturers that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As manufacturers of

asbestos-containing products (or products that included asbestos-containing components) that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries, the above-listed manufacturers owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named manufacturers breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they manufactured, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named manufacturers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named manufacturers' tortious conduct.

B.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to those manufacturers identified in Paragraph A, *supra.* Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. Because they manufactured and/or distributed defective products that wholly or partially caused the Plaintiff, Gale Lyautey's injuries, the above-named manufacturers are strictly liable to the Plaintiffs for said injuries and the consequences thereof.

C.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following suppliers of

23

asbestos fiber (and/or asbestos-contaminated vermiculite), their predecessors and successors in interest, and any related companies: Johns-Manville Corporation; Canadian Johns-Manville; Lake Asbestos of Quebec; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Turner & Newall and other predecessors in interest to Federal Mogul; Powhatan Mining Company; H.K. Porter Company; the Zonolite Company, and W.R. Grace and Company as its successor in interest; any suppliers of asbestos fiber that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually

and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump,

Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These entities supplied asbestos fiber to which the Plaintiff, Gale Lyautey was exposed, either directly or through contact with asbestos-containing products. As such, these entities had a duty to warn their customers, manufacturers of asbestos-containing products, of the potential asbestos hazards associated with their asbestos fiber. Each of these suppliers breached its respective duty by negligently failing to warn its customers of the potential asbestos hazards of the asbestos fiber it supplied, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. These suppliers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn their customers and, to the extent applicable, the Plaintiffs. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of these entities' tortious conduct.

D.  Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the suppliers identified in Paragraph C, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiff, Gale Lyautey. These suppliers are subject to strict liability for manufacturing and/or distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

E.  If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as suppliers and distributors of asbestos-containing products, their predecessors and successors in interest,

and any related companies: Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; E.J. Bartells Company; L & W Supply Corporation; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Shook and Fletcher; Western Macarthur, f/k/a Western Asbestos; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; other suppliers and distributors of products of the type identified by the Plaintiffs; any suppliers and distributors of asbestos-containing products that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor

27

Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; Yarway Corporation, and any suppliers and distributors of asbestos-containing products that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As suppliers and distributors of

28

asbestos-containing products that caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they supplied and distributed, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named companies knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named companies' tortious conduct.

F.  Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, the distributors and suppliers identified in Paragraph E, *supra,* are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These suppliers and distributors of asbestos-containing products are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

G.  If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as installers of asbestos-containing products and construction contractors who used asbestos-containing products, as well as their predecessors and successors in interest and any related companies: Wallace & Gale Company; Standard Insulations, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Fuller-Austin Insulation Company; E.J. Bartells Company;

Bigelow-Liptak Corporation; JT Thorpe; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Western Macarthur, f/k/a Western Asbestos; Burns and Roe, Inc.; Washington Group International, f/k/a Morrison Knudsen; Todd Shipyards; American Shipbuilding; other installers and contractors who used products of the type identified by Plaintiffs; any installers and contractors that were previously defendants to this action but have been dismissed; and any installers and contractors that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-

30

Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs.  As installers and contractors who used asbestos-containing products that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products.  The above named companies breached their duties by

31

negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they used, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named entities knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named entities' tortious conduct.

H.     Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the installers and contractors identified in Paragraph G, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. To the extent these installers and contractors also supplied asbestos-containing materials; they are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

I.     If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as employers and/or as the owner or party in possession of premises where the Plaintiff, Gale Lyautey was exposed to asbestos, as well as their predecessors and successors in interest and any related companies: Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; Washington Group International, f/k/a Morrison Knudsen; Merrill Stevens Shipyard, Jacksonville Shipyards, Jacksonville Shipyards, Inc., any such entities that were

32

previously defendants to this action but have been dismissed; and any such entities that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest

33

or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Officemax Inc., f/k/a Boise Cascade LLC, f/k/a Boise Cascade Corporation; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation.   Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs.  The Plaintiff, Gale Lyautey's alleged injuries were wholly or partially caused by these entities' acts or omissions in breach of their duties of care to the Plaintiff, Gale Lyautey.

J.   In addition, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure are wholly or partially the result of actions and/or negligence of other parties, persons, firms, or corporations in addition to those specified above, including, but not limited to, the Plaintiff, Gale Lyautey himself; his various employers during the time of his alleged asbestos exposure; any and all persons or entities that owned or had a possessory interest in the locations where the Decedent may have been exposed to asbestos; any and all persons or entities that otherwise had control over or responsibility

34

for the locations where the Decedent may have been exposed to asbestos; and the entities identified in the Plaintiff, Gale Lyautey's Social Security printout and exposure sheets.

K.     In addition, this Defendant asserts its right to apportionment with respect to manufacturers and distributors of tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household. Tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household caused or contributed to the Plaintiff, Gale Lyautey's alleged injuries, and the manufacturers and distributors of these products are liable on the grounds of negligence and strict product liability. Likewise, this Defendant asserts that manufacturers and distributors of other harmful products to which the Plaintiff, Gale Lyautey was exposed are liable on the grounds of negligence and strict product liability, and this Defendant asserts its right to apportionment with respect to these manufacturers and distributors.

## FORTIETH DEFENSE

Pursuant to **Fla. Stat.** §§ 46.015(2), 768.041(2), and 768.31(5), Defendant is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff, Gale Lyautey's alleged injuries and/or Plaintiffs' alleged damages, as well as any such settlement or compromise previously reached by Plaintiffs. Defendant also asserts its right to collateral-source set-off under **Fla. Stat.** § 768.76.

## FORTY-FIRST DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleged to have been incurred, however, the Plaintiff, Gale Lyautey failed to exercise ordinary care for his own safety, and this failure

proximately caused his alleged injury and Plaintiffs' alleged damages. Therefore, the claims asserted in Plaintiffs' Complaint are partially or completely barred under the doctrines of contributory negligence and comparative fault.

## FORTY-SECOND DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleges to have been incurred, however, the Plaintiff, Gale Lyautey voluntarily and knowingly assumed the risk of incurring the alleged injury or damages, and, therefore, Plaintiffs are not entitled to recover from Defendant.

## FORTY-THIRD DEFENSE

If the Plaintiff, Gale Lyautey suffered any injuries as alleged in the Complaint, which this Defendant specifically denies, Plaintiff, Gale Lyautey failed to make reasonable efforts to mitigate these injuries and damages.

## FORTY-FOURTH DEFENSE

The Plaintiff, Gale Lyautey failed to take action to prevent the avoidable consequences of any action or omission of which Plaintiffs complain.

## FORTY-FIFTH DEFENSE

If the Plaintiff, Gale Lyautey or any member of his household used tobacco products, this use was a failure to exercise ordinary care for the Plaintiff, Gale Lyautey's own safety and was the sole or primary cause of his injuries. The negligence of the Plaintiff, Gale Lyautey, or members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## FORTY-SIXTH DEFENSE

The Plaintiff, Gale Lyautey's alleged contact with or use of any asbestos-containing products supplied, sold, or manufactured by this Defendant, which is expressly denied, if such use or contact in fact occurred, was not a substantial contributing cause of the Plaintiff, Gale Lyautey's alleged injuries.

## FORTY-SEVENTH DEFENSE

Any exposure of the Plaintiff, Gale Lyautey to this Defendant's products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff, Gale Lyautey's injuries.

## FORTY-EIGHTH DEFENSE

There is no causal connection between Defendant, or any product sold by Defendant, and any injury sustained by Plaintiff, Gale Lyautey; such causal connection being remote, indefinite, and speculative.  Consequently, the Complaint should be dismissed as to Defendant.

## FORTY-NINTH DEFENSE

Any damages claimed by the Plaintiffs that have not accrued are purely speculative, uncertain, and contingent and therefore cannot be recovered in this action.

## FIFTIETH DEFENSE

If the Plaintiff, Gale Lyautey suffered injuries, which this Defendant specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products sold or distributed by this Defendant, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Plaintiff, Gale Lyautey's workplace or elsewhere.

### FIFTY-FIRST DEFENSE

If there is an association between the Plaintiff, Gale Lyautey's alleged injuries and various agents to which he may have been exposed during his lifetime, which Defendant does not concede, the number of different agents to which he was exposed within and outside of Plaintiff, Gale Lyautey's workplace during his lifetime and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to the requisite degree of legal certainty, whether a causal connection exists between his alleged injuries and any particular agent.

### FIFTY-SECOND DEFENSE

Plaintiffs' claim for punitive damages is barred by Section 7(s) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(1), Florida's Constitution, the U.S. Constitution and this Court's Omnibus Order.

### FIFTY-THIRD DEFENSE

Pursuant to Section 5(1) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(1), Plaintiffs' Complaint must be dismissed unless (a) Plaintiffs are currently domiciled in Florida, or (b) Plaintiffs demonstrate that the Plaintiff, Gale Lyautey was exposed to asbestos in Florida and that this exposure in Florida was a substantial contributing factor to the alleged physical impairment underlying Plaintiffs' claim.

### FIFTY-FOURTH DEFENSE

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), the Court

should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to **Fla. Stat.** § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### FIFTY-FIFTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required Plaintiffs to serve a completed Forum Non Conveniens Fact Sheet with the Complaint. Plaintiffs either failed to serve a Forum Non Conveniens Fact Sheet at all or else served a purported Forum Non Conveniens Fact Sheet that was deficient for failure to include any or all of the required information.

### FIFTY-SIXTH DEFENSE

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which the Plaintiff, Gale Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

### FIFTY-SEVENTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because the Plaintiff, Gale Lyautey did not have a physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.

### FIFTY-EIGHTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because factors other than asbestos exposure were more probably the cause of the Plaintiff, Gale Lyautey's alleged medical condition and physical impairment.

### FIFTY-NINTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a sufficient "sworn information form" as required by Section 5(3) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(3).

### SIXTIETH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a report of settlements and judgments obtained for the Plaintiff, Gale Lyautey's alleged injury and/or Plaintiffs' alleged damages, as is required by Section 7(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(2).

### SIXTY-FIRST DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit with the Complaint a written report and supporting test results constituting *prima facie* evidence that the Plaintiff, Gale Lyautey had an asbestos-related physical impairment meeting the requirements specified in Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204. Alternatively, Plaintiffs' purported prima facie evidence is inadequate in that it fails to include some or all of the requisite elements that Section 4 specifies for the Plaintiff, Gale Lyautey's alleged disease.

### SIXTY-SECOND DEFENSE

Pursuant to Section 4(10)(b) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204(10)(b), Plaintiffs' presentation of prima facie evidence, if any, meeting the requirements of Section 4 of the Act is not conclusive as to Defendant's liability.

### SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred by Section 774.208, Florida Statutes, which provides that there is no cause of action, in an asbestos claim, against a product seller for harm caused by a product which the seller did not manufacture, sell, rent, lease, or expressly warrant, in the absence of intentional misconduct.

### SIXTY-FOURTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs also fail to comply with the Act by not attaching any "supporting documentation of the condition claimed to exist," pursuant to 774.205(3)(g), Florida Statute.

### SIXTY-FIFTH DEFENSE

Defendant restates and incorporates by reference any and all affirmative defenses raised by any other Defendant in this case as if fully set out verbatim herein.

### SIXTY-SIXTH DEFENSE

Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

### SIXTY-SEVENTH DEFENSE

Defendant reserves the right to amend its Answer, if appropriate, after full investigation and discovery.

Submitted this 5th day of August, 2010.

BICE COLE LAW FIRM, P.L.

_____

Brenda Godfrey
Florida Bar No.: 0707716
Marsad Quraishi
Florida Bar No.: 23790
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, Fl 33134
305-444-1225
*Counsel for The Nash Engineering Company*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served via LexisNexis File & Serve on Plaintiffs' counsel and all counsel of record this 5th day of August, 2010.

_____
Attorney

42

32517338

Aug 5 2010
3:50PM

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife,

ASBESTOS LITIGATION

CASE NO.: 10-35086 CA 31

    Plaintiff(s),

vs.

ALFA LAVAL, INC., et al.

    Defendants.
_____/

## DEFENDANT OFFICEMAX INCORPORATED, F/K/A BOISE CASCADE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, Defendant, OfficeMax Incorporated, f/k/a Boise Cascade Company (hereinafter "OfficeMax" or "Defendant"), demands a trial by jury, and without waiving any defenses, responds to Plaintiffs' Complaint and Demand for Jury Trial as follows:

### ANSWER

1.    The allegations contained in Paragraph One (1) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

2.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Two (2) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

3.    The allegations contained in Paragraph Three (3) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

4.     This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraph Four (4) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations.

5.     The allegations contained in Paragraph Five (5) of Plaintiffs' Complaint contain conclusions of law to which no response is required, but, to the extent a response is deemed necessary, said allegations are denied as they pertain to this Defendant.

6.     The allegations contained in Paragraph Six (6) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

7.     The allegations contained in Paragraph Seven (7) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

8.     The allegations contained in Paragraph Eight (8) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered any injuries as a result of this Defendant's actions.

9.     The allegations of Paragraph Nine (9) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

10.     The allegations of Paragraph Ten (10) of Plaintiffs' Complaint constitute an impermissible attempt to disclaim potential defenses available to Defendant.  To the extent a response is required, the allegations are denied as they pertain to this Defendant.

## DEFENDANTS

11. – 51.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Eleven (11) – Fifty-One (51) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

52.    This Defendant admits only that it has an agent for service in Florida; the remainder of the allegations contained in Paragraph Fifty-Two (52) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

53. – 64.    This Defendant is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of Paragraphs Fifty-Three (53) – Sixty-Four (64) of Plaintiffs' Complaint and, therefore, can neither admit nor deny said allegations

65.    The allegations contained in Paragraph Sixty-Five (65) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

66.    The allegations contained in Paragraph Sixty-Six (66) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

67.    The allegations contained in Paragraph Sixty-Seven (67), including sub-parts a.– b. of Plaintiffs' Complaint are denied as they pertain to this Defendant.

68.    The allegations contained in Paragraph Sixty-Eight (68) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

WHEREFORE, OfficeMax demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT I: NEGLIGENCE

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Sixty-Eight (68) of Plaintiffs' Complaint as if the same had been restated herein.

69.     The allegations contained in Paragraph Sixty-Nine (69) of Plaintiffs' Complaint are denied, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos or injured from this Defendant's product.

70.     The allegations contained in Paragraph Seventy (70) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

71.     The allegations contained in Paragraph Seventy-One (71) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

72.     The allegations contained in Paragraph Seventy-Two (72) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to asbestos from this Defendant's product.

73.     The allegations contained in Paragraph Seventy-Three (73) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

74.     The allegations contained in Paragraph Seventy-Four (74) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

4

75.     The allegations contained in Paragraph Seventy-Five (75) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

76.     The allegations contained in Paragraph Seventy-Six (76) including sub-paragraphs (a- h) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, OfficeMax demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT II:  STRICT LIABILITY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Seventy-Six (76) of Plaintiffs' Complaint as if the same had been restated herein.

77.     The allegations contained in Paragraph Seventy-Seven (77) of Plaintiffs' Complaint are denied as they pertain to this Defendant,

78.     The allegations contained in Paragraph Seventy-Eight (78) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

79.     The allegations contained in Paragraph Seventy-Nine (79) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

80.     The allegations contained in Paragraph Eighty (80) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

5

81.    The allegations contained in Paragraph Eighty-One (81) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

82.    The allegations contained in Paragraph Eighty-Two (82) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

83.    The allegations contained in Paragraph Eighty-Three (83) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

84.    The allegations contained in Paragraph Eighty-Four (84) of Plaintiffs' Complaint are denied as they pertain to this Defendant.

85.    The allegations contained in Paragraph Eighty-Five (85) of Plaintiffs' Complaint, including sub-parts (a. – c.), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

86.    The allegations contained in Paragraph Eighty-Six (86) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

87.    The allegations contained in Paragraph Eighty-Seven (87), of Plaintiffs' Complaint are denied as they pertain to this Defendant.

88.    The allegations contained in Paragraph Eighty-Eight (88) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey was exposed to and/or suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, OfficeMax demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## COUNT III:  LOSS OF CONSORTIUM—PATRICIA LYAUTEY

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Eight (88) of Plaintiffs' Complaint as if the same had been restated herein.

89.     The allegations contained in Paragraph Eighty-Nine (89) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, OfficeMax demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## DAMAGES

Defendant incorporates herein by reference each and every answer, response, and defense set forth to all of the allegations of Paragraphs One (1) through Eighty-Nine (89) of Plaintiffs' Complaint as if the same had been restated herein.

90.     The allegations contained in Paragraph Ninety (90) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey, suffered any injuries as a result of any conduct of this Defendant.

91.     The allegations contained in Paragraph Ninety-One (91) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiffs suffered injuries as a result of any conduct of this Defendant.

92.     The allegations contained in Paragraph Ninety-Two (92) of Plaintiffs' Complaint are denied as they pertain to this Defendant as they pertain to this Defendant, particularly the allegations that Plaintiffs have suffered injuries as a result of any conduct of this Defendant.

93. The allegations contained in Paragraph Ninety-Three (93) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

94. The allegations contained in Paragraph Ninety-Four (94) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Gale Lyautey suffered injuries as a result of any conduct of this Defendant.

95. The allegations contained in Paragraph Ninety-Five (95) of Plaintiffs' Complaint are denied as they pertain to this Defendant, particularly the allegations that Plaintiff, Patricia Lyautey has suffered injuries as a result of any conduct of this Defendant.

WHEREFORE, OfficeMax demands judgment in its favor and against Plaintiffs, together with costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiffs' overly broad and vague allegations directed against all Defendants as a group.

### THIRD DEFENSE

This Court lacks jurisdiction over the person and property of this Defendant and, therefore, this case should be dismissed as to it. There is no showing of any connexity between the Plaintiff, Gale Lyautey's alleged injury and Defendant's activities in the State of Florida such

8

as might support an assertion of *in personam* jurisdiction over Defendant, nor is there any other basis for this Court to exercise jurisdiction over Defendant or its property.

## FOURTH DEFENSE

Venue of this civil action is not properly laid and, therefore, this Court should dismiss this civil action as to this Defendant.

## FIFTH DEFENSE

The process served on Defendant was defective and/or insufficient, and is therefore invalid and a nullity. Because Defendant has not been served with proper and lawful process, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SIXTH DEFENSE

The attempted service of process on Defendant was defective and/or insufficient, and is therefore valid and a nullity. Because there has been no proper and lawful service of process upon Defendant, this Court lacks jurisdiction over the corporate person and property of Defendant.

## SEVENTH DEFENSE

Plaintiffs' Complaint should be dismissed pursuant to Florida Rule of Civil Procedure 1.070(j) because Plaintiffs failed to serve initial process on this Defendant within 120 days after filing of the initial pleading.

## EIGHTH DEFENSE

Plaintiffs' claims are barred by collateral estoppel and res judicata.

## NINTH DEFENSE

Upon the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and is, therefore,

precluded from alleging the material facts necessary to state a cause of action against this Defendant.

## TENTH DEFENSE

Plaintiffs' claims are barred by reason of release and/or accord and satisfaction.

## ELEVENTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches.

## TWELFTH DEFENSE

This action is barred by the statute of limitations of Florida or the applicable statute of limitations of any state where the Plaintiff, Gale Lyautey lived or worked.

## THIRTEENTH DEFENSE

This action is barred by the applicable statute of repose of Florida or the applicable statute or repose of any state where the Plaintiff, Gale Lyautey lives or worked.

## FOURTEENTH DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories that did not exist prior to the dates on which the Plaintiff, Gale Lyautey allegedly was exposed to this Defendant's products, in that such statutes are inapplicable to this action and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FIFTEENTH DEFENSE

Liability may not be imposed upon this Defendant based on a theory of enterprise or market share liability.  To the extent Plaintiffs' claims are based upon such theories, they are barred.

## SIXTEENTH DEFENSE

Florida law has not recognized a duty to "remove and recall" products from the marketplace post-sale.

## SEVENTEENTH DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat. §** 774.206(2), bars Plaintiffs from recovering damages for fear or risk of cancer.

## EIGHTEENTH DEFENSE

This Defendant is entitled to the benefit of any workers' compensation laws, including the Florida Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act, and the workers' compensation laws of any other state or jurisdiction where Plaintiff, Gale Lyautey may have worked, with respect to immunity or offset for payments received by Plaintiffs. Workers' compensation is Plaintiffs' exclusive remedy.

## NINETEENTH DEFENSE

The Plaintiff, Gale Lyautey and/or others misused, improperly used, or substantially modified Defendant's products at issue in this case, if any, and such misuse, improper use, or substantial modification proximately caused and contributed, in whole or in part, to the alleged conditions described in the Complaint and Plaintiffs' alleged damages. Therefore, this Defendant is not liable for any alleged injury or damages that Plaintiffs claim.

## TWENTIETH DEFENSE

This Defendant denies the existence of express warranty, implied warranty, privity, and breach of warranty.

11

### TWENTY-FIRST DEFENSE

Plaintiffs' Complaint fails to state a cause of action against Defendant as succeeding to the debts and liabilities of any other manufacturer or seller of asbestos-containing products, and Defendant specifically denies each allegation concerning successor corporate liability.

### TWENTY-SECOND DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims are or may be barred or otherwise limited or affected by provisions of the law of statutes of states or jurisdictions other than the State of Florida where the Plaintiff, Gale Lyautey's alleged exposure may have occurred.

### TWENTY-FOURTH DEFENSE

Plaintiffs' claims are preempted by applicable state and federal statutes, laws, and regulations.

### TWENTY-FIFTH DEFENSE

If Plaintiff, Gale Lyautey was exposed to any of Defendant's products, which is expressly denied, said products at the time were manufactured in conformity with federal and state regulations, standards, specifications and laws. Consequently, recovery by the Plaintiffs herein is barred.

### TWENTY-SIXTH DEFENSE

At the time the Defendant's products of which Plaintiffs complain left Defendant's control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, Defendant's products were not defective in design or manufacture.

12

### TWENTY-SEVENTH DEFENSE

This Defendant states that its products and the methods of manufacture and testing conformed to the generally recognized and prevailing industry standards and the state of the art in existence at the time the design was prepared and the product manufactured and tested.

### TWENTY-EIGHTH DEFENSE

This action is barred in whole or in part because Defendant reasonably relied upon the state of the medical and scientific art at the time its products were produced. As such, Defendant had no reason to know the potentially dangerous effect of prolonged exposure to asbestos, and, therefore, had no duty to warn.

### TWENTY-NINTH DEFENSE

Defendant asserts the military contractor's defense.

### THIRTIETH DEFENSE

Defendant's asbestos-containing products, if any, were or may have been supplied to the United States Government, including the U.S. Navy, or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the United States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff, Gale Lyautey associated with the use of such products was equal to or superior to that of Defendant, and, by reason thereof, Defendant is not liable to Plaintiffs under any theory of law asserted in this civil action.

### THIRTY-FIRST DEFENSE

This Defendant's asbestos-containing products, if any, were supplied to the Plaintiff, Gale Lyautey's employers pursuant to contract, and such products conformed in every material respect to specifications established by said employers.

## THIRTY-SECOND DEFENSE

Plaintiffs' claims against Defendant should be denied by reason of the sophisticated commercial user and learned intermediary doctrines because the Plaintiff, Gale Lyautey's employers were so experienced and sophisticated with regard to asbestos-containing products that no duty to warn existed. The knowledge of Plaintiff, Gale Lyautey's employers regarding the potential hazards of asbestos was equal to or superior to that of Defendant, and, therefore, Defendant had no duty to warn Plaintiff, Gale Lyautey as an employee of sophisticated commercial purchasers and/or users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

## THIRTY-THIRD DEFENSE

This action is barred in whole or in part because Defendant relied upon the care and skill of Plaintiff, Gale Lyautey's employers or labor union and/or other learned intermediaries.

## THIRTY-FOURTH DEFENSE

This Defendant pleads the negligence and conduct of Plaintiff, Gale Lyautey's employers as a partial or a complete bar to all claims asserted in the Complaint.

## THIRTY-FIFTH DEFENSE

This Defendant pleads the failure to join necessary and indispensable parties and the intervening negligence and intervening causation of entities not parties to this action as a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## THIRTY-SIXTH DEFENSE

This action fails to name as a Defendant a potentially indispensable party to the litigation, to wit: That collection of companies known as the "Manville Group."

14

### THIRTY-SEVENTH DEFENSE

The damages alleged by Plaintiffs, if any, were the result in whole or in part, of acts or omissions of third parties over which Defendant exercised no authority or control and for which Defendant has no liability.

### THIRTY-EIGHTH DEFENSE

If Plaintiff, Gale Lyautey sustained injuries as a result of exposure to asbestos or asbestos-containing products, which is denied, then such injuries were or may have been due to exposure to products of manufacturers or distributors not named as Defendants in this action.

### THIRTY-NINTH DEFENSE

If this Defendant is liable to Plaintiffs, which liability this Defendant expressly denies, any liability is limited to this Defendant's percentage of fault as provided by Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law.  Specifically, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure were wholly or partially caused by actions and/or negligence of other manufacturers and/or distributors of asbestos-containing products to which he was exposed, certain entities that supplied asbestos fiber to the manufacturers, installation contractors who used said products, premises owners, and others.  The responsible entities include, but are not limited, to the following:  Johns-Manville Corporation; UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to

Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; the Zonolite Company, and W.R. Grace as its successor in interest; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T

& N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation (NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; Canadian Johns-Manville; Lake Asbestos of Quebec; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Powhatan Mining Company; Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a DI Distributors, Inc.; E.J. Bartells Company; L & W Supply Corporation; Shook and Fletcher; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Wallace & Gale Company; Standard Insulations, Inc.; Fuller-Austin Insulation Company; Bigelow-Liptak Corporation; JT Thorpe; Burns and Roe, Inc.; Jacksonville Shipyard, Washington Group International, f/k/a Morrison Knudsen; Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; defendants

previously dismissed from this action; and existing defendants that are subsequently dismissed from this action, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to

18

Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Specifically, this Defendant is entitled to apportionment with respect to the foregoing entities on the following grounds:

A.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as manufacturers of products that contained asbestos or included asbestos-containing components, their predecessors and successors in interest, and any related companies: UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company, a/k/a UNARCO; Johns-Manville Corporation; Amatex Corporation, f/k/a American Asbestos Textile Corporation; Forty-Eight Insulations, Inc.; Standard Insulations, Inc.; Gatke Corporation; Nicolet, Inc.; Keasbey & Mattison Company; Hillsborough Holdings Corporation and its predecessors in interest, Jim Walter Industries, Celotex, and Panacon; Raymark Industries, f/k/a Raybestos-Manhattan, and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip

19

Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Ancor Holdings, Inc., and its subsidiary, National Gypsum Company; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Eagle-Picher Industries, Inc.; H.K. Porter Company and its subsidiaries and predecessors in interest, including Thermoid and Southern Asbestos Company, a/k/a Southern Textile; Kentile Floors; Keene Corporation, successor in interest to Baldwin-Ehret-Hill; Rock Wool Manufacturing Company; M.H. Detrick; Brunswick Fabricators Inc.; Joy Global Inc., f/k/a Harnischfeger Industries, Inc.; Rutland Fire Clay Company; Babcock & Wilcox Company and subsidiaries Americon, Inc., B&W Construction Company, and Diamond Power International, Inc.; Pittsburgh Corning Corporation; Owens Corning Corporation and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., CDC Corporation, and Pabco; Armstrong World Industries, Inc.; G-I Holdings, Inc., and its predecessors in interest, GAF Corporation and Rubberoid Company; W.R. Grace and Company and its affiliated companies; Skinner Engine Company; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors, and Beadex Manufacturing, LLC; Chicago Mastic Company; DAP, Inc.; Permalastic Products Company; United States Mineral Products Company; Eastco Industrial Safety Corporation; Federal Mogul, including Gasket Holdings, Inc. (Flexitallic), Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Moog Automotive (Wagner Brake Products), T&N Plc (including Turner & Newall, Turner Asbestos Fibres Co, and other T & N subsidiaries), and Velbesto and Beater Addition brands; North American Refractories Corporation

20

(NARCO); Kaiser Aluminum; Harbison-Walker Refractories, a/k/a INDRESCO, Inc.; A-Best Products Company; A.P. Green Refractories Company; Artra Group (Synkoloid); Plibrico Company; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Western Macarthur, f/k/a Western Asbestos; Proko Industries; Combustion Engineering; Congoleum; Kellogg Brown & Root; DII Industries, f/k/a Dresser Industries; Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc.; Flintkote; Quigley Company, Inc.; CAPCO Pipe Company; other manufacturers of products of the type identified by the Plaintiffs; any manufacturers that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster

21

Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation, and any manufacturers that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As manufacturers of asbestos-containing products (or products that included asbestos-containing components) that wholly or partially caused the

22

Plaintiff, Gale Lyautey's alleged injuries, the above-listed manufacturers owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named manufacturers breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they manufactured, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named manufacturers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named manufacturers' tortious conduct.

B.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to those manufacturers identified in Paragraph A, *supra*. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. Because they manufactured and/or distributed defective products that wholly or partially caused the Plaintiff, Gale Lyautey's injuries, the above-named manufacturers are strictly liable to the Plaintiffs for said injuries and the consequences thereof.

C.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following suppliers of asbestos fiber (and/or asbestos-contaminated vermiculite), their predecessors and successors in interest, and any related companies: Johns-Manville Corporation; Canadian

Johns-Manville; Lake Asbestos of Quebec; Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company, and Smith & Kanzler; Asbestos Corporation, Ltd.; Atlas Asbestos; Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company; Pacific Asbestos; Johnson Mines; National Asbestos Mines, Ltd.; Atlas Adhesives; Bell Asbestos Mines, Ltd; CSR; Cape Asbestos Company, Ltd., and related companies North American Asbestos Corporation and Continental Producers Corporation; Cassiar Mines, Cassiar Mining Corporation Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd.; Turner & Newall and other predecessors in interest to Federal Mogul; Powhatan Mining Company; H.K. Porter Company; the Zonolite Company, and W.R. Grace and Company as its successor in interest; any suppliers of asbestos fiber that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to

24

Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, these

25

entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These entities supplied asbestos fiber to which the Plaintiff, Gale Lyautey was exposed, either directly or through contact with asbestos-containing products. As such, these entities had a duty to warn their customers, manufacturers of asbestos-containing products, of the potential asbestos hazards associated with their asbestos fiber. Each of these suppliers breached its respective duty by negligently failing to warn its customers of the potential asbestos hazards of the asbestos fiber it supplied, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. These suppliers knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn their customers and, to the extent applicable, the Plaintiffs. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of these entities' tortious conduct.

D.      Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the suppliers identified in Paragraph C, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiff, Gale Lyautey. These suppliers are subject to strict liability for manufacturing and/or distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

E.      If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as suppliers and distributors of asbestos-containing products, their predecessors and successors in interest, and any related companies: Pacor, Inc., a/k/a Philadelphia Asbestos Corporation, and Pacor Material Supply Company; Delaware Insulation, a/k/a D1 Distributors, Inc.;

Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; E.J. Bartells Company; L & W Supply Corporation; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; Shook and Fletcher; Western Macarthur, f/k/a Western Asbestos; CE Thurston; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; other suppliers and distributors of products of the type identified by the Plaintiffs; any suppliers and distributors of asbestos-containing products that were previously defendants to this action but have been dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine

27

Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; Yarway Corporation, and any suppliers and distributors of asbestos-containing products that are currently defendants to this action but are subsequently dismissed. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs.  As suppliers and distributors of asbestos-containing products that caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products.

The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they supplied and distributed, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named companies knew or should have known of the dangerous condition that existed as a result of their negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named companies' tortious conduct.

F.    Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the distributors and suppliers identified in Paragraph E, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. These suppliers and distributors of asbestos-containing products are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

G.    If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as installers of asbestos-containing products and construction contractors who used asbestos-containing products, as well as their predecessors and successors in interest and any related companies: Wallace & Gale Company; Standard Insulations, Inc.; Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company; Fuller-Austin Insulation Company; E.J. Bartells Company; Bigelow-Liptak Corporation; JT Thorpe; Porter-Hayden Company and its predecessors, H. W. Porter & Company, Inc., and Reid Hayden, Inc.; A.C. & S., Inc., f/k/a Armstrong Contracting and Supply; Western Macarthur, f/k/a Western Asbestos; Burns and Roe,

Inc.; Washington Group International, f/k/a Morrison Knudsen; Todd Shipyards; American Shipbuilding; other installers and contractors who used products of the type identified by Plaintiffs; any installers and contractors that were previously defendants to this action but have been dismissed; and any installers and contractors that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as

30

successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. As installers and contractors who used asbestos-containing products that wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries; the above-listed companies owed the Plaintiff, Gale Lyautey the duty to warn of potential asbestos hazards from using such products. The above named companies breached their duties by negligently failing to warn the Plaintiff, Gale Lyautey of the potential asbestos hazards of the products they used, and such failure wholly or partially caused the Plaintiff, Gale Lyautey's alleged injuries. The above-named entities knew or should have known of the dangerous condition that existed as a result of their

31

negligent failure to warn the Plaintiff, Gale Lyautey. Furthermore, the Plaintiff, Gale Lyautey sustained his alleged injuries wholly or partially as a result of the above-named entities' tortious conduct.

H.   Pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), or other applicable law, the installers and contractors identified in Paragraph G, *supra*, are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. To the extent these installers and contractors also supplied asbestos-containing materials; they are subject to strict liability for distributing a defective product that wholly or partially caused the Plaintiff, Gale Lyautey's injuries.

I.   If this Defendant is liable to the Plaintiffs, which liability this Defendant expressly denies, this Defendant is entitled to an apportionment of damages pursuant to Florida Statutes § 768.81, or other applicable law, with respect to the following as employers and/or as the owner or party in possession of premises where the Plaintiff, Gale Lyautey was exposed to asbestos, as well as their predecessors and successors in interest and any related companies: Waterman Steamship Corporation; Prudential Lines, Inc.; Mclean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.); Todd Shipyards; American Shipbuilding; Lykes Brothers Steamship; Bethlehem Steel Corporation; Swan Transportation and subsidiary Tyler Pipe Industries; Washington Group International, f/k/a Morrison Knudsen; Merrill Stevens Shipyard, Jacksonville Shipyards, Jacksonville Shipyards, Inc., any such entities that were previously defendants to this action but have been dismissed; and any such entities that are currently defendants to this action but are subsequently dismissed, including but not limited to: Alfa Laval, Inc., individually and as successor in interest to The Delaval

Separator Co. and Sharples, Inc.; Asco Valve, Inc.; A.W. Chesterton Company; Bigham Insulation & Supply Company; Bird, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; Carrier Corporation; Caterpillar, Inc.; CBS Corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation; Certainteed Corporation; Cleaver Brooks, Inc.; Compudyne Corp., individually and as successor in interest to York-Shipley Global; Crane Co.; Cummins, Inc.; Dana Companies LLC f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Company; Detroit Diesel Corporation; Eaton Hydraulics, Inc., f/k/a and/or successor-in-interest to Vickers, Inc.; Elliot Turbomachinery Company, Inc.; Fairbanks Morse Pumps Corporation; Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Co. and as successor to the former Vellumoid division of Federal Mogul; Flowserve Corporation, f/k/a Durametallic Corporation; Ford Motor Company; Foster Wheeler Energy Corporation, f/k/a Foster Wheeler Corporation; Gardner Denver, Inc.; Gardner Denver Nash, LLC; General Electric Company; Genuine Parts Company; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corporation; The Goodyear Tire & Rubber Company; Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc.; Greene, Tweed & Co., Inc.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corporation, as successor in interest to The Bendix Corporation; IMO Industries, Inc., f/k/a Delaval Turbine, Inc. (a division of Colfax Corporation); Ingersoll-Rand Company; ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps; John Crane, Inc.; Leslie Controls, Inc.; McCord Corporation; Melrath Gasket, Inc.; National Service Industries, Inc.; Owens-Illinois Inc.; Pneumo Abex LLC, a successor in interest

33

to Pneumo Abex Corporation; Rapid American Corporation; SPX Corporation, individually and as successor to DeZurik, Inc.; Stone & Webster Engineering Corporation, individually and as successor in interest to, parent to and/or alter ego to E.B. Badger & Sons Company; Union Carbide Corporation; Velan Valve Corporation; Viad Corporation, f/k/a The Dial Corporation, individually and as successor to Griscom Russell Company; Viking Pumps, Inc.; Warren Pumps, LLC, individually and as successor-in-interest to Quimby Pump, Co.; Weir Valves and Controls USA, Inc., f/k/a and/or successor-in-interest to Atwood and Morrill Co.; and Yarway Corporation. Pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), or other applicable law, these entities are or may be at least partially at fault for the injuries allegedly suffered by the Plaintiffs. The Plaintiff, Gale Lyautey's alleged injuries were wholly or partially caused by these entities' acts or omissions in breach of their duties of care to the Plaintiff, Gale Lyautey.

J.  In addition, the Plaintiff, Gale Lyautey's injuries, if any, arising from his alleged asbestos exposure are wholly or partially the result of actions and/or negligence of other parties, persons, firms, or corporations in addition to those specified above, including, but not limited to, the Plaintiff, Gale Lyautey himself; his various employers during the time of his alleged asbestos exposure; any and all persons or entities that owned or had a possessory interest in the locations where the Decedent may have been exposed to asbestos; any and all persons or entities that otherwise had control over or responsibility for the locations where the Decedent may have been exposed to asbestos; and the entities identified in the Plaintiff, Gale Lyautey's Social Security printout and exposure sheets.

K.   In addition, this Defendant asserts its right to apportionment with respect to manufacturers and distributors of tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household. Tobacco products consumed by the Plaintiff, Gale Lyautey or members of his household caused or contributed to the Plaintiff, Gale Lyautey's alleged injuries, and the manufacturers and distributors of these products are liable on the grounds of negligence and strict product liability. Likewise, this Defendant asserts that manufacturers and distributors of other harmful products to which the Plaintiff, Gale Lyautey was exposed are liable on the grounds of negligence and strict product liability, and this Defendant asserts its right to apportionment with respect to these manufacturers and distributors.

## FORTIETH DEFENSE

Pursuant to **Fla. Stat.** §§ 46.015(2), 768.041(2), and 768.31(5), Defendant is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff, Gale Lyautey's alleged injuries and/or Plaintiffs' alleged damages, as well as any such settlement or compromise previously reached by Plaintiffs. Defendant also asserts its right to collateral-source set-off under **Fla. Stat.** § 768.76.

## FORTY-FIRST DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleged to have been incurred, however, the Plaintiff, Gale Lyautey failed to exercise ordinary care for his own safety, and this failure proximately caused his alleged injury and Plaintiffs' alleged damages. Therefore, the claims

asserted in Plaintiffs' Complaint are partially or completely barred under the doctrines of contributory negligence and comparative fault.

## FORTY-SECOND DEFENSE

Defendant denies that Plaintiff, Gale Lyautey suffered any injury or that Plaintiffs have incurred any damages. As to any injury or damages alleges to have been incurred, however, the Plaintiff, Gale Lyautey voluntarily and knowingly assumed the risk of incurring the alleged injury or damages, and, therefore, Plaintiffs are not entitled to recover from Defendant.

## FORTY-THIRD DEFENSE

If the Plaintiff, Gale Lyautey suffered any injuries as alleged in the Complaint, which this Defendant specifically denies, Plaintiff, Gale Lyautey failed to make reasonable efforts to mitigate these injuries and damages.

## FORTY-FOURTH DEFENSE

The Plaintiff, Gale Lyautey failed to take action to prevent the avoidable consequences of any action or omission of which Plaintiffs complain.

## FORTY-FIFTH DEFENSE

If the Plaintiff, Gale Lyautey or any member of his household used tobacco products, this use was a failure to exercise ordinary care for the Plaintiff, Gale Lyautey's own safety and was the sole or primary cause of his injuries. The negligence of the Plaintiff, Gale Lyautey, or members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## FORTY-SIXTH DEFENSE

The Plaintiff, Gale Lyautey's alleged contact with or use of any asbestos-containing products supplied, sold, or manufactured by this Defendant, which is expressly denied, if such use or contact in fact occurred, was not a substantial contributing cause of the Plaintiff, Gale Lyautey's alleged injuries.

## FORTY-SEVENTH DEFENSE

Any exposure of the Plaintiff, Gale Lyautey to this Defendant's products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff, Gale Lyautey's injuries.

## FORTY-EIGHTH DEFENSE

There is no causal connection between Defendant, or any product sold by Defendant, and any injury sustained by Plaintiff, Gale Lyautey; such causal connection being remote, indefinite, and speculative.  Consequently, the Complaint should be dismissed as to Defendant.

## FORTY-NINTH DEFENSE

Any damages claimed by the Plaintiffs that have not accrued are purely speculative, uncertain, and contingent and therefore cannot be recovered in this action.

## FIFTIETH DEFENSE

If the Plaintiff, Gale Lyautey suffered injuries, which this Defendant specifically denies, said injuries were not caused or contributed to by his exposure to asbestos-containing products sold or distributed by this Defendant, but rather by his exposure to dangerous or hazardous chemicals, fumes, products, substances, or dust that were present at Plaintiff, Gale Lyautey's workplace or elsewhere.

## FIFTY-FIRST DEFENSE

If there is an association between the Plaintiff, Gale Lyautey's alleged injuries and various agents to which he may have been exposed during his lifetime, which Defendant does not concede, the number of different agents to which he was exposed within and outside of Plaintiff, Gale Lyautey's workplace during his lifetime and the lack of definitive evidence as to the amount of actual exposure to each such agent makes it impossible to determine, to the requisite degree of legal certainty, whether a causal connection exists between his alleged injuries and any particular agent.

## FIFTY-SECOND DEFENSE

Plaintiffs' claim for punitive damages is barred by Section 7(s) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(1), Florida's Constitution, the U.S. Constitution and this Court's Omnibus Order.

## FIFTY-THIRD DEFENSE

Pursuant to Section 5(1) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(1), Plaintiffs' Complaint must be dismissed unless (a) Plaintiffs are currently domiciled in Florida, or (b) Plaintiffs demonstrate that the Plaintiff, Gale Lyautey was exposed to asbestos in Florida and that this exposure in Florida was a substantial contributing factor to the alleged physical impairment underlying Plaintiffs' claim.

## FIFTY-FOURTH DEFENSE

Under the doctrine of *forum non conveniens*, Florida is not the proper jurisdiction in which to litigate this case. Pursuant to Florida Rule of Civil Procedure 1.061 and Section IV.B of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), the Court

should exercise its authority to dismiss this case for the convenience of the parties and in the interests of justice for re-filing in the proper forum, where an adequate legal remedy exists. Alternatively, pursuant to **Fla. Stat.** § 47.122, this action should be transferred to another Florida venue for the convenience of the parties or witnesses or in the interest of justice.

### FIFTY-FIFTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to comply with Section IV.A of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004), which required Plaintiffs to serve a completed Forum Non Conveniens Fact Sheet with the Complaint. Plaintiffs either failed to serve a Forum Non Conveniens Fact Sheet at all or else served a purported Forum Non Conveniens Fact Sheet that was deficient for failure to include any or all of the required information.

### FIFTY-SIXTH DEFENSE

Plaintiffs failed to serve an "exposure sheet" in compliance with Section VI of this Court's Fourth Amended Omnibus Order on Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation (Revised November, 2004). No document purporting to be an "exposure sheet" was served at the time of service of the Complaint. Alternatively, what purports to be an "exposure sheet" fails to identify the products to which the Plaintiff, Gale Lyautey was allegedly exposed, the dates of each exposure, the place of each exposure, and/or the names and addresses of witnesses who will testify to such exposure. Accordingly, Plaintiffs' Complaint should be dismissed on this basis.

## FIFTY-SEVENTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because the Plaintiff, Gale Lyautey did not have a physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.

## FIFTY-EIGHTH DEFENSE

Pursuant to Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204, recovery by the Plaintiffs is barred because factors other than asbestos exposure were more probably the cause of the Plaintiff, Gale Lyautey's alleged medical condition and physical impairment.

## FIFTY-NINTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a sufficient "sworn information form" as required by Section 5(3) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.205(3).

## SIXTIETH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit a report of settlements and judgments obtained for the Plaintiff, Gale Lyautey's alleged injury and/or Plaintiffs' alleged damages, as is required by Section 7(2) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.207(2).

## SIXTY-FIRST DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs failed to submit with the Complaint a written report and supporting test results constituting *prima facie* evidence that the Plaintiff, Gale Lyautey had an asbestos-related physical impairment meeting the requirements specified in Section 4 of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204. Alternatively, Plaintiffs' purported prima facie evidence is inadequate in that it fails to include some or all of the requisite elements that Section 4 specifies for the Plaintiff, Gale Lyautey's alleged disease.

40

## SIXTY-SECOND DEFENSE

Pursuant to Section 4(10)(b) of Florida's "Asbestos and Silica Compensation Fairness Act," **Fla. Stat.** § 774.204(10)(b), Plaintiffs' presentation of prima facie evidence, if any, meeting the requirements of Section 4 of the Act is not conclusive as to Defendant's liability.

## SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred by Section 774.208, Florida Statutes, which provides that there is no cause of action, in an asbestos claim, against a product seller for harm caused by a product which the seller did not manufacture, sell, rent, lease, or expressly warrant, in the absence of intentional misconduct.

## SIXTY-FOURTH DEFENSE

Plaintiffs' Complaint must be dismissed because Plaintiffs also fail to comply with the Act by not attaching any "supporting documentation of the condition claimed to exist," pursuant to 774.205(3)(g), Florida Statute.

## SIXTY-FIFTH DEFENSE

Defendant restates and incorporates by reference any and all affirmative defenses raised by any other Defendant in this case as if fully set out verbatim herein.

## SIXTY-SIXTH DEFENSE

Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

## SIXTY-SEVENTH DEFENSE

Defendant reserves the right to amend its Answer, if appropriate, after full investigation and discovery.

41

Submitted this 5th day of August, 2010.

BICE COLE LAW FIRM, P.L.

Brenda Godfrey
Florida Bar No.: 0707716
Marsad Quraishi
Florida Bar No.: 23790
999 Ponce De Leon Boulevard
Suite 710
Coral Gables, Fl  33134
305-444-1225
*Counsel for OfficeMax Incorporated*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served via LexisNexis File & Serve on Plaintiffs' counsel and all counsel of record this 5th day of August, 2010.

Attorney

42




32540762

Aug 6 2010
4:24PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

ASBESTOS LITIGATION

CASE NO. 10-35086 CA (31)

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife, et al.,

       Plaintiffs,

vs.

ALFA LAVAL, INC., et al.,

       Defendants.

_____/

## DETROIT DIESEL CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant, DETROIT DIESEL CORPORATION (hereinafter "Detroit Diesel"), by and through undersigned counsel files its Answer and Affirmative Defenses to Plaintiffs' Complaint and Demand for Jury Trial ("Complaint") as follows:

### ANSWER

Responding to the individually enumerated Paragraphs of Plaintiffs' Complaint, DETROIT DIESEL states as follows:

1. DETROIT DIESEL admits only that Plaintiffs' Complaint seeks damages in excess of $15,000.00 but denies that Plaintiff is entitled to any damages from DETROIT DIESEL.

2. DETROIT DIESEL admits only that the Plaintiffs are GALE LYAUTEY and PATRICIA LYAUTEY, however denies the remaining allegations and claims set forth in Paragraph 2 and demands strict proof thereof.

3. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 3 and demands strict proof thereof.

Case No. 10-35086 CA (31)

4. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 4 and demands strict proof thereof.

5. DETROIT DIESEL admits only that Plaintiffs attempt to define "Products".

6. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 6 and demands strict proof thereof.

7. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 7 and demands strict proof thereof.

8. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 8 and demands strict proof thereof.

9. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 9 and demands strict proof thereof.

10. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 10 and demands strict proof thereof.

## DEFENDANTS

11. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and thus denies the allegations and claims set forth in Paragraph 11 of the Complaint and demands strict proof thereof.

12. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and thus denies the allegations and claims set forth in Paragraph 12 of the Complaint and demands strict proof thereof.

13. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and thus denies the allegations and claims set forth in Paragraph 13 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

14. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and thus denies the allegations and claims set forth in Paragraph 14 of the Complaint and demands strict proof thereof.

15. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and thus denies the allegations and claims set forth in Paragraph 15 of the Complaint and demands strict proof thereof.

16. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and thus denies the allegations and claims set forth in Paragraph 16 of the Complaint and demands strict proof thereof.

17. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and thus denies the allegations and claims set forth in Paragraph 17 of the Complaint and demands strict proof thereof.

18. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and thus denies the allegations and claims set forth in Paragraph 18 of the Complaint and demands strict proof thereof.

19. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and thus denies the allegations and claims set forth in Paragraph 19 of the Complaint and demands strict proof thereof.

20. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and thus denies the allegations and claims set forth in Paragraph 20 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

21. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and thus denies the allegations and claims set forth in Paragraph 21 of the Complaint and demands strict proof thereof.

22. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and thus denies the allegations and claims set forth in Paragraph 22 of the Complaint and demands strict proof thereof.

23. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and thus denies the allegations and claims set forth in Paragraph 23 of the Complaint and demands strict proof thereof.

24. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and thus denies the allegations and claims set forth in Paragraph 24 of the Complaint and demands strict proof thereof.

25. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and thus denies the allegations and claims set forth in Paragraph 25 of the Complaint and demands strict proof thereof.

26. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and thus denies the allegations and claims set forth in Paragraph 26 of the Complaint and demands strict proof thereof.

27. DETROIT DIESEL admits only that it is a Delaware Corporation with its principal place of business in Michigan. Detroit Diesel denies all the remaining allegations and claims set forth Paragraph 27 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

28. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 and thus denies the allegations and claims set forth in Paragraph 28 of the Complaint and demands strict proof thereof.

29. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 and thus denies the allegations and claims set forth in Paragraph 29 of the Complaint and demands strict proof thereof.

30. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 and thus denies the allegations and claims set forth in Paragraph 30 of the Complaint and demands strict proof thereof.

31. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and thus denies the allegations and claims set forth in Paragraph 31 of the Complaint and demands strict proof thereof.

32. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and thus denies the allegations and claims set forth in Paragraph 32 of the Complaint and demands strict proof thereof.

33. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 and thus denies the allegations and claims set forth in Paragraph 33 of the Complaint and demands strict proof thereof.

34. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and thus denies the allegations and claims set forth in Paragraph 34 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

35. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and thus denies the allegations and claims set forth in Paragraph 35 of the Complaint and demands strict proof thereof.

36. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and thus denies the allegations and claims set forth in Paragraph 36 of the Complaint and demands strict proof thereof.

37. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and thus denies the allegations and claims set forth in Paragraph 37 of the Complaint and demands strict proof thereof.

38. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and thus denies the allegations and claims set forth in Paragraph 38 of the Complaint and demands strict proof thereof.

39. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 and thus denies the allegations and claims set forth in Paragraph 39 of the Complaint and demands strict proof thereof.

40. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and thus denies the allegations and claims set forth in Paragraph 40 of the Complaint and demands strict proof thereof.

41. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and thus denies the allegations and claims set forth in Paragraph 41 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 – (305) 350-5300 – (305) 373-2294 FAX

Case No. 10-35086 CA (31)

42. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and thus denies the allegations and claims set forth in Paragraph 42 of the Complaint and demands strict proof thereof.

43. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and thus denies the allegations and claims set forth in Paragraph 43 of the Complaint and demands strict proof thereof.

44. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and thus denies the allegations and claims set forth in Paragraph 44 of the Complaint and demands strict proof thereof.

45. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and thus denies the allegations and claims set forth in Paragraph 45 of the Complaint and demands strict proof thereof.

46. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and thus denies the allegations and claims set forth in Paragraph 46 of the Complaint and demands strict proof thereof.

47. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 and thus denies the allegations and claims set forth in Paragraph 47 of the Complaint and demands strict proof thereof.

48. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and thus denies the allegations and claims set forth in Paragraph 48 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

49. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and thus denies the allegations and claims set forth in Paragraph 49 of the Complaint and demands strict proof thereof.

50. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and thus denies the allegations and claims set forth in Paragraph 50 of the Complaint and demands strict proof thereof.

51. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and thus denies the allegations and claims set forth in Paragraph 51 of the Complaint and demands strict proof thereof.

52. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and thus denies the allegations and claims set forth in Paragraph 52 of the Complaint and demands strict proof thereof.

53. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and thus denies the allegations and claims set forth in Paragraph 53 of the Complaint and demands strict proof thereof.

54. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 and thus denies the allegations and claims set forth in Paragraph 54 of the Complaint and demands strict proof thereof.

55. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 and thus denies the allegations and claims set forth in Paragraph 55 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

56. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 and thus denies the allegations and claims set forth in Paragraph 56 of the Complaint and demands strict proof thereof.

57. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 and thus denies the allegations and claims set forth in Paragraph 57 of the Complaint and demands strict proof thereof.

58. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 and thus denies the allegations and claims set forth in Paragraph 58 of the Complaint and demands strict proof thereof.

59. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and thus denies the allegations and claims set forth in Paragraph 59 of the Complaint and demands strict proof thereof.

60. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 and thus denies the allegations and claims set forth in Paragraph 60 of the Complaint and demands strict proof thereof.

61. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 and thus denies the allegations and claims set forth in Paragraph 61 of the Complaint and demands strict proof thereof.

62. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 and thus denies the allegations and claims set forth in Paragraph 62 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

63. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and thus denies the allegations and claims set forth in Paragraph 63 of the Complaint and demands strict proof thereof.

64. DETROIT DIESEL is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and thus denies the allegations and claims set forth in Paragraph 64 of the Complaint and demands strict proof thereof.

65. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 65 and demands strict proof thereof.

66. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 66 and demands strict proof thereof.

67. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 67 (including subsections a. (1) and b. (2)) and demands strict proof thereof.

68. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 68 and demands strict proof thereof.

## COUNT I. NEGLIGENCE

DETROIT DIESEL adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 68 of Plaintiffs' complaint.

69. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 69 and demands strict proof thereof.

70. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 70 and demands strict proof thereof.

71. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 71 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

72. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 72 and demands strict proof thereof.

73. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 73 and demands strict proof thereof.

74. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 74 and demands strict proof thereof.

75. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 75 and demands strict proof thereof.

76. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 76 and demands strict proof thereof.

    (a)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (a) and demands strict proof thereof.

    (b)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (b) and demands strict proof thereof.

    (c)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (c) and demands strict proof thereof.

    (d)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (d) and demands strict proof thereof.

    (e)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (e) and demands strict proof thereof.

    (f)    DETROIT DIESEL denies the claims and allegations contained in subparagraph (f) and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

(g)   DETROIT DIESEL denies the claims and allegations contained in subparagraph (g) and demands strict proof thereof.

## COUNT II: STRICT LIABILITY

DETROIT DIESEL adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 68 of Plaintiffs' complaint.

77. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 77 and demands strict proof thereof.

78. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 78 and demands strict proof thereof.

79. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 79 and demands strict proof thereof.

80. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 80 and demands strict proof thereof.

81. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 81 and demands strict proof thereof.

82. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 82 and demands strict proof thereof.

83. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 83 and demands strict proof thereof.

84. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 84 and demands strict proof thereof.

85. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 85 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

(a)     DETROIT DIESEL denies the claims and allegations contained in subparagraph (a) and demands strict proof thereof.

(b)     DETROIT DIESEL denies the claims and allegations contained in subparagraph (b) and demands strict proof thereof.

(c)     DETROIT DIESEL denies the claims and allegations contained in subparagraph (c) and demands strict proof thereof.

86. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 86 and demands strict proof thereof.

87. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 87 and demands strict proof thereof.

88. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 88 and demands strict proof thereof.

## COUNT III: LOSS OF CONSORTIUM – PATRICIA LYAUTEY

DETROIT DIESEL adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 88 of Plaintiffs' complaint.

89. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 89 and demands strict proof thereof.

## DAMAGES

DETROIT DIESEL adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 89 of Plaintiffs' complaint.

90. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 90 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

91. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 91 and demands strict proof thereof.

92. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 92 and demands strict proof thereof.

93. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 93 and demands strict proof thereof.

94. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 94 and demands strict proof thereof.

95. DETROIT DIESEL denies the allegations and claims set forth in Paragraph 95 and demands strict proof thereof.

## ANSWERING THE "WHEREFORE"
## PARAGRAPHS OF PLAINTIFFS' COMPLAINT

DETROIT DIESEL denies each and every allegation and part thereof or claim that otherwise is not specifically responded to in this Answer and Affirmative Defenses and demands strict proof thereof. DETROIT DIESEL further denies each and every allegation and claim for relief sought in the "Wherefore" clauses of Plaintiffs' Complaint. DETROIT DIESEL does, nonetheless, demand trial by jury.

## AFFIRMATIVE DEFENSES:

DETROIT DIESEL has not had a sufficient opportunity to complete its investigation and discovery of this matter. DETROIT DIESEL expressly reserves the right to amend and/or add additional defenses and affirmative defenses as discovery and investigation continues. DETROIT DIESEL relies upon the following defenses which may prove applicable after discovery or at trial:

- 14 -

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim or cause of action upon which relief can be granted against DETROIT DIESEL.

### SECOND AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred or are otherwise limited by operation of any applicable statutes of limitation and/or statutes of repose.

### THIRD AFFIRMATIVE DEFENSE

Venue in this county is improper, either because none of the Defendants reside or conduct business in this county, or because of *forum non conveniens*, or none of the operative events occurred in this county or state, or in the interest of justice or otherwise, the action should be transferred to another court.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff neither was exposed to nor used any product manufactured, sold or supplied by DETROIT DIESEL.

### FIFTH AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred in whole or in part by Plaintiff's voluntary assumption of a known risk of harm or a risk of harm which Plaintiff knew or should have known.

### SIXTH AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred in whole or in part by the contributory negligence of Plaintiffs or reduced by the comparative negligence of Plaintiff.

- 15 -

### SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff either used, or was exposed to, products manufactured or supplied by DETROIT DIESEL and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that Plaintiff was himself negligent generally and in the following particulars:

*In failing to use proper safety equipment, which was available to Plaintiff;*

*In failing to demand that proper safety equipment be supplied to Plaintiff;*

*In failing to read the instructions and/or warning(s) distributed by DETROIT DIESEL in connection with the sale or use of their products;*

*By using improper techniques and methods in the use and application of products for which DETROIT DIESEL may have legal responsibility; and*

*In otherwise failing to exercise due care and caution under the circumstances.*

### EIGHTH AFFIRMATIVE DEFENSE

If Plaintiff used, or was exposed to, any product for which DETROIT DIESEL may be legally responsible, which is specifically denied, the alleged injuries and/or damages of which the Plaintiff complains were caused by an unintended or improper use of such products for which DETROIT DIESEL is not liable or responsible. In other words, the subject unidentified product which allegedly forms the basis of this lawsuit was not dangerous when used in a reasonable and foreseeable manner and for its intended purpose.

### NINTH AFFIRMATIVE DEFENSE

If it is shown that Plaintiff used, or was exposed to, any product sold or supplied by DETROIT DIESEL, and if it is shown that such products caused or contributed to the injuries and/or damages as alleged by Plaintiff, all of which are specifically denied, then it is averred that

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

the products sold or supplied by DETROIT DIESEL were abused, misused, or otherwise substantially changed or altered by persons or parties other than DETROIT DIESEL and, therefore, DETROIT DIESEL is not liable.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries and/or damages were caused by the intervening or superseding acts or negligence of persons, parties, or entities over whom DETROIT DIESEL had no control or responsibility, and for whose actions DETROIT DIESEL is not liable.

## ELEVENTH AFFIRMATIVE DEFENSE

If the Plaintiff sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages were proximately caused by the acts and/or omissions of the Plaintiff's Non-DETROIT DIESEL employers with respect to the maintenance of a healthy and safe work site and environment, which were within such employers' exclusive control and possession.

## TWELFTH AFFIRMATIVE DEFENSE

At all times relevant hereto, the Plaintiff was subject to the provisions of the applicable Workers' Compensation Act, the Longshoremens' and Harbor Workers' Compensation Act and the Workers' Compensation laws of any other state or jurisdiction where Plaintiff may have worked, with respect to immunity or offset for payments received by Plaintiff. The Workers' Compensation and Longshhoremens' and Harbor Workers' Compensation Acts provide for exclusive remedies and which, therefore, bars this Civil Action.

## THIRTEENTH AFFIRMATIVE DEFENSE

If it is shown that the Plaintiff used, or was exposed to, any products sold or supplied by DETROIT DIESEL, and if it is shown that such products caused or contributed to the injuries

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

and/or damages as alleged by the Plaintiff, all of which are denied, then it is averred that DETROIT DIESEL neither knew at the time, nor reasonably should have known in light of the available medical, scientific, or other information, that any product of the type or nature referred to in Plaintiffs' Complaint which allegedly was manufactured, sold, or supplied by DETROIT DIESEL was hazardous or constituted a reasonably foreseeable risk of harm to Plaintiff in the normal and expected use of such products.

### FOURTEENTH AFFIRMATIVE DEFENSE

The alleged injuries and/or damages of which Plaintiff complains arose in whole or in part from one or more other causes or circumstances, including but not limited to, smoking, and not as a result of any exposure to any products manufactured, sold or supplied by DETROIT DIESEL.

### FIFTEENTH AFFIRMATIVE DEFENSE

If it is shown that the Plaintiff used any product manufactured, sold or supplied by DETROIT DIESEL, which is specifically denied, and if it is shown that such product was supplied to, by or on behalf of the United States Government, then DETROIT DIESEL raises any immunity from suit or liability conferred upon the United States Government and/or DETROIT DIESEL, which may arise under the circumstances.

### SIXTEENTH AFFIRMATIVE DEFENSE

DETROIT DIESEL specifically denies that the Plaintiffs are entitled to recover exemplary or punitive damages. In this regard, DETROIT DIESEL further avers that such damages are unconstitutional in that claims for such damages are barred by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the applicable provisions of the Constitution of the State of Florida. As a further affirmative defense, the claim of punitive

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

damages, if any, is premature because the pleading requirements established under applicable Florida Statutes are not satisfied by a showing of evidence on the record or proffered by Plaintiffs, which would provide a reasonable basis for recovery of such damages. Furthermore, Plaintiffs are barred from recovering punitive damages by the Asbestos Silica Compensation Fairness Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to provide DETROIT DIESEL with timely notice of their alleged claims which now acts to bar this Civil Action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

If the Plaintiffs' sustained the injuries and/or damages as alleged, then DETROIT DIESEL alleges that such injuries and damages were due to the negligence of Plaintiffs' fellow servants engaged in the course of common employment with Plaintiff and that such negligence of the fellow servants bars this Civil Action.

## NINETEENTH AFFIRMATIVE DEFENSE

This Civil Action is barred for Plaintiffs failure to join indispensable parties.

## TWENTIETH AFFIRMATIVE DEFENSE

At the time DETROIT DIESEL'S products of which Plaintiffs' Complaint left DETROIT DIESEL'S control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, DETROIT DIESEL'S products were not defective in design or manufacture.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

## TWENTY-FIRST AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiff's overly broad and vague allegations directed against all Defendants as a group.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the person and property of DETROIT DIESEL, and therefore, this case should be dismissed as to DETROIT DIESEL. There is no showing of any connection between Plaintiffs' alleged injury and DETROIT DIESEL'S activities in the State of Florida, to support an assertion of *in personam* jurisdiction over DETROIT DIESEL, nor is there any other basis for this Court to exercise jurisdiction over DETROIT DIESEL or its property. In personam jurisdiction over DETROIT DIESEL is lacking because Plaintiffs failed to allege any connection or nexus between their alleged injuries and the activities of DETROIT DIESEL in Florida.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred by the doctrines of res judicata and/or collateral estoppel.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

This action is barred because at all material times DETROIT DIESEL was acting in compliance with governmental or private contract specifications. Moreover, the government's knowledge of the potential dangers related to the use of those products was greater than the knowledge of DETROIT DIESEL and DETROIT DIESEL is immune from any liability for any damages suffered by the Plaintiff as a consequence of any exposure to asbestos contained in any such products.

- 20 -

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Exposure, if any, of the Plaintiff to asbestos products allegedly manufactured or sold by DETROIT DIESEL was so minimal as to be insufficient to establish to a reasonable degree of certainty or probability that the injuries and damages complained of resulted from any exposure to, or defects from, products allegedly manufactured, sold or distributed by DETROIT DIESEL.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories which did not exist prior to the time of the occurrence giving rise to Plaintiffs' claims against DETROIT DIESEL in that such statutes are inapplicable to this action, and the application of such legal theories to this action would be unconstitutionally retroactive.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' injuries, if any, were caused in whole or in part, by the acts or omissions of persons other than DETROIT DIESEL, whether individual, corporate, associate, or otherwise, whether named or unnamed in the Complaint, and for whose conduct DETROIT DIESEL is not liable. DETROIT DIESEL is not liabile for damages proximately caused by non-parties, pursuant to *Fabre v. Marine*, 623 So.2d 1182 (Fla. 1993).

Apportionment of damages, if any, should be accomplished in accordance with the provisions of Fla. Stat. § 768.81(3), and the Court should enter judgment against each party (whether a party to this litigation or not) on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability. In particular, the jury should consider the negligence, if any, of the following:

Any and all non- DETROIT DIESEL employers of GALE LYAUTEY,

A.P Green Refactories

A.W. Chesterton Company

Allied Signal, Inc.

Alstom Power, Inc.

American Honda Motor' Company, Inc.

American Optical Corporation

American Optical Corp.

American Standard Inc.,

American Suzuki Motor Corporation, Inc

Armstrong World Industries, Inc

Arrow Automotive Industries, Inc.

Arvinmeritor, Inc.

Asbestos Claims Management Corp;

Asea Brown Boveri Inc. a/k/a ABB Inc. f/k/a BBC Brown Boveri, Inc.

Asten, Inc.

Auto Machine

Babcock & Wilcox

Bennett Auto Supply

Bird, Inc.

Bondex International, Inc.( a subsidiary of Bondex Company)

Borg Warner Corporation

Borg-Warner Inc.
Bridgestone/Firestone North American Tire, LLC
Briggs-Stratton Corp.
CBS Corporation
C.E. Thurston & Son, Inc.
Carlisle Companies, Inc.
Caterpillar, Inc.
Capco Pipe Company
Carver Pumps, Inc.
Carlisle Companies, Inc, through its subsidiaries Motion Control Industries
Certainteed Corporation f/k/a Certainteed Products Corporation, individually and as successor in interest to Bestwell Gypsum Company
Chrysler LLC
Cleaver Brooks Company
Congoleum Corporation
Consumer Automotive Part, Inc
Conwed Corporation
Crane Company
Crown, Cork & Seal Company
Cummins, Inc.
Dana Companies

- 22 -

Case No. 10-35086 CA (31)

Dana Corporation d/b/a Dana Racine Corporation f/k/a Spicer Manufacturing Corp
Danaher Corporation, individually, and through its subsidiaries DH Holding and
Hennessy Industries;
Discount Auto Parts, Inc.
Dowman Products, Inc.
Deere & Co.., Inc
Deere & Company
Dresser, Inc,, through its division/business unit Waukesha Engine
Durabla Manufacturing Company
Eaton Electrical, Inc.
Eagle Pitcher Industries
Fairbanks Morse Pumps Corporation
Federal Mogul Corporation d/b/a/ Wagner brake products
Fern Auto Parts
Ferraro Corporation
Flexitallic, Inc.
Flinkote Company
Flinkote Corporation
Flowserve Corporation
Foster Wheeler Energy Corporation
Foseco, Inc.
Garlock Sealing Technologies, LLC Ma Garlock, Inc. f/k/a Garlock Parking Co.
Gardner Denver, Inc.
Garnder Denver Nash, LLC
GAF Corporation
General Electric Company
General Motors Corporation
General Refractories Company
Genuine Parts company
Georgia-Pacific Corporation f/k/a Georgia hardwood Lumber Co.. f / k / a Georgia-
Pacific Plywood and Lumber Co., f / k / a Georgia-Pacific Plywood Co.
Green, Tweed & Co., Inc.
Goodyear Tire and Rubber Company
Gould Pumps, Inc.
Guard-Line, Inc.
Hanson Permanente Cemente f/k/a Cement Company
H.B. Fuller Company
Harbison-Walker Refractories Company
Hollingsworth & Vose Company, Inc.
Honeywell International, Inc. flkla Allied Signal, Inc., individually and as successor in
interest to Allied Corporation, as successor in interest to the Bendix Corporation
International Truck and Engine Corporation
Independent Parts Warehouse, Inc.
Industrial Holdings Corporation f/k/a The Carborundum Company
Ingersoll-Ran Company
IMO Industries, Inc.

- 23 -

John Crane, Inc.
Johns Manville
Johns-Manville Corporation
KCG, Inc.
Kaiser Aluminum
Kaiser Gypsum Company
Keene Corporation
Kennon Bearings
Kelly-Moore Paint, Co.
Kelsey-Hayes
Kohler, Inc
Kone, Inc.
Lipe Rollway;
M&H Automotive, Inc
Mack Trucks, Inc.
Maremont Corporation
Mazda Motor of Arxxerica, Inc
McCord Corporation, individually and as successor in interest to A.E. Clevite, Inc. and
J.P. Industries, Inc.
Metropolitan Life Insurance Company
Mitsubishi Motor's North America, Inc
Milano Motors
Miller Machine
Moffet Bearings
Motion Control Industries
Morton International, Inc
NAPA Auto Parts, LLC.
National Gypsum Company;
National Service Industries, Inc.
Navistar Int'l Transportation Corp. f/k/a International Harvester
Nissan North America, Inc.
Owens Bottle Machine Corp. f/k/a Ownes Bottle Co. f/k/a Owens-Illinois Glass Co.
Oshkosh Truck Corp.
Owens Corning Corporation
Owens-Illinois, Inc.. f/k/a Owens Bottle Machine Corp. f/kla  Owens Bottle Co. f/k/a
Owens-Illinois Glass Co..
Oshkosh Truck Corp.
Paccar, Inc., individually and through it divisions Kenworth Trucks and Peterbilt Motors
Pfizer, inc.
Pittsburgh Corning Corporation;
Premix Marbletite Mfg. Co
Proko Industries, Inc.
Quigley Co., Inc.
Riley-Stoker
R&M Manufacturing Company
Rapid-American Corporation f/kla Glen Alden Corporation

Republic Powdered Metals, Inc.
Rechtien International Trucks, Inc.
SEPCO Corporation
Shook and Fletcher
Standard Motor Products d/b/a EIS Brake Parts
Steel Grip, Inc., f/k/a Industrial Gloves Co. f/k/a Steel Chip Safety Apparel Co.
Stradley Auto Parts
TH Agriculture & Nurtrition, LLC
The Anchor Packing Company, Inc.; Toyota Motor North America, Inc.
The Parts Source d/b/a Ace Auto Parts, a Florida Corporation
U.S.. Mineral
U.S. Gypsum Company
Unarco Inc.
Universal Refractories, Inc.
Union Carbide Chemicals & Plastics f/k/a Union Carbide and Carbon Co. f/k/a Union Carbide Corp.
Uniroyal Holdings, Inc.
Volkswagen of America Inc.
W.R. Grace & Company
Weil-Mclain Company, Inc.
Wheeling Brake Block Manufacturing Co. Inc
Worthington Corporation
Zurn Industries, Inc.
TRW Automotive
Federal-Mogul Corporation d/b/a Wagner Brake Products
Standard Motor Products d/b/a EIS Brake Parts; and/or
The Parts Source d/b/a Ace Auto Parts, a Florida Corporation 122. American Suzuki Motor Corporation Inc.
Bird Inc.
Bondex International, Inc. (a subsidiary of Bondex Company) 125. Consumer Automotive Parts, Inc.
Crane Company
Discount Auto Parts
Genuine Parts Company
Hanson Cemente f/k/a Kaiser Cement Company
Hennessy Industries
Motion Control Industries, Inc.., as predecessor in interest to Carlisle Companies, Inc.
Republic Powdered Metals, Inc., (RPM Inc)
TH Agriculture & Nutrition, LLC., (individually and as a successor in interest to Thompson-Hayward Chemical Co..)
Lorillard Tobacco Company
International Truck and Engine Corporation
Rockrnore Warehouse
Fern Auto Parts
Napa Auto Parks
Moffet Bearings

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Kennon Bearings
Millen Machine
Auto Machine
Asca Brown Boveri Inc. a/k/a ABB Inc. f/k/a BBC Brown Boveri, Inc.
Victor Clutch Co Ltd.
Franklin Equipment Co. a/k/a Franklin TreeFarmer.
Independent Parts Warehouse
I.P.W. of Orlando, Inc.
Tenneco, Inca f/k/a Tenneco Automotive, Inc. by and through its predecessor Walker
Manufacturing Company
West Dixie Auto Parts, Inc.
Worthington Corporation
Chrysler, LLC
Georgia Pacific
Goulds Pumps
Harley Murray
Toyota Motor Sales, U.S.A, Inc.
Zurn Industries, Inc.
United States Navy
Republic Steel
US Steel
Monsato
Refinery, Texas City, Texas
Papermill, Savannah, GA
Papermill, Jacksonville, FL
State Hosptial, Kalamazoo
Turbodyne
Ingersoll Rand

All named parties to this action
Any entities that were Defendants to this action, but have been dismissed
All current Defendants to this action
Any current Defendant to this action that will subsequently be dismissed

Any and all manufacturers or distributors of products Plaintiff claims exposed Plaintiff
to asbestos that were identified in deposition or discovery.

Any and all manufacturers or distributors of products at Plaintiff's job sites that are
identified in deposition or discovery.

Any and all manufacturers of products that are identified in deposition or discovery.

Any and all subsidiaries and/or successors in interest to the above named entities, or any
entity named herein.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Any manufacturer or distributor of products Plaintiff claims exposed him to asbestos that were previously or subsequently dismissed from this action.

Any manufacturer or distributor of products Plaintiff claims exposed him to asbestos named in this action.

Any manufacturer, distributor or supplier of products Plaintiff claims exposed him to asbestos during his home construction and/or remodel work at various residential locations in and around Palatka, Florida.

Any and all of Gale Lyautey's various employers that may have exposed him to asbestos.

Any and all manufacturers or distributors of products to Gale Lyautey various employers and job sites.

Any and all manufacturers or distributors of asbestos containing products to Gale Lyautey various schools he attended that will be identified in deposition or discovery.

Any and all persons or entities that owned or had a possessory interest in the locations where Plaintiff's claims may have exposed him to asbestos.

Any and all entities identified in Gale Lyautey's social security printout.

Any and all subsidiaries and/or successors in interest to the above named entities, or any entity named herein.

Any and all subsidiaries and/or successors in interest to the above named entities, entities named herein or to be identified in deposition or discovery.

Any and all entities identified in Gale Lyautey's Exposure Sheets and Sworn Information form.

DETROIT DIESEL adopts and incorporates *Fabre* lists of co-defendants filed in this action or to be filed in this action.

DETROIT DIESEL reserves the right to supplement or add to this list in the future as discovery progresses and additional entities are identified during discovery.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff(s) failed to mitigate damages.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The subject unidentified product which allegedly forms the basis of this lawsuit conformed to the state of the medical and scientific art in the automotive industry at the time of its manufacture and complied with all Federal Motor Vehicle Safety Standards applicable to it and all federal and state regulations, specifications, laws and motor vehicle safety standards in what were the industry customs at the time of its manufacture.

## THIRTIETH AFFIRMATIVE DEFENSE

If any defect existed in the design or manufacture of the subject unidentified product or its component parts which allegedly forms the basis of this lawsuit, all of which is specifically denied, then such product or its component parts were not in the same condition as when they left the custody or control of DETROIT DIESEL, substantial changes or alterations having been made thereto, which changes or alterations were the proximate cause of any defective condition or conditions, thus barring or reducing proportionately all claims for damages against DETROIT DIESEL.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

The design of the subject unidentified product which allegedly forms the basis of this lawsuit was reasonably safe as measured by the risk utility analysis set forth in the Restatement (Third) of Torts.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Pursuant to Fla. Stat. § § 46.015(2), 768.041(2), and 768.31(5), DETROIT DIESEL is entitled to a set- off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff's alleged damages. DETROIT DIESEL also asserts its right to collateral-source set-off under § 768.76.

- 28 -

### THIRTY-THIRD AFFIRMATIVE DEFENSE

DETROIT DIESEL has been prejudiced in its Defense to the extent the evidence in this case has been destroyed or altered by others.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs have waived their claims, in whole or in part.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by virtue of a release.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by virtue of Plaintiff's unclean hands.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their fraudulent conduct.

### FORTIETH AFFIRMATIVE DEFENSE

As a defense to their claim for damages, Plaintiffs' claims for recovery based upon diseases, which are at present, undiagnosed are not compensable under Florida law.

### FORTY-FIRST AFFIRMATIVE DEFENSE

As a defense to their claim for damages, Plaintiffs' claims for psychological and/or emotional distress are not recoverable as Plaintiffs have not sustained any objectively discernable physical injury as required by Florida law and/or such claims are not compensable under Florida law.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## FORTY-SECOND AFFIRMATIVE DEFENSE

DETROIT DIESEL is relieved of liability because of other, intervening and superseding causes of loss, injury, or damage as alleged by Plaintiffs, e.g., the failure of labor unions to provide training and proper protective equipment to assure a safe working environment, or to warn workers of possible health hazards associated with exposure to asbestos, or the failure of other persons or entities to prevent or warn of injury, having the immediate opportunity to do so.

## FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claim for breach of express warranty and/or implied warranty, if any, is barred because of lack of privity with DETROIT DIESEL.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred for lack of service of process, and/or insufficiency of process.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories which did not exist prior to the dates on which Plaintiff used DETROIT DIESEL'S products, in that such statutes are inapplicable to this action, and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

At all times relevant hereto, DETROIT DIESEL was in full compliance with the standards and/or specifications issued by the United States Government with respect to asbestos-containing products. These standards and/or specifications required the use of asbestos.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

DETROIT DIESEL asserts that Plaintiffs' claims are or may be barred or otherwise limited or affected by the application of provisions of the law or statutes of states other than the State of Florida where Plaintiffs' alleged exposure may have occurred.

## FORTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against DETROIT DIESEL should be denied by reason of the sophisticated commercial user/learned intermediary doctrines as Plaintiffs' employers were so experienced and sophisticated with regards to asbestos-containing products that no duty to warn existed. The knowledge of employers regarding potential hazards of asbestos was equal to or superior to that of DETROIT DIESEL, and therefore, DETROIT DIESEL had no duty to warn Plaintiff as an employee of sophisticated commercial purchasers/users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

## FIFTIETH AFFIRMATIVE DEFENSE

If Plaintiff has filed lawsuits in other jurisdictions against some or all of the same Defendants, Plaintiff is precluded from seeking double recovery.

## FIFTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff has released, settled, entered into an accord or satisfaction or otherwise compromised Plaintiffs' claims herein and, accordingly, those claims are barred by operation of law. Alternatively, if Plaintiff accepts in the future compensation in partial settlement of those claims, DETROIT DIESEL is entitled to a set-off.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## FIFTY-SECOND AFFIRMATIVE DEFENSE

DETROIT DIESEL is entitled to set-off, should any damages be awarded against it, in the amount of damages or settlement amounts recovered by Plaintiff from other parties or entities. DETROIT DIESEL is also entitled to have any damages that may be awarded to Plaintiff reduced by the value of any collateral source.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's allegations are barred and/or barred by Florida's Asbestos and silica compensation Act, 2005, ALS; 274; 2005 Fla Laws ch 274; 2005 HB 1019.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs assert that DETROIT DIESEL failed to give adequate warnings about its products, such claims are preempted by federal regulations, including those promulgated by the Occupational Safety and Health Administration.

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

DETROIT DIESEL incorporates and asserts all affirmative defenses pursuant to the 2005 Asbestos and Silica Compensation Fairness Act.

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any should be reduced by the amount of the Plaintiff's reduced life expectancy, from sources and causes unrelated to Plaintiff's alleged exposure, if any to DETROIT DIESEL.

## FIFTY-SEVENTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that the number of different agents to which Plaintiff was exposed in and out of the workplace and the lack of definitive evidence as to the amount of

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

actual exposure to each agent makes it impossible to determine, to a requisite degree of legal certainty, the alleged causal connection, if any, between Plaintiffs' injuries and said agents.

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that to the extent that Plaintiffs are relying upon a theory of market share liability to support Plaintiffs' strict liability claim, this count should be dismissed because the theory of market share liability does not apply.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

DETROIT DIESEL pleads the negligence and conduct of Plaintiffs' employers as a partial or complete bar to all claims asserted in the Complaint.

## SIXTIETH AFFIRMATIVE DEFENSE

If Plaintiff or any member of his household used tobacco products, this use was a failure to exercise ordinary care for Plaintiffs' own safety and was the sole or primary cause of his injuries. The negligence of Plaintiff or other members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

## SIXTY-FIRST AFFIRMATIVE DEFENSE

DETROIT DIESEL asserts the military contractor's defense. DETROIT DIESEL contends that DETROIT DIESEL'S asbestos-containing products, if any, were or may have been supplied to the United States Government or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the Untied States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff associated with the use of such products was equal

to or superior to that of DETROIT DIESEL and, but reason thereof, DETROIT DIESEL is not liable to Plaintiffs under any theory of law asserted in this civil action.

## SIXTY-SECOND AFFIRMATIVE DEFENSE

DETROIT DIESEL is not a joint torfeasor with any other Defendant herein, and, accordingly, DETROIT DIESEL may not be held jointly and severally liable with other Defendants.  Alternatively, DETROIT DIESEL'S joint and several liability, if any, is limited by the provisions of Florida Statute § 768.81.

## SIXTY-THIRD AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that under the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and are, therefore, precluded from alleging the material facts necessary to state a cause of action against DETROIT DIESEL.

## SIXTY-FOURTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends any exposure of Plaintiff to DETROIT DIESEL'S products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff's injuries.

## SIXTY-FIFTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that there is no causal connection between DETROIT DIESEL, or any product sold by DETROIT DIESEL and any injury sustained by Plaintiff such causal connection being remote, indefinite, and speculative, and as a result thereof, the Complaint should be dismissed as to DETROIT DIESEL.

Case No. 10-35086 CA (31)

### SIXTY-SIXTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that if Plaintiff suffered injuries, which DETROIT DIESEL denies, said injuries were not caused or contributed by his exposure to asbestos-containing products sold or distributed by DETROIT DIESEL, rather by his exposure to dangerous or hazardous chemicals, fumes, products, or dust that were present at Plaintiff's workplace or elsewhere.

### SIXTY-SEVENTH AFFIRMATIVE DEFENSE

DETROIT DIESEL contends that Florida law has not recognized a duty to "remove and recall" products from the marketplace, post-sale.

### SIXTY-EIGHTH AFFIRMATIVE DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," Fla. Stat. § 774.206(2), bars Plaintiff from recovering damages for fear or risk of cancer.

### SIXTY-NINTH AFFIRMATIVE DEFENSE

Any damages claimed by Plaintiff that have not accrued are purely speculative, uncertain and contingent and therefore can not be recovered in this action.

### SEVENTIETH AFFIRMATIVE DEFENSE

DETROIT DIESEL expressly adopts and incorporates by reference any and all affirmative defenses of each and every Co-Defendant which is not set forth above.

### RESERVATION OF DEFENSES

DETROIT DIESEL expressly reserves the right to amend and/or add additional defenses and affirmative defenses as discovery and investigation continues. Further, depending on the Court's rulings concerning venue or otherwise, DETROIT DIESEL reserves the right to assert other affirmative defenses based upon the resulting jurisdiction and venue.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via lexis-nexis file and serve to all counsel of record this 6th day of August, 2010.

By: _____

HENRY SALAS, ESQ.
FBN: 0815268
CLARKE S. STURGE, ESQ.
FBN: 0584541

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## DEMAND FOR JURY TRIAL

DETROIT DIESEL hereby demands trial by jury on all issues so triable.

**WHEREFORE**, Defendant, DETROIT DIESEL CORPORATION, hereby requests this Honorable Court enter judgment against Plaintiff and in DETROIT DIESEL'S favor as to all issues, counts and matters set forth in the Plaintiffs' Complaint, and award to DETROIT DIESEL its taxable costs and such other relief as it deems just and proper under the circumstances.

Respectfully Submitted,

COLE, SCOTT & KISSANE, P. A.
Dadeland Centre II, 14th Floor
9150 So. Dadeland Boulevard
Miami, Florida 33156
Tel: (305) 350-5300
Fax: (305) 373-2294

By: _____

HENRY SALAS, ESQ.
FBN: 0815268
CLARKE S. STURGE, ESQ.
FBN: 0584541



LEXIS' FILE & SERVE
32540919
E-SERVICE
Aug 6 2010
4:27PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

ASBESTOS LITIGATION

CASE NO. 10-35086 CA (31)

GALE LYAUTEY and
PATRICIA LYAUTEY, his wife, et al.,

        Plaintiffs,

vs.

ALFA LAVAL, INC., et al.,

        Defendants.

_____/

## FORD MOTOR COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant, FORD MOTOR COMPANY (hereinafter "FORD"), by and through undersigned counsel files its Answer and Affirmative Defenses to Plaintiffs' Complaint and Demand for Jury Trial ("Complaint") as follows:

### ANSWER

Responding to the individually enumerated Paragraphs of Plaintiffs' Complaint, FORD states as follows:

1. FORD admits only that Plaintiffs' Complaint seeks damages in excess of $15,000.00 but denies that Plaintiff is entitled to any damages from FORD.

2. FORD admits only that the Plaintiffs are GALE LYAUTEY and PATRICIA LYAUTEY, however denies the remaining allegations and claims set forth in Paragraph 2 and demands strict proof thereof.

3. FORD denies the allegations and claims set forth in Paragraph 3 and demands strict proof thereof.

4.  FORD denies the allegations and claims set forth in Paragraph 4 and demands strict proof thereof.

5.  FORD admits only that Plaintiffs attempt to define "Products".

6.  FORD denies the allegations and claims set forth in Paragraph 6 and demands strict proof thereof.

7.  FORD denies the allegations and claims set forth in Paragraph 7 and demands strict proof thereof.

8.  FORD denies the allegations and claims set forth in Paragraph 8 and demands strict proof thereof.

9.  FORD denies the allegations and claims set forth in Paragraph 9 and demands strict proof thereof.

10.  FORD denies the allegations and claims set forth in Paragraph 10 and demands strict proof thereof.

## DEFENDANTS

11. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and thus denies the allegations and claims set forth in Paragraph 11 of the Complaint and demands strict proof thereof.

12. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and thus denies the allegations and claims set forth in Paragraph 12 of the Complaint and demands strict proof thereof.

13. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and thus denies the allegations and claims set forth in Paragraph 13 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

14. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and thus denies the allegations and claims set forth in Paragraph 14 of the Complaint and demands strict proof thereof.

15. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and thus denies the allegations and claims set forth in Paragraph 15 of the Complaint and demands strict proof thereof.

16. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and thus denies the allegations and claims set forth in Paragraph 16 of the Complaint and demands strict proof thereof.

17. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and thus denies the allegations and claims set forth in Paragraph 17 of the Complaint and demands strict proof thereof.

18. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and thus denies the allegations and claims set forth in Paragraph 18 of the Complaint and demands strict proof thereof.

19. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and thus denies the allegations and claims set forth in Paragraph 19 of the Complaint and demands strict proof thereof.

20. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and thus denies the allegations and claims set forth in Paragraph 20 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

21. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and thus denies the allegations and claims set forth in Paragraph 21 of the Complaint and demands strict proof thereof.

22. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and thus denies the allegations and claims set forth in Paragraph 22 of the Complaint and demands strict proof thereof.

23. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and thus denies the allegations and claims set forth in Paragraph 23 of the Complaint and demands strict proof thereof.

24. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and thus denies the allegations and claims set forth in Paragraph 24 of the Complaint and demands strict proof thereof.

25. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and thus denies the allegations and claims set forth in Paragraph 25 of the Complaint and demands strict proof thereof.

26. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and thus denies the allegations and claims set forth in Paragraph 26 of the Complaint and demands strict proof thereof.

27. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 and thus denies the allegations and claims set forth in Paragraph 27 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

28. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 and thus denies the allegations and claims set forth in Paragraph 28 of the Complaint and demands strict proof thereof.

29. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 and thus denies the allegations and claims set forth in Paragraph 29 of the Complaint and demands strict proof thereof.

30. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 and thus denies the allegations and claims set forth in Paragraph 30 of the Complaint and demands strict proof thereof.

31. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and thus denies the allegations and claims set forth in Paragraph 31 of the Complaint and demands strict proof thereof.

32. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and thus denies the allegations and claims set forth in Paragraph 32 of the Complaint and demands strict proof thereof.

33. FORD admits only that it is a Delaware Corporation with its principal place of business in Michigan. Ford denies all the remaining allegations and claims set forth Paragraph 33 and demands strict proof thereof.

34. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and thus denies the allegations and claims set forth in Paragraph 34 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

35. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and thus denies the allegations and claims set forth in Paragraph 35 of the Complaint and demands strict proof thereof.

36. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and thus denies the allegations and claims set forth in Paragraph 36 of the Complaint and demands strict proof thereof.

37. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and thus denies the allegations and claims set forth in Paragraph 37 of the Complaint and demands strict proof thereof.

38. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and thus denies the allegations and claims set forth in Paragraph 38 of the Complaint and demands strict proof thereof.

39. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 and thus denies the allegations and claims set forth in Paragraph 39 of the Complaint and demands strict proof thereof.

40. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and thus denies the allegations and claims set forth in Paragraph 40 of the Complaint and demands strict proof thereof.

41. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and thus denies the allegations and claims set forth in Paragraph 41 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

42. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and thus denies the allegations and claims set forth in Paragraph 42 of the Complaint and demands strict proof thereof.

43. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and thus denies the allegations and claims set forth in Paragraph 43 of the Complaint and demands strict proof thereof.

44. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and thus denies the allegations and claims set forth in Paragraph 44 of the Complaint and demands strict proof thereof.

45. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and thus denies the allegations and claims set forth in Paragraph 45 of the Complaint and demands strict proof thereof.

46. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and thus denies the allegations and claims set forth in Paragraph 46 of the Complaint and demands strict proof thereof.

47. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 and thus denies the allegations and claims set forth in Paragraph 47 of the Complaint and demands strict proof thereof.

48. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and thus denies the allegations and claims set forth in Paragraph 48 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

49. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and thus denies the allegations and claims set forth in Paragraph 49 of the Complaint and demands strict proof thereof.

50. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and thus denies the allegations and claims set forth in Paragraph 50 of the Complaint and demands strict proof thereof.

51. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and thus denies the allegations and claims set forth in Paragraph 51 of the Complaint and demands strict proof thereof.

52. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and thus denies the allegations and claims set forth in Paragraph 52 of the Complaint and demands strict proof thereof.

53. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and thus denies the allegations and claims set forth in Paragraph 53 of the Complaint and demands strict proof thereof.

54. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 and thus denies the allegations and claims set forth in Paragraph 54 of the Complaint and demands strict proof thereof.

55. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 and thus denies the allegations and claims set forth in Paragraph 55 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

56. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 and thus denies the allegations and claims set forth in Paragraph 56 of the Complaint and demands strict proof thereof.

57. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 and thus denies the allegations and claims set forth in Paragraph 57 of the Complaint and demands strict proof thereof.

58. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 and thus denies the allegations and claims set forth in Paragraph 58 of the Complaint and demands strict proof thereof.

59. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and thus denies the allegations and claims set forth in Paragraph 59 of the Complaint and demands strict proof thereof.

60. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 and thus denies the allegations and claims set forth in Paragraph 60 of the Complaint and demands strict proof thereof.

61. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 and thus denies the allegations and claims set forth in Paragraph 61 of the Complaint and demands strict proof thereof.

62. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 and thus denies the allegations and claims set forth in Paragraph 62 of the Complaint and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

63. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and thus denies the allegations and claims set forth in Paragraph 63 of the Complaint and demands strict proof thereof.

64. FORD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and thus denies the allegations and claims set forth in Paragraph 64 of the Complaint and demands strict proof thereof.

65. FORD denies the allegations and claims set forth in Paragraph 65 and demands strict proof thereof.

66. FORD denies the allegations and claims set forth in Paragraph 66 and demands strict proof thereof.

67. FORD denies the allegations and claims set forth in Paragraph 67 (including subsections a. (1) and b. (2)) and demands strict proof thereof.

68. FORD denies the allegations and claims set forth in Paragraph 68 and demands strict proof thereof.

## COUNT I. NEGLIGENCE

FORD adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 68 of Plaintiffs' complaint.

69. FORD denies the allegations and claims set forth in Paragraph 69 and demands strict proof thereof.

70. FORD denies the allegations and claims set forth in Paragraph 70 and demands strict proof thereof.

71. FORD denies the allegations and claims set forth in Paragraph 71 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

72. FORD denies the allegations and claims set forth in Paragraph 72 and demands strict proof thereof.

73. FORD denies the allegations and claims set forth in Paragraph 73 and demands strict proof thereof.

74. FORD denies the allegations and claims set forth in Paragraph 74 and demands strict proof thereof.

75. FORD denies the allegations and claims set forth in Paragraph 75 and demands strict proof thereof.

76. FORD denies the allegations and claims set forth in Paragraph 76 and demands strict proof thereof.

   (a)   FORD denies the claims and allegations contained in subparagraph (a) and demands strict proof thereof.

   (b)   FORD denies the claims and allegations contained in subparagraph (b) and demands strict proof thereof.

   (c)   FORD denies the claims and allegations contained in subparagraph (c) and demands strict proof thereof.

   (d)   FORD denies the claims and allegations contained in subparagraph (d) and demands strict proof thereof.

   (e)   FORD denies the claims and allegations contained in subparagraph (e) and demands strict proof thereof.

   (f)   FORD denies the claims and allegations contained in subparagraph (f) and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

(g)    FORD denies the claims and allegations contained in subparagraph (g) and demands strict proof thereof.

## COUNT II: STRICT LIABILITY

FORD adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 68 of Plaintiffs' complaint.

77. FORD denies the allegations and claims set forth in Paragraph 77 and demands strict proof thereof.

78. FORD denies the allegations and claims set forth in Paragraph 78 and demands strict proof thereof.

79. FORD denies the allegations and claims set forth in Paragraph 79 and demands strict proof thereof.

80. FORD denies the allegations and claims set forth in Paragraph 80 and demands strict proof thereof.

81. FORD denies the allegations and claims set forth in Paragraph 81 and demands strict proof thereof.

82. FORD denies the allegations and claims set forth in Paragraph 82 and demands strict proof thereof.

83. FORD denies the allegations and claims set forth in Paragraph 83 and demands strict proof thereof.

84. FORD denies the allegations and claims set forth in Paragraph 84 and demands strict proof thereof.

85. FORD denies the allegations and claims set forth in Paragraph 85 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

(a)     FORD denies the claims and allegations contained in subparagraph (a) and demands strict proof thereof.

(b)     FORD denies the claims and allegations contained in subparagraph (b) and demands strict proof thereof.

(c)     FORD denies the claims and allegations contained in subparagraph (c) and demands strict proof thereof.

86. FORD denies the allegations and claims set forth in Paragraph 86 and demands strict proof thereof.

87. FORD denies the allegations and claims set forth in Paragraph 87 and demands strict proof thereof.

88. FORD denies the allegations and claims set forth in Paragraph 88 and demands strict proof thereof.

### COUNT III: LOSS OF CONSORTIUM – PATRICIA LYAUTEY

FORD adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 88 of Plaintiffs' complaint.

89. FORD denies the allegations and claims set forth in Paragraph 89 and demands strict proof thereof.

### DAMAGES

FORD adopts realleges and incorporates its responses to the allegations in paragraphs 1 through 89 of Plaintiffs' complaint.

90. FORD denies the allegations and claims set forth in Paragraph 90 and demands strict proof thereof.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

91. FORD denies the allegations and claims set forth in Paragraph 91 and demands strict proof thereof.

92. FORD denies the allegations and claims set forth in Paragraph 92 and demands strict proof thereof.

93. FORD denies the allegations and claims set forth in Paragraph 93 and demands strict proof thereof.

94. FORD denies the allegations and claims set forth in Paragraph 94 and demands strict proof thereof.

95. FORD denies the allegations and claims set forth in Paragraph 95 and demands strict proof thereof.

## ANSWERING THE "WHEREFORE" PARAGRAPHS OF PLAINTIFFS' COMPLAINT

FORD denies each and every allegation and part thereof or claim that otherwise is not specifically responded to in this Answer and Affirmative Defenses and demands strict proof thereof. FORD further denies each and every allegation and claim for relief sought in the "Wherefore" clauses of Plaintiffs' Complaint. FORD does, nonetheless, demand trial by jury.

## AFFIRMATIVE DEFENSES:

FORD has not had a sufficient opportunity to complete its investigation and discovery of this matter. FORD expressly reserves the right to amend and/or add additional defenses and affirmative defenses as discovery and investigation continues. FORD relies upon the following defenses which may prove applicable after discovery or at trial:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim or cause of action upon which relief can be granted against FORD.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

### SECOND AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred or are otherwise limited by operation of any applicable statutes of limitation and/or statutes of repose.

### THIRD AFFIRMATIVE DEFENSE

Venue in this county is improper, either because none of the Defendants reside or conduct business in this county, or because of *forum non conveniens,* or none of the operative events occurred in this county or state, or in the interest of justice or otherwise, the action should be transferred to another court.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff neither was exposed to nor used any product manufactured, sold or supplied by FORD.

### FIFTH AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred in whole or in part by Plaintiff's voluntary assumption of a known risk of harm or a risk of harm which Plaintiff knew or should have known.

### SIXTH AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred in whole or in part by the contributory negligence of Plaintiffs or reduced by the comparative negligence of Plaintiff.

### SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff either used, or was exposed to, products manufactured or supplied by FORD and if it is shown that such use and/or exposure is causally related to Plaintiffs' alleged injuries and/or damages, all of which is specifically denied, then it is averred that Plaintiff was himself negligent generally and in the following particulars:

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

*In failing to use proper safety equipment, which was available to Plaintiff;*

*In failing to demand that proper safety equipment be supplied to Plaintiff;*

*In failing to read the instructions and/or warning(s) distributed by FORD in connection with the sale or use of their products;*

*By using improper techniques and methods in the use and application of products for which FORD may have legal responsibility; and*

*In otherwise failing to exercise due care and caution under the circumstances.*

## EIGHTH AFFIRMATIVE DEFENSE

If Plaintiff used, or was exposed to, any product for which FORD may be legally responsible, which is specifically denied, the alleged injuries and/or damages of which the Plaintiff complains were caused by an unintended or improper use of such products for which FORD is not liable or responsible. In other words, the subject unidentified product which allegedly forms the basis of this lawsuit was not dangerous when used in a reasonable and foreseeable manner and for its intended purpose.

## NINTH AFFIRMATIVE DEFENSE

If it is shown that Plaintiff used, or was exposed to, any product sold or supplied by FORD, and if it is shown that such products caused or contributed to the injuries and/or damages as alleged by Plaintiff, all of which are specifically denied, then it is averred that the products sold or supplied by FORD were abused, misused, or otherwise substantially changed or altered by persons or parties other than FORD and, therefore, FORD is not liable.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries and/or damages were caused by the intervening or superseding acts or negligence of persons, parties, or entities over whom FORD had no control or responsibility, and for whose actions FORD is not liable.

### ELEVENTH AFFIRMATIVE DEFENSE

If the Plaintiff sustained the injuries and/or damages as alleged, which is specifically denied, then said injuries and/or damages were proximately caused by the acts and/or omissions of the Plaintiff's Non-FORD employers with respect to the maintenance of a healthy and safe work site and environment, which were within such employers' exclusive control and possession.

### TWELFTH AFFIRMATIVE DEFENSE

At all times relevant hereto, the Plaintiff was subject to the provisions of the applicable Workers' Compensation Act, the Longshoremens' and Harbor Workers' Compensation Act and the Workers' Compensation laws of any other state or jurisdiction where Plaintiff may have worked, with respect to immunity or offset for payments received by Plaintiff. The Workers' Compensation and Longshhoremens' and Harbor Workers' Compensation Acts provide for exclusive remedies and which, therefore, bars this Civil Action.

### THIRTEENTH AFFIRMATIVE DEFENSE

If it is shown that the Plaintiff used, or was exposed to, any products sold or supplied by FORD, and if it is shown that such products caused or contributed to the injuries and/or damages as alleged by the Plaintiff, all of which are denied, then it is averred that FORD neither knew at the time, nor reasonably should have known in light of the available medical, scientific, or other information, that any product of the type or nature referred to in Plaintiffs' Complaint which

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

allegedly was manufactured, sold, or supplied by FORD was hazardous or constituted a reasonably foreseeable risk of harm to Plaintiff in the normal and expected use of such products.

## FOURTEENTH AFFIRMATIVE DEFENSE

The alleged injuries and/or damages of which Plaintiff complains arose in whole or in part from one or more other causes or circumstances, including but not limited to, smoking, and not as a result of any exposure to any products manufactured, sold or supplied by FORD.

## FIFTEENTH AFFIRMATIVE DEFENSE

If it is shown that the Plaintiff used any product manufactured, sold or supplied by FORD, which is specifically denied, and if it is shown that such product was supplied to, by or on behalf of the United States Government, then FORD raises any immunity from suit or liability conferred upon the United States Government and/or FORD, which may arise under the circumstances.

## SIXTEENTH AFFIRMATIVE DEFENSE

FORD specifically denies that the Plaintiffs are entitled to recover exemplary or punitive damages. In this regard, FORD further avers that such damages are unconstitutional in that claims for such damages are barred by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the applicable provisions of the Constitution of the State of Florida. As a further affirmative defense, the claim of punitive damages, if any, is premature because the pleading requirements established under applicable Florida Statutes are not satisfied by a showing of evidence on the record or proffered by Plaintiffs, which would provide a reasonable basis for recovery of such damages. Furthermore, Plaintiffs are barred from recovering punitive damages by the Asbestos Silica Compensation Fairness Act.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to provide FORD with timely notice of their alleged claims which now acts to bar this Civil Action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

If the Plaintiffs' sustained the injuries and/or damages as alleged, then FORD alleges that such injuries and damages were due to the negligence of Plaintiffs' fellow servants engaged in the course of common employment with Plaintiff and that such negligence of the fellow servants bars this Civil Action.

## NINETEENTH AFFIRMATIVE DEFENSE

This Civil Action is barred for Plaintiffs failure to join indispensable parties.

## TWENTIETH AFFIRMATIVE DEFENSE

At the time FORD'S products of which Plaintiffs' Complaint left FORD'S control, a practical and technically feasible alternative design or formulation was not available without substantially impairing the usefulness or intended purpose of such products. Therefore, FORD'S products were not defective in design or manufacture.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

FORD contends that Plaintiffs' Complaint improperly commingles allegations against all Defendants such that it is impossible for any individual Defendant to answer Plaintiff's overly broad and vague allegations directed against all Defendants as a group.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the person and property of FORD, and therefore, this case should be dismissed as to FORD. There is no showing of any connection between Plaintiffs' alleged injury and FORD'S activities in the State of Florida, to support an assertion of

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

*in personam* jurisdiction over FORD, nor is there any other basis for this Court to exercise jurisdiction over FORD or its property. In personam jurisdiction over FORD is lacking because Plaintiffs failed to allege any connection or nexus between their alleged injuries and the activities of FORD in Florida.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The claims alleged in Plaintiffs' Complaint are barred by the doctrines of res judicata and/or collateral estoppel.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

This action is barred because at all material times FORD was acting in compliance with governmental or private contract specifications. Moreover, the government's knowledge of the potential dangers related to the use of those products was greater than the knowledge of FORD and FORD is immune from any liability for any damages suffered by the Plaintiff as a consequence of any exposure to asbestos contained in any such products.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Exposure, if any, of the Plaintiff to asbestos products allegedly manufactured or sold by FORD was so minimal as to be insufficient to establish to a reasonable degree of certainty or probability that the injuries and damages complained of resulted from any exposure to, or defects from, products allegedly manufactured, sold or distributed by FORD.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories which did not exist prior to the time of the occurrence giving rise to Plaintiffs' claims against FORD in that such statutes are inapplicable to this action, and the application of such legal theories to this action would be unconstitutionally retroactive.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' injuries, if any, were caused in whole or in part, by the acts or omissions of persons other than FORD, whether individual, corporate, associate, or otherwise, whether named or unnamed in the Complaint, and for whose conduct FORD is not liable.  FORD is not liabile for damages proximately caused by non-parties, pursuant to *Fabre v. Marine*, 623 So.2d 1182 (Fla. 1993).

Apportionment of damages, if any, should be accomplished in accordance with the provisions of Fla. Stat. § 768.81(3), and the Court should enter judgment against each party (whether a party to this litigation or not) on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.  In particular, the jury should consider the negligence, if any, of the following:

Any and all non- FORD employers of GALE LYAUTEY,

A.P Green Refactories
A.W. Chesterton Company
Allied Signal, Inc.
Alstom Power, Inc.
American Honda Motor Company, Inc.
American Optical Corporation
American Optical Corp.
American Standard Inc.,
American Suzuki Motor Corporation, Inc
Armstrong World Industries, Inc
Arrow Automotive Industries, Inc.
Arvinmeritor, Inc.
Asbestos Claims Management Corp;
Asea Brown Boveri Inc. a/k/a ABB Inc. f/k/a BBC Brown Boveri, Inc.
Asten, Inc.
Auto Machine
Babcock & Wilcox

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Bennett Auto Supply

Bird, Inc.

Bondex International, Inc.( a subsidiary of Bondex Company)

Borg Warner Corporation

Borg-Warner Inc.
Bridgestone/Firestone North American Tire, LLC
Briggs-Stratton Corp.
CBS Corporation
C.E. Thurston & Son, Inc.
Carlisle Companies, Inc.
Caterpillar, Inc.
Capco Pipe Company
Carver Pumps, Inc.
Carlisle Companies, Inc, through its subsidiaries Motion Control Industries
Certainteed Corporation f/k/a Certainteed Products Corporation, individually and as successor in interest to Bestwell Gypsum Company
Chrysler LLC
Cleaver Brooks Company
Congoleum Corporation
Consumer Automotive Part, Inc
Conwed Corporation
Crane Company
Crown, Cork & Seal Company.
Cummins, Inc.
Dana Companies
Dana Corporation d/b/a Dana Racine Corporation f/k/a Spicer Manufacturing Corp
Danaher Corporation, individually, and through its subsidiaries DH Holding and Hennessy Industries;
Discount Auto Parts, Inc.
Dowman Products, Inc.
Deere & Co.., Inc
Deere & Company
Dresser, Inc,, through its division/business unit Waukesha Engine
Durabla Manufacturing Company
Eaton Electrical, Inc.
Eagle Pitcher Industries
Fairbanks Morse Pumps Corporation
Federal Mogul Corporation d/b/a/ Wagner brake products
Fern Auto Parts
Ferraro Corporation
Flexitallic, Inc.
Flinkote Company
Flinkote Corporation
Flowserve Corporation
Foster Wheeler Energy Corporation

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Foseco, Inc.
Garlock Sealing Technologies, LLC Ma Garlock, Inc. f/k/a Garlock Parking Co.
Gardner Denver, Inc.
Garnder Denver Nash, LLC
GAF Corporation
General Electric Company
General Motors Corporation
General Refractories Company
Genuine Parts company
Georgia-Pacific Corporation f/k/a Georgia hardwood Lumber Co.. f / k / a Georgia-Pacific Plywood and Lumber Co., f / k / a Georgia-Pacific Plywood Co.
Green, Tweed & Co., Inc.
Goodyear Tire and Rubber Company
Gould Pumps, Inc.
Guard-Line, Inc.
Hanson Permanente Cemente f/k/a Cement Company
H.B. Fuller Company
Harbison-Walker Refractories Company
Hollingsworth & Vose Company, Inc.
Honeywell International, Inc. flkla Allied Signal, Inc., individually and as successor in interest to Allied Corporation, as successor in interest to the Bendix Corporation
International Truck and Engine Corporation
Independent Parts Warehouse, Inc.
Industrial Holdings Corporation f/k/a The Carborundum Company
Ingersoll-Ran Company
IMO Industries, Inc.
John Crane, Inc.
Johns Manville
Johns-Manville Corporation
KCG, Inc.
Kaiser Aluminum
Kaiser Gypsum Company
Keene Corporation
Kennon Bearings
Kelly-Moore Paint, Co.
Kelsey-Hayes
Kohler, Inc
Kone, Inc.
Lipe Rollway;
M&H Automotive, Inc
Mack Trucks, Inc.
Maremont Corporation
Mazda Motor of Arxxerica, Inc
McCord Corporation, individually and as successor in interest to A.E. Clevite, Inc. and J.P. Industries, Inc.
Metropolitan Life Insurance Company

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Mitsubishi Motor's North America, Inc

Milano Motors

Miller Machine

Moffet Bearings

Motion Control Industries

Morton International, Inc

NAPA Auto Parts, LLC.

National Gypsum Company;

National Service Industries, Inc.

Navistar Int'l Transportation Corp. f/k/a International Harvester

Nissan North America, Inc.

Owens Bottle Machine Corp. f/k/a Ownes Bottle Co. f/k/a Owens-Illinois Glass Co.

Oshkosh Truck Corp.

Owens Corning Corporation

Owens-Illinois, Inc.. f/k/a Owens Bottle Machine Corp. f/kla Owens Bottle Co. f/k/a Owens-Illinois Glass Co..

Oshkosh Truck Corp.

Paccar, Inc., individually and through it divisions Kenworth Trucks and Peterbilt Motors

Pfizer, inc.

Pittsburgh Corning Corporation;

Premix Marbletite Mfg. Co

Proko Industries, Inc.

Quigley Co., Inc.

Riley-Stoker

R&M Manufacturing Company

Rapid-American Corporation f/kla Glen Alden Corporation

Republic Powdered Metals, Inc.

Rechtien International Trucks, Inc.

SEPCO Corporation

Shook and Fletcher

Standard Motor Products d/b/a EIS Brake Parts

Steel Grip, Inc., f/k/a Industrial Gloves Co. f/k/a Steel Chip Safety Apparel Co.

Stradley Auto Parts

TH Agriculture & Nurtrition, LLC

The Anchor Packing Company, Inc.; Toyota Motor North America, Inc.

The Parts Source d/b/a Ace Auto Parts, a Florida Corporation

U.S.. Mineral

U.S. Gypsum Company

Unarco Inc.

Universal Refractories, Inc.

Union Carbide Chemicals & Plastics f/k/a Union Carbide and Carbon Co. f/k/a Union Carbide Corp.

Uniroyal Holdings, Inc.

Volkswagen of America Inc.

W.R. Grace & Company

Weil-Mclain Company, Inc.

Wheeling Brake Block Manufacturing Co. Inc
Worthington Corporation
Zurn Industries, Inc.
TRW Automotive
Federal-Mogul Corporation d/b/a Wagner Brake Products
Standard Motor Products d/b/a EIS Brake Parts; and/or
The Parts Source d/b/a Ace Auto Parts, a Florida Corporation 122. American Suzuki Motor Corporation Inc.
Bird Inc.
Bondex International, Inc. (a subsidiary of Bondex Company) 125. Consumer Automotive Parts, Inc.
Crane Company
Discount Auto Parts
Genuine Parts Company
Hanson Cemente f/k/a Kaiser Cement Company
Hennessy Industries
Motion Control Industries, Inc.., as predecessor in interest to Carlisle Companies, Inc.
Republic Powdered Metals, Inc., (RPM Inc)
TH Agriculture & Nutrition, LLC., (individually and as a successor in interest to Thompson-Hayward Chemical Co..)
Lorillard Tobacco Company
International Truck and Engine Corporation
Rockrnore Warehouse
Fern Auto Parts
Napa Auto Parks
Moffet Bearings
Kennon Bearings
Millen Machine
Auto Machine
Asca Brown Boveri Inc. a/k/a ABB Inc. f/k/a BBC Brown Boveri, Inc.
Victor Clutch Co Ltd.
Franklin Equipment Co. a/k/a Franklin TreeFarmer.
Independent Parts Warehouse
I.P.W. of Orlando, Inc.
Tenneco, Inca f/k/a Tenneco Automotive, Inc. by and through its predecessor Walker Manufacturing Company
West Dixie Auto Parts, Inc.
Worthington Corporation
Chrysler, LLC
Georgia Pacific
Goulds Pumps
Harley Murray
Toyota Motor Sales, U.S.A, Inc.
Zurn Industries, Inc.
United States Navy
Republic Steel

- 25 -

US Steel
Monsato
Refinery, Texas City, Texas
Papermill, Savannah, GA
Papermill, Jacksonville, FL
State Hosptial, Kalamazoo
Turbodyne
Ingersoll Rand

All named parties to this action
Any entities that were Defendants to this action, but have been dismissed
All current Defendants to this action
Any current Defendant to this action that will subsequently be dismissed

Any and all manufacturers or distributors of products Plaintiff claims exposed Plaintiff to asbestos that were identified in deposition or discovery.

Any and all manufacturers or distributors of products at Plaintiff's job sites that are identified in deposition or discovery.

Any and all manufacturers of products that are identified in deposition or discovery.

Any and all subsidiaries and/or successors in interest to the above named entities, or any entity named herein.

Any manufacturer or distributor of products Plaintiff claims exposed him to asbestos that were previously or subsequently dismissed from this action.

Any manufacturer or distributor of products Plaintiff claims exposed him to asbestos named in this action.

Any manufacturer, distributor or supplier of products Plaintiff claims exposed him to asbestos during his home construction and/or remodel work at various residential locations in and around Palatka, Florida.

Any and all of Gale Lyautey's various employers that may have exposed him to asbestos.

Any and all manufacturers or distributors of products to Gale Lyautey various employers and job sites.

Any and all manufacturers or distributors of asbestos containing products to Gale Lyautey various schools he attended that will be identified in deposition or discovery.

Any and all persons or entities that owned or had a possessory interest in the locations where Plaintiff's claims may have exposed him to asbestos.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Any and all entities identified in Gale Lyautey's social security printout.

Any and all subsidiaries and/or successors in interest to the above named entities, or any entity named herein.

Any and all subsidiaries and/or successors in interest to the above named entities, entities named herein or to be identified in deposition or discovery.

Any and all entities identified in Gale Lyautey's Exposure Sheets and Sworn Information form.

FORD adopts and incorporates *Fabre* lists of co-defendants filed in this action or to be filed in this action.

FORD reserves the right to supplement or add to this list in the future as discovery progresses and additional entities are identified during discovery.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff(s) failed to mitigate damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The subject unidentified product which allegedly forms the basis of this lawsuit conformed to the state of the medical and scientific art in the automotive industry at the time of its manufacture and complied with all Federal Motor Vehicle Safety Standards applicable to it and all federal and state regulations, specifications, laws and motor vehicle safety standards in what were the industry customs at the time of its manufacture.

## THIRTIETH AFFIRMATIVE DEFENSE

If any defect existed in the design or manufacture of the subject unidentified product or its component parts which allegedly forms the basis of this lawsuit, all of which is specifically denied, then such product or its component parts were not in the same condition as when they left the custody or control of FORD, substantial changes or alterations having been made thereto,

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

which changes or alterations were the proximate cause of any defective condition or conditions, thus barring or reducing proportionately all claims for damages against FORD.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

The design of the subject unidentified product which allegedly forms the basis of this lawsuit was reasonably safe as measured by the risk utility analysis set forth in the Restatement (Third) of Torts.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Pursuant to Fla. Stat. § § 46.015(2), 768.041(2), and 768.31(5), FORD is entitled to a set-off or credit in the amount of any settlement or compromise heretofore or hereafter reached by Plaintiffs with any other person or entity for any of Plaintiff's alleged damages.  FORD also asserts its right to collateral-source set-off under § 768.76.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

FORD has been prejudiced in its Defense to the extent the evidence in this case has been destroyed or altered by others.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs have waived their claims, in whole or in part.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by virtue of a release.

- 28 -

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by virtue of Plaintiff's unclean hands.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their fraudulent conduct.

### FORTIETH AFFIRMATIVE DEFENSE

As a defense to their claim for damages, Plaintiffs' claims for recovery based upon diseases, which are at present, undiagnosed are not compensable under Florida law.

### FORTY-FIRST AFFIRMATIVE DEFENSE

As a defense to their claim for damages, Plaintiffs' claims for psychological and/or emotional distress are not recoverable as Plaintiffs have not sustained any objectively discernable physical injury as required by Florida law and/or such claims are not compensable under Florida law.

### FORTY-SECOND AFFIRMATIVE DEFENSE

FORD is relieved of liability because of other, intervening and superseding causes of loss, injury, or damage as alleged by Plaintiffs, e.g., the failure of labor unions to provide training and proper protective equipment to assure a safe working environment, or to warn workers of possible health hazards associated with exposure to asbestos, or the failure of other persons or entities to prevent or warn of injury, having the immediate opportunity to do so.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claim for breach of express warranty and/or implied warranty, if any, is barred because of lack of privity with FORD.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Plaintiffs' claims are barred for lack of service of process, and/or insufficiency of process.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

This action is barred in whole or in part by the doctrine of shifting responsibility.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

This action cannot be maintained on substantive or jurisdictional statutes or legal theories which did not exist prior to the dates on which Plaintiff used FORD'S products, in that such statutes are inapplicable to this action, and in that the application of such legal theories to this action would be unconstitutionally retroactive.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

At all times relevant hereto, FORD was in full compliance with the standards and/or specifications issued by the United States Government with respect to asbestos-containing products. These standards and/or specifications required the use of asbestos.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

FORD asserts that Plaintiffs' claims are or may be barred or otherwise limited or affected by the application of provisions of the law or statutes of states other than the State of Florida where Plaintiffs' alleged exposure may have occurred.

## FORTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against FORD should be denied by reason of the sophisticated commercial user/learned intermediary doctrines as Plaintiffs' employers were so experienced and sophisticated with regards to asbestos-containing products that no duty to warn existed. The knowledge of employers regarding potential hazards of asbestos was equal to or superior to that of FORD, and therefore, FORD had no duty to warn Plaintiff as an employee of sophisticated

commercial purchasers/users who furnished asbestos-containing products to their employees for their use, were aware of the possible health hazards associated with the use of such products, and were under a duty to warn their employees thereof.

### FIFTIETH AFFIRMATIVE DEFENSE

If Plaintiff has filed lawsuits in other jurisdictions against some or all of the same Defendants, Plaintiff is precluded from seeking double recovery.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff has released, settled, entered into an accord or satisfaction or otherwise compromised Plaintiffs' claims herein and, accordingly, those claims are barred by operation of law. Alternatively, if Plaintiff accepts in the future compensation in partial settlement of those claims, FORD is entitled to a set-off.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

FORD is entitled to set-off, should any damages be awarded against it, in the amount of damages or settlement amounts recovered by Plaintiff from other parties or entities. FORD is also entitled to have any damages that may be awarded to Plaintiff reduced by the value of any collateral source.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's allegations are barred and/or barred by Florida's Asbestos and silica compensation Act, 2005, ALS; 274; 2005 Fla Laws ch 274; 2005 HB 1019.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs assert that FORD failed to give adequate warnings about its products, such claims are preempted by federal regulations, including those promulgated by the Occupational Safety and Health Administration.

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

FORD incorporates and asserts all affirmative defenses pursuant to the 2005 Asbestos and Silica Compensation Fairness Act.

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any should be reduced by the amount of the Plaintiff's reduced life expectancy, from sources and causes unrelated to Plaintiff's alleged exposure, if any to FORD.

## FIFTY-SEVENTH AFFIRMATIVE DEFENSE

FORD contends that the number of different agents to which Plaintiff was exposed in and out of the workplace and the lack of definitive evidence as to the amount of actual exposure to each agent makes it impossible to determine, to a requisite degree of legal certainty, the alleged causal connection, if any, between Plaintiffs' injuries and said agents.

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

FORD contends that to the extent that Plaintiffs are relying upon a theory of market share liability to support Plaintiffs' strict liability claim, this count should be dismissed because the theory of market share liability does not apply.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

FORD pleads the negligence and conduct of Plaintiffs' employers as a partial or complete bar to all claims asserted in the Complaint.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

### SIXTIETH AFFIRMATIVE DEFENSE

If Plaintiff or any member of his household used tobacco products, this use was a failure to exercise ordinary care for Plaintiffs' own safety and was the sole or primary cause of his injuries. The negligence of Plaintiff or other members of his household in using tobacco products or the negligence of third parties engaged in the sale, manufacture, or distribution of tobacco products is a partial or a complete bar to all claims asserted in Plaintiffs' Complaint.

### SIXTY-FIRST AFFIRMATIVE DEFENSE

FORD asserts the military contractor's defense. FORD contends that FORD'S asbestos-containing products, if any, were or may have been supplied to the United States Government or its agencies pursuant to contract, and such products conformed in every material respect to specifications established by the Untied States Government or its agencies. The knowledge of the United States Government or its agencies pertaining to the possible hazards to Plaintiff associated with the use of such products was equal to or superior to that of FORD and, but reason thereof, FORD is not liable to Plaintiffs under any theory of law asserted in this civil action.

### SIXTY-SECOND AFFIRMATIVE DEFENSE

FORD is not a joint torfeasor with any other Defendant herein, and, accordingly, FORD may not be held jointly and severally liable with other Defendants. Alternatively, FORD'S joint and several liability, if any, is limited by the provisions of Florida Statute § 768.81.

### SIXTY-THIRD AFFIRMATIVE DEFENSE

FORD contends that under the doctrine of judicial estoppel, Plaintiffs are precluded from taking a position inconsistent with one taken with respect to the same facts in other litigation and

are, therefore, precluded from alleging the material facts necessary to state a cause of action against FORD.

### SIXTY-FOURTH AFFIRMATIVE DEFENSE

FORD contends any exposure of Plaintiff to FORD'S products was so minimal as to be insufficient to establish to a reasonable degree of medical probability that such exposure to the product or products was a contributing cause of Plaintiff's injuries.

### SIXTY-FIFTH AFFIRMATIVE DEFENSE

FORD contends that there is no causal connection between FORD, or any product sold by FORD and any injury sustained by Plaintiff such causal connection being remote, indefinite, and speculative, and as a result thereof, the Complaint should be dismissed as to FORD.

### SIXTY-SIXTH AFFIRMATIVE DEFENSE

FORD contends that if Plaintiff suffered injuries, which FORD denies, said injuries were not caused or contributed by his exposure to asbestos-containing products sold or distributed by FORD, rather by his exposure to dangerous or hazardous chemicals, fumes, products, or dust that were present at Plaintiff's workplace or elsewhere.

### SIXTY-SEVENTH AFFIRMATIVE DEFENSE

FORD contends that Florida law has not recognized a duty to "remove and recall" products from the marketplace, post-sale.

### SIXTY-EIGHTH AFFIRMATIVE DEFENSE

Section 6(2) of Florida's "Asbestos and Silica Compensation Fairness Act," Fla. Stat. § 774.206(2), bars Plaintiff from recovering damages for fear or risk of cancer.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

## SIXTY-NINTH AFFIRMATIVE DEFENSE

Any damages claimed by Plaintiff that have not accrued are purely speculative, uncertain and contingent and therefore can not be recovered in this action.

## SEVENTIETH AFFIRMATIVE DEFENSE

FORD expressly adopts and incorporates by reference any and all affirmative defenses of each and every Co-Defendant which is not set forth above.

## RESERVATION OF DEFENSES

FORD expressly reserves the right to amend and/or add additional defenses and affirmative defenses as discovery and investigation continues. Further, depending on the Court's rulings concerning venue or otherwise, FORD reserves the right to assert other affirmative defenses based upon the resulting jurisdiction and venue.

## DEMAND FOR JURY TRIAL

FORD hereby demands trial by jury on all issues so triable.

**WHEREFORE**, Defendant, FORD MOTOR COMPANY, hereby requests this Honorable Court enter judgment against Plaintiff and in FORD'S favor as to all issues, counts and matters set forth in the Plaintiffs' Complaint, and award to FORD its taxable costs and such other relief as it deems just and proper under the circumstances.

COLE, SCOTT & KISSANE, P.A.
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33156 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 10-35086 CA (31)

Respectfully Submitted,

COLE, SCOTT & KISSANE, P. A.
Dadeland Centre II, 14th Floor
9150 So. Dadeland Boulevard
Miami, Florida 33156
Tel: (305) 350-5300
Fax: (305) 373-2294

By: _____
     HENRY SALAS, ESQ.
     FBN: 0815268
     CLARKE S. STURGE, ESQ.
     FBN: 0584541

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via lexis-nexis file and serve to all counsel of record this 6th day of August, 2010.

By: _____
     HENRY SALAS, ESQ.
     FBN: 0815268
     CLARKE S. STURGE, ESQ.
     FBN: 0584541

32552777

Aug 9 2010
10:46AM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GALE LYAUTEY, and PATRICIA
LYAUTEY, his wife,

      Plaintiffs,

vs.

ALFA LAVAL, INC., et al.

      Defendants.

GENERAL JURISDICTION

CASE NO. 10-35086 CA 31

## CRANE CO.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant, CRANE CO. (hereinafter "the Defendant") by and through its undersigned counsel, hereby files its Answer and Affirmative Defenses to the Plaintiffs, Gale Lyautey and Patricia Lyautey, his wife (hereinafter "the Plaintiffs"), Complaint and Demand for Jury Trial (hereinafter "the Complaint").

1.    The Defendant admits that this is a lawsuit that purports to be an action for damages in excess of Fifteen Thousand Dollars, ($15,000.00), but denies that the Complaint states a cause of action or that the Defendant is liable or responsible for any alleged damage to the Plaintiff(s).

2.    The Defendant acknowledges that since Gale Lyautey and Patricia Lyautey brought this action, they qualify as plaintiffs herein, but denies that this Defendant is liable or responsible for any alleged damages herein and is without knowledge either to admit or deny Gale Lyautey and Patricia Lyautey were married on June 4, 1965.

MI-346565 v1

3.      The Defendant denies the allegations contained in paragraph 3 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

4.      The Defendant admits only that it is a Delaware corporation with its principal place of business in Connecticut and is without knowledge either to admit or deny the remaining allegations in paragraph 4 as they relate to other defendants.

5.      Paragraph 5 purports to state a definition, to which no response is required, and to the extent that a response is necessary, the Defendant denies that the stated definition accurately reflects the proper usage or legal significance of the terms contained therein.

6.      The Defendant denies the allegations contained in paragraph 6 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

7.      The Defendant denies the allegations contained in paragraph 7 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

8.      The Defendant denies the allegations contained in paragraph 8 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

9.      The Defendant denies the allegations contained in paragraph 9 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

10.     The Defendant denies the allegations contained in paragraph 10 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

## DEFENDANTS

11-23. The Defendant denies the allegations contained in paragraphs 11 through 23 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

24.     The Defendant admits only that it is a Delaware corporation with its principal place of business in Connecticut. The Defendant denies all other allegations in paragraph 24 to the extent they relate to this Defendant.

25-64. The Defendant denies the allegations contained in paragraphs 25 through 64 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

65.     The Defendant denies the allegations contained in paragraph 65 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

66.     The Defendant denies the allegations contained in paragraph 66 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

67.     The Defendant denies the allegations contained in paragraph 67, including all subparts contained therein, to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

68. The Defendant denies the allegations contained in paragraph 68 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

## COUNT I: NEGLIGENCE

The Defendant realleges its responses to the paragraphs incorporated in paragraph 1 through 68 as though fully set herein.

69. The Defendant denies the allegations contained in paragraph 69 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

70. The Defendant denies the allegations contained in paragraph 70 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

71. The Defendant denies the allegations contained in paragraph 71 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

72. The Defendant denies the allegations contained in paragraph 72 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

73. The Defendant denies the allegations contained in paragraph 73 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

74.     The Defendant denies the allegations contained in paragraph 74 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

75.     The Defendant denies the allegations contained in paragraph 75 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

76.     The Defendant denies the allegations contained in paragraph 76, including all subparts contained therein, to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

The Defendant denies that the Plaintiffs are entitled to any of the relief prayed for in the prayer for relief immediately following paragraph 76.

## <u>COUNT II- STRICT LIABILITY</u>

The Defendant realleges its responses to the paragraphs incorporated in paragraph 1 through 68 as though fully set herein.

77.     The Defendant denies the allegations contained in paragraph 77 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

78.     The Defendant denies the allegations contained in paragraph 78 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

79.     The Defendant denies the allegations contained in paragraph 79 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

80.     The Defendant denies the allegations contained in paragraph 80 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

81.     The Defendant denies the allegations contained in paragraph 81 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

82.     The Defendant denies the allegations contained in paragraph 82 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

83.     The Defendant denies the allegations contained in paragraph 83 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

84.     The Defendant denies the allegations contained in paragraph 84 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

85.     The Defendant denies the allegations contained in paragraph 85, including all subparts contained therein, to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

86.     The Defendant denies the allegations contained in paragraph 86 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

87.     The Defendant denies the allegations contained in paragraph 87, to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

88.     The Defendant denies the allegations contained in paragraph 88 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

The Defendant denies that the Plaintiffs are entitled to any of the relief prayed for in the prayer for relief immediately following paragraph 88.

### COUNT III:  LOSS OF CONSORTIUM – PATRICIA LYAUTEY

The Defendant realleges its responses to the paragraphs incorporated in paragraph 1 through 68 as though fully set herein.

89.     The Defendant denies the allegations contained in paragraph 89 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

The Defendant denies that the Plaintiffs are entitled to any of the relief prayed for in the prayer for relief immediately following paragraph 89.

### DAMAGES

The Defendant realleges its responses to the paragraphs incorporated in paragraph 1 through 89 as though fully set herein.

90.     The Defendant denies the allegations contained in paragraph 90 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

91.     The Defendant denies the allegations contained in paragraph 91 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

92.     The Defendant denies the allegations contained in paragraph 92 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

93.     The Defendant denies the allegations contained in paragraph 93 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

94.     The Defendant denies the allegations contained in paragraph 94 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

95.     The Defendant denies the allegations contained in paragraph 95 to the extent they relate to this Defendant and is without knowledge either to admit or deny those allegations as they relate to other defendants.

The Defendant denies that the Plaintiffs are entitled to any of the relief prayed for in the prayer for relief immediately following paragraph 95.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' allegations fail to state a cause of action against the Defendant.

### Second Affirmative Defense

Each and every cause of action is barred by the applicable statute of limitations.

### Third Affirmative Defense

Each and every cause of action is barred by the applicable statute of repose.

### Fourth Affirmative Defense

There are insufficient allegations to state sufficient facts to obtain venue over the Defendant in Miami-Dade County.

### Fifth Affirmative Defense

There is no connection between the Defendant's business activities in Florida, if any, and the alleged injuries.

### Sixth Affirmative Defense

This court lacks *in personam* jurisdiction over the Defendant.

### Seventh Affirmative Defense

This case should be transferred pursuant to the *forum non conveniens* doctrine as enumerated in the Supreme Court's decision in <u>Kinney Sys. Inc. v. The Continental Ins. Co.</u>, 674 So. 2d 86 (Fla. 1996) and otherwise.

### Eighth Affirmative Defense

The Complaint must be dismissed for failure to state a cause of action because it fails to allege sufficient facts to establish that the Plaintiff was exposed to asbestos fibers emanating from an identified asbestos-containing product manufactured or distributed by the Defendant.

### Ninth Affirmative Defense

Any alleged exposure of the Plaintiff to the Defendant's product was so minimal as to be insufficient to establish, to a reasonable degree of medical probability, that such exposure to the product was a contributing cause of Plaintiffs' injuries.

### Tenth Affirmative Defense

The Defendant is entitled to a set-off for the amount of any monies paid to the Plaintiffs in settlement of claims with other parties.

### Eleventh Affirmative Defense

The Plaintiffs have received or will receive collateral source benefits from collateral sources, as defined by Florida Statutes Section 768.76, and the Defendant is entitled to a set off of all such sums paid.

### Twelfth Affirmative Defense

The Plaintiffs failed to join indispensable parties as defendants in this action.

### Thirteenth Affirmative Defense

The law of another state or jurisdiction is applicable in this action.

### Fourteenth Affirmative Defense

The Defendant cannot be held jointly and severally liable with any other defendant in this action.

### Fifteenth Affirmative Defense

Plaintiffs are barred from bringing this action under the doctrines of *res judicata* and/or collateral estoppel.

### Sixteenth Affirmative Defense

The Defendant's products were not defective or unreasonably dangerous, and the Defendant was not negligent in any respect, in light of the then existing state-of-the-art technology with respect to production, manufacture, sale and/or distribution of any asbestos containing product at the time of Plaintiff's alleged exposure.

### Seventeenth Affirmative Defense

Plaintiffs' action is barred, in whole or in part, in that the products manufactured by the Defendant were manufactured in accordance with local, state and federal governmental specifications and standards, and said governmental entities had actual or constructive knowledge with regard to the alleged hazards of the products.

### Eighteenth Affirmative Defense

Any products that are alleged to have contained asbestos that were alleged to have been manufactured, distributed, sold and/or supplied or otherwise placed in the stream of commerce by the Defendant were made so that the asbestos fibers were encapsulated in other material which would prevent the release of injury producing levels of such fibers based on the use of said product.

### Nineteenth Affirmative Defense

The products in question were changed, altered, or modified after they left the Defendant's control, and such change, alteration or modification was the legal cause of Plaintiffs' damages, if any.

### Twentieth Affirmative Defense

The law that applies to this action is the law in existence at the time of the alleged acts of the Defendant alleged to be the cause of damages.  Causes of action alleged by the Plaintiffs based on theories of liability created after the date of the alleged acts of the Defendant are not applicable to this action.

### Twenty-First Affirmative Defense

The Defendant demands that Plaintiffs be required to prove, according to the essential requirements of the law, each of the necessary elements to establish the alleged liability of the

Defendant and particularly to prove specifically that the damages claimed are legally caused by defects in the Defendant's product and that the Defendant's product was defective and was a proximate or direct material cause of injury to the Plaintiffs.  Any violation of this demand constitutes a violation of the equal protection and due process clauses of the U.S. Constitution, as well as the Constitution of the State of Florida.

**Twenty-Second Affirmative Defense**

Plaintiffs' injuries or damages were the result of concurrent or successive exposures, if any, and the Defendant, if responsible for any of Plaintiffs' damages, which is denied, should have its liability apportioned and limited to only those damages which it caused.

**Twenty-Third Affirmative Defense**

The Plaintiff willingly, knowingly and voluntarily assumed the risk of his injuries.

**Twenty-Fourth Affirmative Defense**

The Plaintiffs' injuries, if any, were caused by his/ her own negligent conduct, or by the negligent conduct of another, and therefore the Plaintiffs are barred from recovery or, alternatively, barred from full recovery from the Defendant.

**Twenty-Fifth Affirmative Defense**

The Plaintiff's own conduct and personal health care including the continuous use of tobacco, was the substantial, effective, intervening, and superseding cause of the injuries and damages complained of by the Plaintiffs.

**Twenty-Sixth Affirmative Defense**

The Plaintiffs knew of the existence of the danger complained of in the Complaint, realized and appreciated the possibility of injury as a result of the danger, and having reasonable opportunity to avoid it, voluntarily exposed himself to said danger.

### Twenty-Seventh Affirmative Defense

The products and materials in question were abused, misused, and improperly used by the Plaintiff or others not under the Defendant's control, and by reason thereof, the Plaintiffs are barred from recovery from damages.

### Twenty-Eighth Affirmative Defense

The Defendant reasonably relied upon the sophisticated employers of the Plaintiff and is not responsible for the failure of said employers to warn or take proper precautions with regard to the use of such products.

### Twenty-Ninth Affirmative Defense

The Defendant reasonably relied upon the sophisticated labor unions of the Plaintiff and is not responsible for the failure of said labor unions to warn or take proper precautions with regard to the use of such products.

### Thirtieth Affirmative Defense

The Defendant is relieved of liability because other, intervening and superseding causes of loss, injury or damage alleged by the Plaintiffs, including but not limited to the failure of labor unions or employers to provide training and proper protective equipment to assure a safe work environment, or to warn workers of possible health hazards associated with exposure to asbestos, or the failure of other persons or entities having the immediate opportunity to prevent or warn of injury, but failed to do so.

### Thirty-First Affirmative Defense

The Defendant cannot be held liable for Strict Liability under Florida law in that the Complaint fails to allege sufficient ultimate facts to identify any specific product of this Defendant and to establish the relationship of this Defendant to any specific product.

### Thirty-Second Affirmative Defense

The Defendant cannot be held liable for Strict Liability in that the Complaint fails to allege specific ultimate facts to establish any allegedly defective and unreasonably dangerous condition of any product allegedly manufactured, distributed or sold by the Defendant; specifically, the nature of the defects and when the product left the Defendant's control.

### Thirty-Third Affirmative Defense

The Defendant cannot be held liable for Strict Liability in that the Complaint fails to establish the existence of any proximate causal connection between the alleged defect and any product manufactured or sold by the Defendant.

### Thirty-Fourth Affirmative Defense

The Defendant cannot be held liable for Negligence, as Plaintiffs' Complaint fails to allege sufficient allegations that the Defendant owed a duty to the Plaintiffs and that there was a breach of that duty.

### Thirty-Fifth Affirmative Defense

The Plaintiffs are barred from relying upon alternative theories of liability, including market share or enterprise liability, because the Plaintiffs are unable to identify the asbestos-containing products of other manufacturers to which Plaintiff allegedly was exposed.

### Thirty-Sixth Affirmative Defense

The theories of alternative and/or enterprise liability do not apply in this case.

### Thirty-Seventh Affirmative Defense

The Plaintiffs' injuries and damages, if any, should be reduced proportionately to the probability that the Plaintiffs would have suffered the same injury or damages notwithstanding the alleged exposure to the Defendant's products.

### Thirty-Eighth Affirmative Defense

Other persons or entities not a party to this action contributed to and/or proximately caused the damages, if any, to the Plaintiffs, and thus any damages should be apportioned among all the parties solely based on that party's percentage of fault pursuant to Florida Statute § 768.81(3). In accordance with Florida Statute § 768.81(3) and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), this Defendant reserves the right that these other entities or persons, whether parties or non-parties, appear on the verdict form so that a jury can apportion liability among all participants to the incidents which caused Plaintiffs' damages.    This Defendant seeks apportionment of any damages awarded in this case and will include some or all of the entities listed below on the jury verdict form in accordance with *Nash v. Wells Fargo Guard Servs.,* 678 So.2d 1262 (Fla. 1996).  Entities that may be listed include, but are not limited to the following entities or persons named as Defendants in Plaintiffs' Complaint and Exposure Sheets, and any and all amendments or supplements thereto: Alfa Laval, Inc., Asco Valve, Inc., A.W. Chesterton Company, Bigham Insulation & Supply Company, Bird, Inc., Borg Warner Corporation, Buffalo Pumps, Inc., Carrier Corporation, Caterpillar, Inc., CBS Corporation f/k/a Viacom, Inc. successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation, Certainteed Corporation, Cleaver Brooks, Inc., Compudyne Corp., Cummins Inc., Dana Companies LLC, f/k/a Dana Corporation, individually and as successor in interest to and/or f/k/a Wisconsin Gasket & Manufacturing Compnay, Detroit Diesel Corporation, Eaton Hydraulincs, Inc., f/k/a and/or successor-in-interest to Vickers, Inc., Elliott Turbomachinery Company, Inc., Fairbanks Morse Pump Corporation, Federal –Mogul Asbestos Personal Injury Trust, as successor to Felt-Products Manufacturing Co. and as successor to the former Vellumoid division of Federal-Mogul, Flowserve Corporation, f/k/a Durametallic Corporation, Ford Motor Company, Foster

- 15 -

Wheeler Energy Corporation f/k/a Foster Wheeler Corporation, Gardner Denver, Inc., Gardner Denver Nash, LLC, General Electric Company, Genuine Parts Company, Georgia-Pacific Corporation, The Goodyear Tire & Rubber Company, Goulds Pumps, Inc., a subsidiary of ITT Industries, Inc., Greene Tweed & Co., Inc., Honeywell International, Inc., f/k/a Allied Signal, as successor-in-interest to Allied Corporation, as successor-in-interest to the Bendix Corporation, IMO Industries, Inc., f/k/a Delaval Turbine, Inc., Ingersoll-Rand Company, ITT Corporation, as successor in interest or parent company to Bell & Gossett Pumps, John Crane, Inc., Leslie Controls, Inc., McCord Corporation, Melrath Gasket, Inc., National Service Industries, Inc., Officemax Inc., f/k/a Boise Cascade L.L.C., f/k/a Boise Cascade Corporation, Owens-Illinois Inc., Pneumo Abex LLC, as successor in interest to Pneumo Abex Corporation, Rapid American Corporation, SPX Corporation, Individually and as Successor to DeZurik, Inc., Stone & Webster Engineering Corporation, individually and as successor to Griscom Russell Company, Union Carbide Corporation, Velan Valve Corporation, Viad Corporation, f/k/a The Dial Corporation, Individually and as successor to Griscom Russell Company, Viking Pumps, Inc., Warren Pumps, LLC, Individually and as successor-in-interest to Quimby Pump Co., Weir Valves and Controls USA, Inc., f/k/a and/or successor-interest-to Atwood and Morrill Co., and Yarway Corporation.

In addition and also pursuant to *Fabre*, any damages which may be awarded to the Plaintiffs are subject to apportionment by the jury of the total fault of all participants, including but not limited to any and all non-defendant employers of Plaintiff, including but not limited to those employers identified in Plaintiff's Exposure Sheets, and identified by Plaintiff's or by Plaintiff's witnesses in any deposition taken in this action or to be taken in this action, specifically including, but not limited to the following employers: U.S. Navy, Republic Steel in Youngstown, Ohio, US Steal in Pittsburgh, Pennsylvania, Monsanto in Decatur, Alabama, A

Refinery in Texas City, Texas, A Paper Mill in Savannah, Georgia, A Paper Mill in Jacksonville, Florida, and State Hospital in Kalamazoo, Michigan.

Furthermore and also pursuant to *Fabre*, any damages which may be awarded to the Plaintiffs are subject to apportionment by the jury of the total fault of all participants, including but not limited to any and all manufacturers, suppliers, and/or distributors of products named or identified by Plaintiffs in Plaintiffs' Original Complaint and Exposure Sheets, any and all amendments or supplements thereto, and any and all manufacturers, suppliers, and/or distributors of products named or identified by Plaintiffs or by Plaintiffs' witnesses in any deposition taken in this action or to be taken in this action, specifically including but not limited to the following products, manufacturers, distributors, and/or suppliers:   A.O. Smith Corporation, Advanced Stores Company, Inc., as successor in interest to Western Auto Supply Company, Autozone, Inc., A.P. Green, Allied Signal, Inc., A-Best Products Company, A.C. & S., Inc., f/k/a Armstrong Contracting and Supply, Artra Group (Synkoloid), Allis-Chalmers, Alstom Power, Inc., American Optical Corporation, Ameteck, Inc., Amatex Corporation f/k/a America Asbestos Textile Corporation; American Standard, Inc., American Shipbuilding, Anchor Holdings, Inc., and its subsidiary, National Gypsum Company, Armstrong World Industries, Inc., Armstrong International, Inc., Arvinmeritor, Inc., Asbestos Claims Management Corp., Asbestos Corporation Ltd., Atlas Asbestos, Atlas Corporation and subsidiaries, including Hidden Splendor Mining Company, Pacific Asbestos, Johnson Mines, National Asbestos Mines, Ltd, Atlas Adhesives, Bell Asbestos Mines, Ltd, CSR, Cape Asbestos Company, Ltd. and related companies North American Asbestos Corporation and Continental Producers Corporation, Cassiar Mines, Cassiar Mining Corprotaion Ltd., Cassiar Asbestos Corporation, and Cassiar Resources Ltd., Asbestos Spray Corporation, Asco Power Technologies, Asten, Inc., Bayer

Cropscience, Inc., f/k/a Aventis Cropscience USA, Inc., f./k/a Rhone Poulenc AG Company, Inc., f/k/a Union Carbide Agricultural Products, Inc., f/k/a Amchem Products, Inc, a successor to Benjamin Fosters Company, Bird, Inc., B & W Construction Company, and Diamond Power International, Inc., The Babcock & Wilcox, Co., Baldwin Ehret Hill Keene Corp., Bethlehem Steel Corporation, Beazer East, Inc. f/k/a Koppers Company, Bennett Auto Supply, Betchel Corp., Bigelow-Liptak Corporation, Bridgestone/Firestone North America Tire, LLC as successor by merger to Bridgestone/Firestone Inc., as successor in interest to Worldbestos, Briggs Stratton Corp., Bondex International, Inc., Brown & Williamson Tobacco Corp., Brunswick Fabricators, Inc., Burns and Roe, Inc., Burnham LLC, as successor to Burnham, Corp., Byron Jackson, CDC Corporation and Pabco, C.E. Thurston & Son, Inc., CAPCO Pipe Company, Canadian Johns-Manvilee, Carlisle Companies, Inc. through its subsidiaries Motion Control Industries, Inc., Caver Pumps, Inc., Cafco Pipe Company, Celotex Corporation and its various subsidiaries and predecessors in interest, including Carey Canada, Inc., Carey Canadian Mines, Ltd., Brinco Mining Ltd., Panacon, Philip Carey Company, Philip Carey Manufacturing Company and Smith & Kanzler, Certainteed Corporation f/k/a Certainteed Products Corporation, individually and as successor in interest to Bestwell Gypsum Company, Circor International, Inc., CE Thurston, Champlain Cable Company, Chicago Mastic Company, Chicago Pump Company, a subsidiary of Yeomans Chicago Corporation, Crown Cork & Seal Company USA Inc., Combustion Engineering, Inc., Combustion Engineering Corp., Congoleum Corporation, Cooper Industries, Inc., Copes-Vulcan, Inc., Crown Cork and Seal Co., Inc., IMO Industries, Inc. f/k/a IMO DeLaval, Inc., Dow Chemical Company, Amchem Products, Inc., DII Industries, f/k/a Dresser Industries, Dowman Products, Inc., Deere & Co., Inc., Dresser, Inc. through its subdivision/business unit Waukesha Engine, Durabla Manufacturing Company, Delaware

Insulation a/k/a DI Distributors Inc., Philadelphia Asbestos Corporation, ECR International, Inc. as successor in interest to Utica Boiler, Inc., a/k/a The Utica Companies, Inc., Duro Dyne Corporation, Exxonmobil Oil Corporation, EAFCO, Inc., Eagle Pitcher Industries, E.J. Bartells Company, Ericcson, Inc., Eastco Industrial Safety Corporation, Faurecia Exhaust Systems, Inc., f/k/a AP Exhaust Products, Inc., f/k/a Goerlich's Inc., Farrel Birmingham, Premix-Marbletite Mfg. Co., Individually and as subsidiary of Imperial Industries, Inc., Felt Products Mfg. Company (Fel-Pro), Ferodo America, Inc., Federated Development Company, as successor in interest to Pacific Steel Boiler, Ferro Corporation, Fireboard Corporation, Flintkote Corporation, Florida Seal & Rubber Co., Forty-Eight Insulations, Inc.; Fulton Boiler Works, Inc., Garlock Sealing Technology f/k/a Garlock, Inc., Fuller-Austin Insulation Company, GAF Corp., Gatke Corporation, G-I Holdings, Inc. and its predecessors in interest GAF Corporation and Rubberoid Company, General Refractories Company, Guard-Line, Inc., H.B. Smith Company, Inc., H.B. Fuller Company, Homasote Company, Imperial Industries, Inc., Individually and as Parent Company to Premix Marbletite Mfg. Co., and successor to Adobe Brick and Supply, Harbison-Walker Refractories Company, H.K. Porter Company, Inc., Hillsborough Holdings Corporation and its predecessors in interest, Jim Walters Industries, Celotex, and Panacon, Industrial Holdings Corporation f/k/a The Carborundum Company, Hobart Brothers Company, Hollingsworth & Vose Company, JT Thorpe, Johns-Manville Sales Corporation, Johns-Manville Corporation, Joy Blobal Inc., f/k/a Harnischfeger Industries, Inc., Kaiser Aluminum, Kaiser Gypsum Company, KCG, Inc., Keasby Mattison Company, Keene Corporation, successor in interest to Bladwin-Ehret-Hill, Kelsey-Hayes, Kewanee, Kelley-Moore Paint Company, Kentile Floors, Inc., Kellogg Brown & Root, Koppers Inc., Lake Asbestos of Quebec, Lennox Industries, Inc., The Liggett Group, Lipe Rollaway, Lykes Brothers Steamship, Lorillard Tobacco Co.,

- 19 -

Lincoln Electric Company, L & W Supply Corporation, M&H Automotive, Inc., M. H. Detrick, McLean Industries and First Colony Farms and their subsidiaries, U.S. Lines and United States Lines (S.A.), Mack Trucks, Inc., Maremont Corporation, Metropolitan Life Insurance Company, McCord Corporation, individually and as successor in interest to A.E. Clevite, Inc. and J. P. Industries, Inc., Minnesota Mining and Manufacturing Company, Morton International, Inc., Moog Automotive (Wagner Brake Products), Muralo Company (including Synkoloid) and its affiliate, Norton & Son of California, Inc., National Gypsum Company, Mundet, North Brothers, Navistar International Transportation Corporation a/k/a International Truck Engine Corporation, Nicolet, Inc., North American Refractories Corporation (NARCO), Oakfabco, Inc., Owens Illinois, Inc. f/k/a Owens Bottle Machine Corp., f/k/a Owens Bottle Co. f/k/a Owens-Illinois Glass Co., Oshkosh Truck Corp., Owens Corning Corporation, and its subsidiaries and predecessors in interest, including, but not limited to, Fibreboard Corporation (f/k/a Plant Rubber & Asbestos Works), Owens-Corning Fiberglas Technology, Inc., Owens Corning Fiberglass, Inc., Pacor, Inc., Prestolite Performance, parent of or d/b/a Mr. Gasket Co., Inc., Patterson Pump Company, a subsidiary of Gorman-Rupp Company, Pfizer, Inc., Peerless Industries, Inc., individually as successor to Peerless Heater Co., and EAFCO, Inc., Permalastic Products Company, Phillip Morris, Inc., Pittsburgh Corning Corp., Pittsburgh Corning Corporation, Pfizer, Inc., Phillip Carey Mfg. Co., Phillip Carey Corp., Plibrico Company, Porter-Hayden Company and its predecessors, H.W. Porter & Company, Inc., and Reid Hayden, Inc., Prudential Lines, Inc., Powhatan Mining Company, Pacor, Inc. a/k/a Philadelphia Asbestos Corporation, Pacor Material Supply Company, Pratt & Whitney, Proko Industries, Inc., Quigley Co., Inc., Premier Refractories, Inc., a/k/a J.H. France Refractories Company, Riley Stoker Coporation, R&M Manufacturing Company, R.W. Beckett Corporation, Raybestos Manhattan, Inc., Raymark

Industries, Inc. f/k/a Raybestos-Manhattan and Raytech Corporation, as successor in interest to Raymark Industries, f/k/a Raybestos-Manhattan; Raymark Corporation, Raymond Bowl Mills, Rechtien International Trucks, Inc., R.J. Reynolds Tobacco Company, Republic Powdered Metals, Inc. (RPM, Inc.) as successor-in-interest to and/or alter ego of and/or otherwise responsible for The Reardon Company and Bondex International, Rock Wool Manufacturing Company, Rutland Fire Clay Company, R.T. Vanderbilt Company, Sealing Equipment Products, Inc., a/k/a SEPCO, SPX Corporation, individually and as successor to Dezurik, Inc., Rockwell Automation, Inc., Shook and Fletcher, Skinner Engine Company, Steel Grip, Inc. f/k/a Industrial Gloves, Co., f/k/a Steel Grip Safety Apparel Co., Swan Transportation and subsidiary Tyler Pipe Industries, Standard Asbestos & Insulation, Standard Insulations, Inc., Standard Asbestos Manufacturing & Insulation Company, a/k/a Standard Asbestos Manufacturing & Insulating Company, Stradley Auto Parts, Sterling Fluid Systems (USA) LLC, T&N Plc, TH Agriculture & Nutrition, L.L.C., as successor-in-interest to Thompson-Hayward Chemical Company, T&N Plc (including Turner & Newall, Turner Asbestos Fibres Company, and other T &N subsidiaries), Tyco International (US) Ltd., individually and as successor to Yarway Corporation, Trac Regulator Co., Inc., parent to or d/b/a Atlas Valve Co., , Trane U.S. Inc. f/k/a American Standard, Inc., f/k/a American Radiator & Standard Sanitary Corporation, , York-Shipley Global, and Zurn Industries, LLC, a/k/a and successor by merger to Erie City Iron Works, Todd Shipyards, UNR Industries, Inc., and related companies, including Union Asbestos and Rubber Company a/k/a UNARCO; USG Corporation and subsidiaries United States Gypsum Company, USG Interiors and Beadex Manufacturing, LLC, Uniroyal, Inc., Union Carbide Corporation, United Gilsonite Laboratories, Universal Refractories, Inc., 3M Company, U.S. Mineral Products Co., Unarco, United States Gyspum, United States Mineral Products Company, Velbesto and

Beater Addition, Ventafabrics, Inc., Viacom Inc., as successor-in-interest to CBS Corporation, f/k/a Westinghouse Electric Corporation, Washington Group International, f/k/a Morrison Knudsen, Waterman Steamship Corporation, Western Macarthur f/k/a Western Asbests, Wallace & Gale Company, Weil-McClain Company, Inc., a division of the Marley-Wylain Company, Westinghouse, Wheeling Brake Block Manufacturing Co., Inc., W.R. Grace and Company and its affiliated companies, the Zonolite Company, and W.R. Grace as its successor in interest, Worthington Corporation, W.R. Grace & Co., Yarway Corporation, Viking Pumps, Inc., Vogt Power International, Inc. and Smurfit-Stone Container Enterprises, Inc. and other manufacturers, distributors, and/or suppliers that were previously identified by Plaintiff, any manufacturers, distributors, and/or suppliers of products of the type identified by Plaintiff, any manufacturers, distributors, and/or suppliers that were previously defendants to this action buy have been dismissed, and manufacturers, distributors, and/or suppliers that are currently defendants to this action but are subsequently dismissed.

Accordingly, this Defendant is entitled to an apportionment of damages pursuant to Florida Statute § 768.81 and *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993) for the strict liability of the above-named entities. Defendant reserves the right to amend in order to identify such parties or non-parties to be included on the verdict form pursuant to *Nash v. Wells Fargo Guard Services, Inc.,* 678 So.2d 1262 (Fla. 1996).

### Thirty-Ninth Affirmative Defense

The Plaintiffs' injuries, if any, are due to the acts or omissions of persons over whom this Defendant had neither control nor the right to control, therefore the Plaintiffs are barred from recovery against this Defendant.

### Fortieth Affirmative Defense

To the extent that the Plaintiffs' Complaint seeks exemplary or punitive damages, or seeks to "reserve" any claim for exemplary or punitive damages, said Complaint fails to state a cause of action pursuant to Florida law.

### Forty-First Affirmative Defense

The Plaintiffs may not seek and/or recover punitive damages, as the Plaintiffs have failed to comply with Florida Statutes, Section 768.72, which prohibits the pleading of claims for punitive damages in initial complaints in the absence of a showing by evidence in the record that would provide a reasonable basis for recovery of such damages.

### Forty-Second Affirmative Defense

Punitive damages are inappropriate in multiple plaintiffs' industry-wide litigation and should not be awarded.

### Forty-Third Affirmative Defense

The Complaint must be dismissed because the Plaintiffs have failed to make a prima facie showing of physical impairment as a result of a medical condition to which asbestos was a substantial contributing factor as required by section 774.204(2) of the Florida Statutes. Specifically, the Plaintiffs have failed to provide the following:

(1)     Evidence verifying that a qualified physician has taken a detailed occupational and exposure history of the exposed person or from a person who is knowledgeable about the exposures that form the basis of the nonmalignant asbestos claim;

(2)     Evidence verifying that a qualified physician has taken a detailed medical and smoking history, including a thorough review of the exposed person's past and present medical problems and their most probable cause;

(3)     Evidence sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to asbestos and the date the diagnosis is made;

(4)     A determination by a qualified physician that the exposed person has a permanent respiratory impairment rating of at least Class 2 as defined by and evaluated pursuant to the AMA Guides to the Evaluation of Permanent Impairment;

(5)     A diagnosis by a qualified physician of asbestosis or diffuse pleural thickening based on radiological or pathological evidence;

(6)     A determination by a qualified physician that asbestosis or diffuse pleural thickening is a substantial contributing factor to the exposed person's physical impairment; and

(7)     A conclusion by a qualified physician that the exposed person's medical finding and impairment were not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical history.

## Forty-Fourth Affirmative Defense

The causes of action must be dismissed because Plaintiffs' evidence relating to physical impairment does not comply with the technical recommendations for examinations, testing procedure, quality assurance, quality control and equipment of the AMA Guides to the Evaluation of Permanent Impairment, as set forth in 20 C.F.R. part 404, Subpart P. App. 1. Part A, s. 3.00 E. and F., and the interpretive standards, set forth in the official statement of the American Thoracic Society entitled "lung function testing: selection of reference values and interpretive strategies" as published in American Review of Respiratory Disease.

## Forty-Five Affirmative Defense

The causes of action may not be brought in the State of Florida, and the Complaint must therefore be dismissed, because the Plaintiff is not domiciled in the State of Florida and/or the

exposure to asbestos that is a substantial contributing factor to the alleged physical impairment of the Plaintiff did not occur in the State of Florida.

### Forty-Six Affirmative Defense

The causes of action must be dismissed because the Plaintiffs did not include with the Complaint, or other initial pleading, a written report and supporting test results constituting prima facie evidence of the exposed person's alleged asbestos-related physical impairment meeting the requirements of section 774.204(2), (3), (5) or (6).

### Forty-Seven Affirmative Defense

The causes of action must be dismissed because the Plaintiffs did not file a written report and supporting test results constituting prima facie evidence of the exposed person's alleged asbestos-related physical impairment meeting the requirements of section 774.204(2), (3), (5) or (6) at least 30 days before setting a date for trial.

### Forty-Eight Affirmative Defense

The causes of action must be dismissed because Plaintiffs' asbestos claim did not include a sworn information form containing the Plaintiffs' name, address, date of birth and marital status; the specific location of each alleged exposure; the beginning and ending dates of each alleged exposure to each asbestos product for each location at which exposure allegedly took place; the occupation and name of the employer of the exposed person at the time of each alleged exposure; the specific condition related to asbestos claimed to exist; and any supporting documentation of the condition claimed to exist.

### Forty-Nine Affirmative Defense

The causes of action must be dismissed because the Plaintiffs did not file a verified written report with the Court disclosing the total amount of any collateral source payments

- 25 -

received, including payments that the Plaintiffs will receive in the future, as a result of settlements or judgments based upon the same claim at the time the Plaintiffs filed their Complaint.

### Fiftieth Affirmative Defense

The causes of action must be dismissed because the Plaintiffs did not file a verified written report with the Court disclosing the total amount of any collateral source payments received, including payments that the Plaintiffs will receive in the future, as a result of settlements or judgments based upon the same claim within 60 days after the effective date of the Florida Asbestos and Silica Compensation Fairness Act of 2005 or 30 days before the Plaintiffs' trial.

### Fifty-One Affirmative Defense

The Defendant invokes any and all applicable provisions of Florida's Asbestos and Silica Compensation Fairness Act of 2005, found at §§774.001-774.209 of the Florida Statutes.

### Fifty-Two Affirmative Defense

The alleged injuries and/or damages of which Plaintiffs' complain arose in whole or in part from one or more other causes or circumstances, including but not limited to, smoking, to the extent that Plaintiff used tobacco or was exposed to tobacco smoke, and not as a result of any exposure to any products manufactured, sold, or supplied by the Defendant.

### Fifty-Three Affirmative Defense

If it is shown that the Plaintiff used any product manufactured, sold or supplied by the Defendant, which is specifically denied, and if it is shown that such product was supplied to, by or on behalf of the United States Government, then the Defendant raises any immunity from suit or liability conferred upon the United States Government and/or the Defendant, which may arise under the circumstances.

### Fifty-Four Affirmative Defense

The Defendant cannot be held liable for failing to recall all of the defendant's alleged asbestos-containing products from the stream of commerce and the marketplace as Florida law does not recognize a duty to remove and recall products from the market place post-sale. *See Baker v. Firestone Tire & Rubber Company*, 793 F.2d 1196, 1200 (11th Cir. 1986).

### Fifty-Five Affirmative Defense

The Defendant cannot be held liable for "affirmatively misrepresenting" as Plaintiffs' Complaint fails to allege misrepresentation of fraud with particularity pursuant to the Fla.R.Civ.P. 1.120(b).

### Fifty-Six Affirmative Defense

The Plaintiffs may not seek a claim and/or recover damages for "increased risk of developing other cancers" and a "traumatic fear of an increased risk of additional asbestos-cause or related disease, including, but not limited to, other forms of cancer not yet diagnosed to the Plaintiff, as these claims are not compensable under Florida Statute §774.206(2).

### Fifty-Seven Affirmative Defense

The Defendant cannot be held liable for negligent failure to warn by failing "to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing asbestos materials" as Florida law does not impose that duty on a manufacturer. *Ferayonrni v. Hyundai Motors Co.,* 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998).

### Fifty-Eight Affirmative Defense

The Defendant cannot be held liable for strict products liability failure to warn by failing to provide the Plaintiff with "proper respirators to protect users and/or bystanders" as this

specific allegation exceeds this Defendant's duty to warn of known particular risks at the time of sale. *Griffin v. Kia Motors Corp.*, 843 So.2d 336, 339 (Fla. 1st DCA 2003)(quoting *Ferayonrni, 711 So.2d at 1172* (quoting *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 558 (1991).

### Fifty-Nine Affirmative Defense

Plaintiffs' allegations of and references to "gross negligence" and "willful omissions" should be stricken pursuant to Fla. R. Civ. P. 1.110(b) and 1.140(f) as such suggestions, unsupported by any ultimate facts, are immaterial, and mere legal conclusions. This language has no legal basis and serves no legal purpose and should be stricken.

### Sixtieth Affirmative Defense

The causes of action must be dismissed because the Plaintiffs did not file proper exposure sheets pursuant to Hillsborough County Omnibus Order on Trial Settings, Discovery and Product Identification.

### Sixty-First Affirmative Defense

The Defendant adopts by reference all Motions to Dismiss and/ or Strike and Affirmative Defenses filed by all other defendants where applicable.

> Respectfully submitted,
> **K&L GATES LLP**
> Attorneys for Defendant *Crane Co.*
> Wachovia Financial Center
> 200 South. Biscayne Boulevard, Suite 3900
> Miami, Florida 33131-2399
> Tel: (305) 539-3300
> Fax: (305) 358-7095
>
> By: _____
>      Daniel Casey
>      Florida Bar No. 327972
>      Rebecca C. Kibbe
>      Florida Bar No.: 0683191

- 28 -

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically served via LexisNexis File & Serve this _____ day of August, 2010.

REBECCA C. KIBBE